Jube J. Najarian, No. 99082
Steven M. McQuillan, No. 107339
JACOBSON, HANSEN, NAJARIAN & McQUILLAN
A Professional Corporation
1690 W. Shaw Avenue, Suite 201
Fresno, California 93711
Telephone: (559) 448-0400
Facsimile: (559) 448-0123
**Co-Counsel With:**
Andrew H. Swartz, No. 58429
ATTORNEY AT LAW
550 Hartnell Street
Monterey, California 93940
Telephone:  (831) 373-3235

Attorney for Defendant(s) TRUE ORGANIC PRODUCTS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCEANO PACKING COMPANY, LLC, | Case No.: C08 00839-RS |
| Plaintiff(s), | |
| v. | **DECLARATION OF STEVEN M. McQUILLAN IN SUPPORT OF NOTICE OF OTHER ACTION PENDING AND JOINDER IN MOTION TO DISMISS OR STAY** |
| TRUE ORGANIC PRODUCTS, INC., A California Corporation; and WESTERN FARM SERVICES, INC., A Delaware Corporation, | |
| Defendant(s). | |

I, Steven M. McQuillan, declare as follows:

1. That I am a shareholder in the law firm of Jacobson, Hansen, Najarian & McQuillan, counsel for defendant TRUE ORGANIC PRODUCTS, INC. in the above-referenced matter.

2. My office received correspondence from counsel for OCEANO PACKING COMPANY, LLC, on or about April 28, 2008, enclosing a copy of an answer and cross-complaint filed against TRUE ORGANIC PRODUCTS, INC. and WESTERN FARM SERVICES,

1  INC. in San Luis Obispo County Superior Court, Case Number CV080074.  A true and

2  correct copy of that answer and cross-complaint are attached hereto as Exhibit "A".

3       2.    For the Court's reference and convenience, attached hereto as Exhibit "B" is a

4  Motion to Dismiss or For a Stay previously filed in this United States District Court matter by

5  defendant WESTERN FARM SERVICE, INC.  Based upon docket information supplied to my

6  office electronically by the Court, I understand that the WESTERN FARM SERVICE, INC.

7  motion was taken under submission by the honorable Judge James Wave on April 21, 2008.

8       I declare under penalty of perjury that the foregoing is true and correct.  Executed this

9  2  day of May, 2008 in Fresno, California.

12  By: _____
STEVEN M. McQUILLAN

# EXHIBIT "A"

SUM-100

# SUMMONS on Cross-Complaint
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO ~~DEFENDANT~~: Cross-Defendants**
*(AVISO AL DEMANDADO):*
WESTERN FARMS SERVICE, INC., a California
Corporation; TRUE ORGANIC PRODUCTS, INC., a
California Corporation; and DOES 1 thru 20 inclusive.

**YOU ARE BEING SUED BY ~~PLAINTIFF~~: Cross-Complainant**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
OCEANO PACKING COMPANY, LLC, a
California limited liability company

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | Superior Court of California<br>County of San Luis Obispo<br>Courthouse Annex<br>1035 Palm Street, Rm. 355<br>San Luis Obispo, CA 93408 | CASE NUMBER:<br>*(Número del Caso):* CV080074 |
|---|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Effie F. Anastassiou, Esq., Anastassiou & Associates, 242 Capitol Street, Salinas, CA 93901
Telephone: (831) 754-2501

| DATE:<br>*(Fecha)* | Clerk, by _____ , Deputy·<br>*(Secretario)* *(Adjunto)* |
|---|---|

For proof of service of this summons, use Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adapted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

1   Effie F. Anastassiou, Esq. (State Bar #96279)
   Scott J. Allen (State Bar #178925)
2   Denis Klavdianos, Esq. (State Bar #225925)
   ANASTASSIOU& ASSOCIATES
3   242 Capitol Street
   Post Office Box 2210
4   Salinas, California  93902
   Telephone:  (831) 754-2501
5   Facsimile:   (831) 754-0621

6   Attorneys for Defendant OCEANO PACKING COMPANY, LLC.

7

                 **SUPERIOR COURT OF CALIFORNIA**
8
                 **COUNTY OF SAN LUIS OBISPO**
9

10  WESTERN  FARMS  SERVICE,  INC., a )  **Case No. CV080074**
    Delaware Corporation           )
11                           )
           Plaintiff,      )  **OCEANO    PACKING    COMPANY,    LLC'S**
12                       )  **ANSWER AND CROSS-COMPLAINT**
            v.           )
13                           )
                           )
14  OCEANO PACKING COMPANY, LLC., a )
    California  limited  liability  company; and )
15  DOES 1 to 20, inclusive.       )
                           )
16                           )
          Defendant      )
17                           )
  _____)
18                           )
  OCEANO PACKING COMPANY. LLC, a )
19  California limited liability company  )
                           )
20      Cross-Complainant,    )
                           )
21         v.           )
                           )
22  WESTERN  FARMS  SERVICE,  INC., a )
    California  Corporation;  TRUE  ORGANIC )
23  PRODUCTS, INC., a California Corporation; )
    and DOES 1 thru 20 inclusive.   )
24                           )
      Cross-Defendants.    )
25                           )
  _____)
26                     __**GENERAL DENIAL**__

27       Defendant and Cross-Complainant OCEANO PACKING COMPANY, LLC, a California limited

28  liability Company ("Oceano"), hereby answers the Complaint for Breach of Contract and Common Counts

("Complaint") of the Plaintiff and Cross-Defendant WESTERN FARM SERVICE, a Delaware Corporation ("Western"), as follows:

Oceano generally denies each and every allegation of Western's Complaint.

In addition, Oceano alleges the following as separate affirmative defenses to Western's Complaint.

## AFFIRMATIVE DEFENSES AS TO ALL CAUSES OF ACTION

1.    The Complaint does not state facts sufficient to constitute any cause of action against Oceano.

2.    The Complaint and each cause of action therein fails to state a claim for which relief can be granted as against Oceano.

3.    There was no written contract or oral contract entered into between Western and Oceano, which was breached by Oceano, or which otherwise required Oceano to pay any amount to Western which has not already been paid to Western by Oceano in accordance with the terms of their agreement.

4.    Western is guilty of laches with respect to Western's claims for alleged payments due under any alleged written contract or oral contract and is therefore not entitled to pursue its Complaint in this action.

5.    Due to Western's own acts and omissions, Western is estopped to assert any of the claims contained in the Complaint against Oceano.

6.    Western's claims against Oceano are barred by the doctrine of equitable estoppel.

7.    Any alleged written contract or oral contract described in the Complaint is void and unenforceable for vagueness and lack of consideration.

8.    Any alleged written contract or oral contract described in the Complaint is void and unenforceable given its unconscionable terms.

9.    Western's claims against Oceano relating to alleged breaches of any alleged written contract or oral contract are without authority under the terms of any such alleged written contract or oral contract.

10.    Each of the causes of action is barred by the applicable statute of limitations, including, without limitation, California Code of Civil Procedure §§ 337 and 339.

11.    Western is barred from seeking the relief sought against Oceano based upon the doctrine of unclean hands, and the Western is therefore not entitled to invoke the equity jurisdiction of this Court.

12.     Western is barred by the Statute of Frauds.

13.     Western by its actions has irrevocably waived any and all rights that it might otherwise have had to assert any claim or claims whatsoever against Oceano.

14.     Western failed to perform certain conditions precedent to the creation of an obligation or duty on the part of Oceano to pay Western the amounts claimed by Western in its Complaint, including, but not limited to, providing products to Oceano which were fit for the purpose for which they were intended, and not contaminated, or otherwise in breach of express or implied warranties.

15.     Western cannot assert any of the claims set forth in its Complaint because Western materially breached its agreements with Oceano.

16.     Western failed to perform its contracts with Oceano in the manner anticipated by the parties, thereby depriving Oceano of the benefit of the bargain.

17.     Western failed to exercise due care, caution, or prudence in not properly and competently examining the products sold to Oceano, and thus, any claims of Western set forth in the Complaint against Oceano were directly and proximately caused and contributed to by the fault, negligence and carelessness of Western, and therefore, Oceano's liability to Western, if any, on Western's Complaint, must be reduced in whole or in part by the comparative fault of Western.

18.     Oceano hereby incorporates by reference its Cross-Complaint, set forth below and filed concurrently herewith against Western and the parties named below, as a set-off against any amounts due and owing by Oceano to Western pursuant to its Complaint.

19.     Oceano has not yet completed a thorough investigation and study and complete discovery of all the facts and circumstances of the subject matter of this action, and accordingly reserves the right to amend, modify, revise or supplement its answer, and to plead such further defenses and to take such further action as they may deem proper and necessary in its defense of this action.

WHEREFORE, Oceano prays that Western take nothing by the Complaint on file herein; that Oceano be hence dismissed with an award of its attorneys' fees and costs incurred in its defense herein; and for such other and further relief as the Court may deem just and proper.

## CROSS-COMPLAINT
## FACTUAL BACKGROUND

For a Cross-Complaint herein, Cross-Complainant OCEANO PACKING COMPANY, LLC ("Oceano") hereby alleges as follows:

## THE PARTIES

1.     Oceano is a limited liability company formed and existing under the laws of the State of California with its principal place of business in San Luis Obispo County, California. Oceano is in the business of growing certified organic vegetable crops, including, without limitation, certified organic spinach and "spring mix" crops grown during the 2007 growing season and at issue in this litigation (the "Crops").

2.     On information and belief, based on the records of the California Secretary of State, Cross-Defendant True Organic Products, Inc. ("True"), is a corporation formed and existing under the laws of the State of California, with its principal place of business in Monterey County, California. True is in the business of manufacturing, marketing and selling organic fertilizer products.

3.     On information and belief, based on the records of the California Secretary of State, Cross-Defendant Western Farm Service, Inc. ("Western"), is a corporation formed and existing under the laws of the State of Delaware, with its principal office located in Denver, Colorado. Western conducts business throughout the State of California. Western's business activities in California include, without limitation, selling organic fertilizer and other products in California, having offices located in California, and employing personnel within California. Western's business includes, without limitation, the distribution and sale of the organic fertilizer products manufactured by True.

4.     Cross-Defendants, Does 1-20, inclusive, are sued herein under fictitious names. Their true names and capacities are currently unknown to Oceano. When their true names and capacities are ascertained, Oceano will amend this Cross-Complaint by inserting their true names and capacities herein. Upon information and belief, each of the fictitiously sued Cross-Defendants are responsible in some way for the occurrences alleged in this Cross-Complaint and the damages complained of herein by Oceano were caused by said fictitiously named Cross-Defendants.

5.     Oceano is in the business of growing certified organic vegetables, including the Crops, for sale for human consumption.

6.      During the 2007 growing season, Oceano required fertilizer for its business of growing organic vegetables, including the Crops. In order to produce the Crops for human consumption, Oceano required a fertilizer that would provide plant nutrients, that would not cause Oceano's Crops to be contaminated by pathogenic organisms, such as E coli or salmonella, and that otherwise would comply with the requirements of the regulations of the National Organic Program (7 C.F.R. Part 205) ("NOP regulations").

7.      Oceano contacted Western and asked Western to recommend, select and sell a fertilizer to Oceano that met Oceano's needs, as set forth above.

8.      Western recommended a fertilizer known as "True 10-5-2" (the "Fertilizer"). The Fertilizer was manufactured by True. Western represented to Oceano that the Fertilizer was fit for Oceano's intended use.

9.      The Fertilizer is made from chicken manure (also called "chicken litter"), as well as other ingredients.

10.     Western also sent to Oceano a letter, dated January 16, 2007, which was drafted by Jake Evans of True (the "True Letter"). A true and correct copy of the True Letter is attached hereto as Exhibit A and incorporated herein by reference.

11.     The True Letter states, among other things, that True used a "windrow compost process" to produce the Fertilizer. The True Letter also represents that the windrow compost process used by True to produce the Fertilizer complies with the requirements of the NOP regulations, specifically 7 C.F.R. § 205.203(c). Further, the True Letter represents that the compost process used to produce the Fertilizer established an initial Carbon-to-nitrogen ration of between 25:1 and 40:1 and maintained a temperature of between 131° F and 170° F for fifteen days using a windrow pile system. The True Letter further represents that because the fertilizer is composted in this manner, the fertilizer is not subject to the NOP regulations requirement that a fertilizer containing manure be incorporated into the soil 120 days prior to harvest, see, 7 C.F.R. § 205.203(c)(1)(i) (the "120 day rule"). The 120 day rule is a requirement in the NOP regulations that is intended to protect against contamination of crops with pathogenic organisms, such as salmonella, that are typically transmitted by manure. Thus, the True Letter constitutes a representation that the

1  fertilizer, although made from chicken manure, had been properly composted in accordance with the

2  requirements of the NOP regulations in order to ensure that the fertilizer would not cause Oceano's crops

3  to be contaminated with pathogens, such as salmonella.

4      12.    The True Letter also represents that: (1) the Fertilizer is "100% organic"; (2) True guarantees

5  that its products only contain ingredients allowed by the NOP regulations; and (3) True's manufacturing

6  processes exceed all minimum standards for pathogen elimination.

7      13.    The True Letter also states that True's "organic fertilizers" are assigned lot numbers and are

8  not released for sale until True receives a certificate of analysis from a certified laboratory resulting in

9  negative results for microbial contamination, including, without limitation, E coli 0157 and salmonella.

10

11      14.    On its internet website, True also makes the following representations regarding its fertilizer

12  products:

13          OUR PROMISE

14          We respect our growers' commitment to organic and sustainable farming.
           We take pride in manufacturing the finest 100% organic fertilizers on the
15          market, completely pathogen-free and always maintaining our guaranteed
           analysis.

16

17  A true and correct copy of the relevant excerpt from True's internet website is attached hereto as Exhibit

18  B and incorporated herein by reference.

19      15.    Based on Western's recommendation of the Fertilizer, and on the representations concerning

20  the Fertilizer contained in the True Letter, and on the representations made on True's internet website,

21  Oceano purchased the Fertilizer for use in producing certified organic vegetables in the course of Oceano's

22  business, including the Crops.  Copies of invoices for Oceano's purchase of the Fertilizer are attached

23  hereto as Exhibit C and incorporated herein by reference.

24      16.    Unbeknownst to Oceano, and contrary to the representations made by True and Western as

25  described above, the Fertilizer manufactured by True and sold to Oceano by Western was contaminated

26  with salmonella bacteria. After Oceano applied the Fertilizer to its farmland, the salmonella contamination

27  was spread to Oceano's fields and to its Crops.  Oceano first discovered this contamination when three

28  separate, unrelated, customers of Oceano reported finding salmonella in Crops grown by Oceano in fields

where the Fertilizer was applied. Each of the three customers received Oceano's Crops independent of one another and drew their samples from Crops received by the customers at different locations.

17.    After being notified by its customers about the salmonella contamination on its Crops, Oceano conducted an investigation to determine the source of the salmonella contamination, including, without limitation, conducting testing of the Fertilizer and the soil from Oceano's fields. The results of such testing showed that the Fertilizer contained salmonella contamination. A sample of soil from Oceano's fields also tested positive for the presence of salmonella. The tests conducted by Oceano and its customers thus showed that the salmonella contamination had originated with the Fertilizer, and had been spread to Oceano's fields and Crops by the application of the contaminated Fertilizer.

18.    Due to the salmonella contamination of Oceano's Crops, Oceano was required to destroy Crops that had previously been harvested for sale, and/or had previously been delivered to its customers, and was required to destroy crops still growing in Oceano's fields. Consequently, Oceano was unable to deliver sufficient uncontaminated Crops to meet its contractual obligations to its customers during the 2007 growing season. In all, as a result of the salmonella contamination, Oceano was unable to deliver a total of approximately 1,431,511 pounds of Crops to three of its customers with whom Oceano had contracts to deliver certified organic vegetables. This shortfall resulted in lost revenue to Oceano of approximately $1,073,633.30, among other damages.

### FIRST CAUSE OF ACTION
#### (Violation Of Organic Foods Production Act of 1990 - 7 U.S.C. § 6501 et seq.)
#### (Against True and Western)

19.    Oceano hereby incorporates by reference each of the other allegations in this Cross-Complaint as though fully set forth in this First Cause of Action.

20.    The Organic Foods Production Act of 1990, 7 U.S.C. § 6501 et seq. (the "OFPA"), was enacted by Congress "to establish national standards governing the marketing of certain agricultural products as organically produced products." 7 U.S.C. § 6501(1).

21.    The OFPA make it unlawful for "[a]ny person who knowingly sells a product as organic, except in accordance with this title" 7 U.S.C. § 6519(a).

22.    The U.S. Secretary of Agriculture has adopted regulations to implement the OFPA. Those regulations are commonly known as the NOP regulations.

23.    The NOP regulations, specifically 7 C.F.R. 205.102, states that any agricultural product "that is sold, labeled, or represented as '100 percent organic,' 'organic,' or 'made with organic' . . . must be: [¶] [. . . p]roduced in accordance with the requirements specified in . . . §§ 205.202 through 205.207."

24.    The NOP regulations state that a producer of organic crops must manage plant and animal materials to maintain or improve soil organic matter content in a manner that does not contribute to contamination of crops, soil, or water by pathogenic organisms.  7 C.F.R. § 205.203(c).  The NOP regulations state that animal manure "must be composted" unless it is incorporated into the soil not less than 120 days prior to harvest of a crop whose edible portion has direct contact with the soil surface or not less than 90 days prior to harvest for a crop whose edible portion does not contact the soil surface or soil particles.  7 C.F.R. § 205.203(c)(1)(ii) and (iii).  A producer of organic crops may also apply "composted plant and animal materials" that are produced through a windrow compost process that establishes a carbon-nitrogen ration of between 25:1 and 40:1 and maintained a temperature of between 131 degrees F and 170 degrees F for 15 days during which time the materials must be turned a minimum of five times.  7 C.F.R. § 205.203(c)(2)(i) and (iii).

25.    The representations made by True and Western to Oceano that the Fertilizer is "100% organic" and/or "organic", and complied with the NOP regulations as described above, were false.  In fact the Fertilizer violated the above-referenced OFPA and NOP regulations. Although both True and Western represented to Oceano that the Fertilizer, which is made from chicken manure, had been manufactured, including composted, in accordance with the requirements of the NOP regulations, the Fertilizer was not, in fact, manufactured in accordance with the requirements of the NOP regulations and was in fact, contaminated by pathogenic organisms.  Accordingly, by manufacturing, recommending and/or selling the Fertilizer, True and Western violated both the OFPA and NOP regulations.

26.    As a result of the violations of the OFPA and NOP regulations by True and Western, Oceano's Crops were contaminated with salmonella, and Oceano's Crops could not be marketed and sold as organic Crops, but had to be destroyed.  As a consequence, Oceano suffered damages which included

1  lost revenues of approximately $1,073,633.30, and suffered such other damages to be determined in
2  accordance with proof.

## SECOND CAUSE OF ACTION
### (Breach of Express Warranty Of Fitness)
### (Against True and Western)

6  27.    Oceano hereby incorporates by reference each of the other allegations in this Cross-
7  Complaint as though fully set forth in this Second Cause of Action.

8  28.    During the 2007 growing season, between about June and October of 2007, Oceano required
9  a fertilizer for the production of certified organic vegetable crops, including the Crops. Oceano also
10  required a fertilizer that would not cause the crops to be contaminated with any pathogenic organism such
11  as E Coli or salmonella, and that otherwise conformed to the requirements of the NOP regulations.

12  29.    Oceano relied on the skill and judgment of True and Western to manufacture, select and
13  furnish suitable fertilizer to meet Oceano's need for a fertilizer that would allow Oceano to produce
14  certified organic vegetable crops, while not causing contamination of the crops by pathogenic organisms.

16  30.    True and Western knew, or reasonably should have known, that Oceano required a fertilizer
17  for use in producing certified organic vegetables that would not cause pathogen contamination of Oceano's
18  Crops and which would comply with the requirements of the NOP regulations. True and Western knew
19  that Oceano was relying on the skill and knowledge of True and Western to manufacture, select and sell
20  a fertilizer that was fit for Oceano's intended use. True and Western made express warranties to Oceano,
21  orally and/or in writing, that the Fertilizer sold to Oceano during that time period (the True 10-5-2
22  Fertilizer) was fit for Oceano's intended use as a fertilizer to produce organic vegetables without causing
23  contamination of the vegetables with pathogens. Such warranties included, but were not limited to, the
24  warranties and representations set forth in the True Letter (attached as Exhibit B hereto), in which True and
25  Western represented that: the Fertilizer was "100% organic;" the Fertilizer contained only "NOP allowed
26  ingredients;" True's manufacturing processes "exceed all minimum standards for pathogen elimination";
27  the Fertilizer (which was made from chicken manure) had been composted in accordance with the
28  requirements of the NOP regulations, and was thus exempt from the 120 day to harvest requirement and

1    "able to be applied to crops at any time"; and that the Fertilizer is not released for sale "until we receive a

2    [certificate of analysis] from a certified lab resulting in negative results for EHEC, E coli 0157, and

3    Salmonella."

4        31.    True also made other express warranties regarding the suitability of its Fertilizer to meet

5    Oceano's needs in its advertising, including without imitation, the representations made by True on True's

6    internet web site which are set forth in Exhibit B.  On its web site, True makes the following express

7    warranties regarding its Fertilizer:

8            OUR PROMISE

9            We respect our growers' commitment to organic and sustainable farming.
             We take pride in manufacturing the finest 100% organic fertilizers on the
10           market, completely pathogen-free and always maintaining our guaranteed
             analysis.
11

12   (emphasis added).

13       32.    Oceano relied on the warranties made by True and Western in deciding to purchase the

14   Fertilizer.

15       33.    True and Western breached their express warranties that the Fertilizer sold to Oceano was

16   fit for Oceano's intended use.  As a direct and legal result of True and Western's breach of their express

17   warranties, the Fertilizer sold to Oceano was contaminated with salmonella and caused Oceano's Crops and

18   soils to become contaminated with salmonella which required that the Crops had to be destroyed.

19

20       34.    True's and Western's breaches of their express warranties is the direct and legal cause of

21   Oceano's damages described herein, which damages include lost revenues of approximately $1,073,633.30,

22   and such damages to be determined according to proof.

23                            **THIRD CAUSE OF ACTION**

24                        **(Breach of Implied Warranty of Fitness)**
                            **(Against True and Western)**
25

26       35.    Oceano hereby incorporates by reference each of the other allegations in this Cross-

27   Complaint as though fully set forth in this Third Cause of Action.

28       36.    As has been described above, during the 2007 growing season, Oceano required a fertilizer

1  for use in its production of certified organic vegetables and required a fertilizer that would not cause
2  Oceano's Crops to become contaminated by pathogenic organisms.  Oceano relied on the skill and
3  knowledge of True and Western to manufacture, select and/or sell Oceano fertilizer that was fit for
4  Oceano's intended use.

5      37.    At the time of Oceano's purchase of the Fertilizer as described herein, True and Western
6  knew, or reasonably should have known, of the particular purpose for which the Fertilizer was required by
7  Oceano, and that Oceano was relying on True and Western to manufacture, select and/or sell suitable
8  fertilizer to Oceano.  Accordingly, there was an implied warranty that the Fertilizer was fit for Oceano's
9  intended use.

10      38.    True and Western breached that warranty by manufacturing, selecting and/or selling
11  Fertilizer to Oceano that was contaminated with salmonella.
12

13      39.    The contaminated Fertilizer caused Oceano's Crops and soils to become contaminated with
14  salmonella, which required that the Crops had to be destroyed.

15      40.    True's and Western's breach of the implied warranty of fitness is the direct and legal cause
16  of Oceano's damages described herein, which damages included lost revenues of approximately
17  $1,073,633.30, and such other damages to be determined according to proof.

18  ### FOURTH CAUSE OF ACTION
19  #### (Negligence)
   #### (Against True and Western)
20

21      41.    Oceano hereby incorporates by reference each of the other allegations in this Cross-
22  Complaint as though fully set forth in this Fourth Cause of Action.

23      42.    True was under a legal duty to manufacture, package, store, test, and ship the Fertilizer in
24  a manner that eliminated the presence of pathogens, such as salmonella, and to prevent contamination of
25  the Fertilizer following manufacture. True was also under a legal duty to produce the Fertilizer in a manner
26  which complied with the NOP regulations, as expressly represented by True.

27      43.    True breached its legal duty by negligently and carelessly manufacturing, packaging, storing,
28  testing, and/or shipping (or failing to manufacture, package, store, test and/or ship) the Fertilizer in a

manner that caused the Fertilizer to be contaminated with salmonella when it was received by Oceano, and to violate the NOP regulations.

44.    Western was similarly under a legal duty to store, ship, maintain and/or test the Fertilizer in a manner that prevented contamination of the Fertilizer by salmonella and other pathogens, and to ensure that the Fertilizer complied with the NOP regulations. Western was also under a legal duty to investigate True's manufacturing, storage and shipment practices to ensure that they were adequate to prevent contamination of the Fertilizer by pathogens, such as salmonella, and to ensure that they complied with the NOP regulations, before recommending the Fertilizer to Oceano for Oceano's intended use.

45.    Western breached its legal duty by negligently and carelessly storing, shipping, maintaining and/or testing (or failing to appropriately store, ship, maintain and/or test) the Fertilizer in a manner that caused the fertilizer to be contaminated by salmonella when it was received by Oceano, and not to comply with the NOP regulations. Western also breached its legal duty by failing to adequately investigate True's manufacturing, storage and shipment practices to determine whether such practices were adequate to prevent the contamination of the Fertilizer by salmonella, and whether such practices complied with the requirements of the NOP regulations, before recommending and selling the Fertilizer to Oceano for Oceano's intended use.

46.    True's and Western's breach of their respective legal duties were the direct and legal cause of Oceano's damages as described herein, which damages include lost revenues of approximately $1,073,633.30, and such other damages to be determined according to proof.

## FIFTH CAUSE OF ACTION
### (Fraud)
### (Against True and Western)

47.    Oceano hereby incorporates by reference each of the other allegations in this Cross-Complaint as though fully set forth in this Fifth Cause of Action.

48.    True and/or Western made oral representations to Oceano that the True 10-5-2 Fertilizer purchased by Oceano would not contain pathogens such as salmonella, and would comply with the requirements of the NOP regulations..

49.    True and Western also made written representations to Oceano that the Fertilizer was manufactured in a manner that would eliminate pathogens such as salmonella, that the fertilizer had tested negative for pathogens, such as salmonella, and that the Fertilizer complied with the requirements of the NOP regulations. Such written representations included, without limitation, the following representations in the True Letter: (1) "Our manufacturing processes exceed all minimum standards for pathogen elimination"; (2) the chicken manure Fertilizer was properly composted, using the windrow compost method, in accordance with the requirements of the NOP regulations; and (3) the Fertilizer is "not released for sale until we receive a [certificate of analysis] from a certified lab resulting in negative results for EHEC, E coli 0157, and Salmonella."

50.    On its internet web site, True also made written representations that its fertilizers are "completely pathogen-free." (See Exhibit B attached hereto).

51.    These oral and written representations made by True and Western were false.

52.    True and Western, and their officers, directors and/or managing agents, knew that the above oral and/or written representations regarding the Fertilizer were false.

53.    True and Western, and their offices, directors and/or managing agents, made and/or authorized the above oral and/or written representations with the intent to induce Oceano and others to act (by buying the Fertilizer) in reliance on said representations.

54.    Oceano justifiably relied on the truth of such oral and/or written representations made by True and Western in deciding to purchase and use the Fertilizer during the 2007 growing season.

55.    The false representations made by True and Western are the direct and legal cause of the damages suffered by Oceano as described herein, which damages include lost revenues of approximately $1,073,633.30 and such other damages to be determined according to proof.

56.    Upon information and belief, at all times mentioned herein, True and Western, and their officers, directors and/or managing agents, were aware of the probable dangerous consequences of their conduct and willfully and deliberately failed to avoid those consequences. As such, True's and Western's acts of making false written and/or oral representations to Oceano with the intent that Oceano rely on said

representations constitutes fraud, malice and/or oppression, was despicable conduct done in conscious disregard of Oceano's rights, and thereby justifies an award of exemplary and punitive damages.

**SIXTH CAUSE OF ACTION**
**(Negligent Misrepresentation)**
**(Against True and Western)**

57.    Oceano hereby incorporates by reference each of the other allegations in this Cross-Complaint as though fully set forth in this Sixth Cause of Action.

58.    True and/or Western made oral representations to Oceano that the True 10-5-2 Fertilizer purchased by Oceano would not contain pathogens such as salmonella, and that the Fertilizer complied with the requirements of the NOP regulations.

59.    True and Western also made written representations to Oceano that the Fertilizer was manufactured in a manner that would eliminate pathogens, such as salmonella, and that the fertilizer had tested negative for pathogens, such as salmonella.  Such written representations included, without limitation, the following representations in the True Letter: (1) "Our manufacturing processes exceed all minimum standards for pathogen elimination"; (2) the chicken manure Fertilizer was properly composted, using the windrow compost method, in accordance with the requirements of the NOP regulations; and (3) the Fertilizer is "not released for sale until we receive a [certificate of analysis] from a certified lab resulting in negative results for EHEC, E coli 0157, and Salmonella."

60.    On its internet web site, True also made written representations that its fertilizers are "completely pathogen-free." (See Exhibit B attached hereto).

61.    The oral and/or written representations made by True and Western were false.

62.    When True and Western made these oral and/or written representations, they had no reasonable grounds for believing them to be true.

63.    True and Western made the above oral and/or written representations with the intent to induce Oceano and others to act (by buying the Fertilizer) in reliance on said representations.

64.    Oceano justifiably relied on the truth of such oral and/or written representations made by

True and Western in deciding to purchase and use the Fertilizer during the 2007 growing season.

65.    The false representations made by True and Western are the direct and legal cause of the damages suffered by Oceano as described herein, which damages include lost revenue of approximately $1,073,633.30, and such other damages to be determined according to proof.

### SEVENTH CAUSE OF ACTION
### (Unfair Competition)
### (Against True and Western)

66.    Oceano hereby incorporates by reference each of the other allegations in this Cross-Complaint as though fully set forth in this Seventh Cause of Action.

67.    California Business and Professions Code ("BPC") § 17203 states, in pertinent part, that any

> person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

68.    The term "unfair competition" is defined in BPC § 17200 as follows:

> As used in this chapter, unfair competition shall mean and include any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of [the BPC].

69.    The actions of True and Western in violation of the OFPA and NOP regulations as described above constitute unfair competition as defined by BPC § 17200 because such actions are "unlawful."

70.    In addition, the actions of True and Western described above violated the express provisions of the California Organic Products Act of 2003, California Food and Agricultural Code ("Food & Ag Code") § 46024(a), which provides as follows:

> It is unlawful for any person to advertise, label, or otherwise represent that any fertilizer or pesticide chemical may be used in connection with the production, processing, or distribution of products sold as organic if that fertilizer or pesticide chemical contains a prohibited material.

True and Western violated the provisions of Food & Ag Code § 46024(a) in that the Fertilizer was

contaminated by salmonella, as set forth above, which is a prohibited material for organic products. As such, the actions of True and Western in violating Food & Ag Code § 46024(a) constituted additional acts of unfair competition as defined by BPC § 17200 because such actions are also "unlawful."

71.    As described more fully above, True and Western also represented, in the True Letter and on True's internet web site that: (a) the Fertilizer is 100% organic; (b) the Fertilizer contained only "NOP allowed ingredients"; (c) True's manufacturing process "exceeded all the minimum standards for pathogen elimination"; (d) the Fertilizer was composted by the windrow compost method in accordance with the requirements of the NOP regulations; and (e) the Fertilizer was "completely pathogen-free." Said representations were false and were made by True and/or Western with knowledge that they were false and/or without any reasonable basis to believe that the representations were true. By making these representations, therefore, True and Western are guilty of unfair and/or fraudulent business acts or practices.

72.    The misrepresentations made by True and Western in the True Letter and on True's internet web site constitute "unfair, deceptive, untrue or misleading advertising."

73.    The definition of "unfair competition" in BPC § 17200 includes any act prohibited by BPC § 17500. BPC § 17500 states in pertinent part as follows:

> It is unlawful for any person, firm, corporation or association . . . with intent directly or indirectly to dispose of real or personal property . . . or anything of any nature whatsoever . . . to make or disseminate or cause to be made or disseminated before the public in this state . . . in any newspaper or other publication, or any advertising device . . . or in any other manner or means whatever, including over the internet, any statement, concerning that real or personal property . . . or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . .

74.    The misrepresentations made by True and Western in the True Letter and on True's internet web site, as described above, constitute untrue and/or misleading statements regarding the Fertilizer which True and Western knew to be untrue, or through the exercise of reasonable care should have known to be untrue. The misrepresentations were made with the intent directly or indirectly to dispose of the Fertilizer. Said misrepresentations therefore constitute a violation of BPC § 17500, and also constitute "unfair competition" as defined in BPC § 17200.

75.     The acts of unfair competition committed by True and Western are the direct and legal cause of the damages sustained by Oceano as described herein, which damages include lost revenues of approximately $1,073,633.30, and such other damages to be determined according to proof.

## EIGHTH CAUSE OF ACTION
### (Federal Unfair Competition - 15 U.S.C. §1125)
### (Against True and Western)

76.     Oceano hereby incorporates by reference each of the other allegations in this Cross-Complaint as though fully set forth in this Eighth Cause of Action.

77.     This Eighth Cause of Action is brought pursuant to 15 U.S.C. § 1125(a)(1), which states, in pertinent part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol or device, or any combination thereof, . . . or false or misleading representation of fact, which –
>
> * * * *
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

78.     As described in detail above, in the True Letter and on True's internet web site, True and Western made false and/or misleading representations of fact regarding the Fertilizer in commerce which misrepresented the nature, characteristics, and/or qualities of the Fertilizer.

79.     Oceano justifiably relied on the false and/or misleading representations of fact made by True and Western regarding the Fertilizer in commerce.

80.     True and Western's false and/or misleading representations of fact regarding the Fertilizer were the direct and legal cause of Oceano's damages as described herein, which include lost revenues of approximately $1,073,633.30, and such other damages to be determined according to proof.

## NINTH CAUSE OF ACTION
### (Conversion)
### (Against Western Only)

81.     Oceano hereby incorporates by reference each of the other allegations in this Cross-Complaint as though fully set forth in this Ninth Cause of Action.

82.     On or about January 10, 2008, a representative of Western, Darin Chebot, went onto Oceano's leased farmland located in San Luis Obispo County, California, without the permission or consent of Oceano, and removed a variety of items of personal property owned by Oceano, including, without limitation, the agricultural chemicals listed on Exhibit D attached hereto and incorporated herein by reference (the "Converted Property"). Oceano promptly filed a report with the San Luis Obispo County Sheriff's department which reported that the Converted Property had been unlawfully taken from Oceano by the representative of Western.

83.     . Mr. Chebot was acting for and on behalf of Western, with the knowledge and/or consent of Western's officers, directors, and/or managing agents, at the time he removed the Converted Property from Oceano's farmland, without the permission or consent of Oceano.

84.     Repeated demands were made to Mr. Chebot and to Western to return the items of Converted Property to Oceano, but they failed to do so for an extended period of time, thus depriving Oceano of the use of the Converted Property. After Oceano filed a complaint against Western regarding such actions in U. S. District Court, Western returned some, but not all, of the Converted Property to Oceano.

85.     By committing these actions, Western is guilty of conversion of the Converted Property.

86.     Western's act of conversion of the Converted Property has caused Oceano to suffer damages in an amount to be proven at trial.

87.     Western, and its officers, directors, and/or managing agents, were aware that said acts of conversion of the Converted Property occurred, and that the Converted Property was the property of Oceano, and that Oceano was entitled to the possession thereof, and notwithstanding such knowledge, Western wrongfully, maliciously, and with intent to injure Oceano took the Converted Property and then failed to return all of the Converted Property, which actions constitutes despicable conduct done in conscious disregard of Oceano's rights, thereby justifying an award of exemplary and punitive damages.

## TENTH CAUSE OF ACTION
### (Defamation)
### (Against Western Only)

88.    Oceano hereby incorporates by reference each of the other allegations in this Cross-Complaint as though fully set forth in this Tenth Cause of Action.

89.    At various times between January 10, 2008 and continuing to the present, various employees, officers, directors, and/or managing agents of Western, acting within the scope and course of their employment or agency with Western, have made false representations regarding Oceano to third parties, including without limitation, representations that Oceano is not paying its trade debts in a timely manner. Said false representations were made by the employees, officers, directors, and/or managing agents of Western with the actual intent to injure Oceano in its credit, finances and reputation in the industry. Said false representations were motivated by hatred or ill will toward Oceano and/or were made without any reasonable grounds for believing the truth of said representations.

90.    The false representations made by Western as described herein have caused Oceano to suffer injury to its reputation and finances in an amount to be proven at trial.

91.    Said false representations made by the employees, officers, directors, and/or managing agents of Western constitute fraud, malice and/or oppression, and constitutes despicable conduct done in conscious disregard of Oceano's rights, thereby justifying an award of exemplary and punitive damages.

## REQUEST FOR RELIEF

NOW THEREFORE, Oceano respectfully requests that the Court order relief as follows on its Cross-Complaint:

### On the First Cause of Action:

1.    Order True and Western to pay compensatory damages in the amount of $1,073,633.30, or such other amount as is determined according to proof, plus consequential damages, interest and such other damages as may be proven at trial;

2.    Issue an order declaring that True and Western's actions violate the requirements of the

OFPA and the NOP regulations;

     3.     Issue an order enjoining True and Western from continuing to violate the OFPA and NOP regulations;

     4.     Issue an order enjoining True and Western from: (A) continuing to represent the Fertilizer as "organic" or "100% organic"; (B) continuing to represent that the Fertilizer was composted or otherwise treated in accordance with the NOP regulations; and (C) continuing to represent that the Fertilizer, or any other fertilizer manufactured by True, is "completely pathogen-free";

     5.     Order True and Western to pay Oceano's attorney's fees and costs; and

     6.     Order such other and further relief as the Court determines is just and proper.

**On The Second, Third, Fourth, and Sixth Causes Of Action:**

     1.     Order True and Western to pay compensatory damages in the amount of $1,073,633.30, or such other amount as is determined according to proof, plus consequential damages, interest and such other damages as may be proven at trial;

     2.     Order True and Western to pay Oceano's attorney's fees and costs; and

     3.     Order such other and further relief as the Court determines is just and proper.

**On The Fifth Cause of Action:**

     1.     Order True and Western to pay compensatory damages in the amount of $1,073,633.30, or such other amount as is determined according to proof, plus consequential damages, interest and such other damages as may be proven at trial;

     2.     Order True and Western to pay punitive damages in an amount to be determined at trial;

     3.     Order True and Western to pay Oceano's attorney's fees and costs; and

     4.     Order such other and further relief as the Court determines is just and proper.

**On The Seventh Cause of Action:**

     1.     Order True and Western to restore to Oceano all money acquired by True and Western's acts of unfair competition, including ordering True and Western to restore to Oceano lost revenues of

$1,073,633.30, or such other amount as is determined according to proof, plus consequential damages, interest and such other damages as may be proven to have been caused by the unfair competition at trial;

 2. Issue an order enjoining True and Western from continuing to engage in the acts of unfair competition described herein;

 3. Order True and Western to pay Oceano's attorney's fees and costs; and

 4. Order such other and further relief as the Court determines is just and proper.

**On the Eighth Cause of Action:**

 1. Order True and Western to pay damages in the amount of $1,073,633.30, or such other amount as is determined according to proof, plus consequential damages, interest and such other damages as may be proven at trial;

 2. Issue an order enjoining True and Western from continuing to make the false and/or misleading representations of fact regarding the Fertilizer described herein;

 3. Order True and Western to pay Oceano's attorney's fees and costs; and

 4. Order such other and further relief as the Court determines is just and proper.

**On The Ninth Cause of Action:**

 1. Order Western to pay damages caused by its act of conversion of the Converted Property in an amount to be proven at trial;

 2. Order Western to pay punitive damages in an amount to be proven at trial;

 3. Order Western to pay Oceano's attorney's fees and costs; and

 4. Order such other and further relief as the Court determines is just and proper.

**On The Tenth Cause of Action:**

 1. Order Western to pay damages caused by its acts of defamation in an amount to be proven at trial;

 2. Order Western to pay punitive damages in an amount to be proven at trial;

1      3.    Order Western to pay Oceano's attorney's fees and costs; and

2      4.    Order such other and further relief as the Court determines is just and proper.

3  DATED: April 22, 2008               Respectfully submitted,

4                                  ANASTASSIOU & ASSOCIATES

By:                    
Elie F. Anastassiou, Esq.
Attorneys for Oceano Packing Company, LLC

F:\OCA\Salmonella\WFS v. OCA\Answer.Counterclaim.wpd

**EXHIBIT A**



**TRUE**
ORGANIC PRODUCTS, INC

January 16, 2007

To Whom It May Concern:

True Organic Products, Inc. prides itself on manufacturing 100% organic pelleted and liquid fertilizers. Our products do not contain any ammonia or non-protein forms of Nitrogen. We have files and receipts available for all inputs made to manufacture all of our fertilizers. We have been inspected by both the CDFA and the Natural Selection Group receiving excellent reviews from both organizations. We guarantee our products only contain NOP allowed ingredients.

True organic Products, Inc. uses the windrow compost process for our aged chicken litter. NOP Rule; Section 205.203 (c) states: Animal and plant materials produced through a process that: (i) establish an initial C:N ration between 25:1 and 40:1, (ii) maintain a temperature between 131 °F and 170 °F for fifteen days using a windrow pile system. By utilizing the above process, our products containing chicken litter are considered a compost material and are not subject to the 120 day prior to harvest rule. We also carry a number of pelleted 100% organic fertilizers which do not contain any composted chicken litter and are also able to be applied to crops at any time.

In the process of pelleting our products, the temperature ranges between 195 °F and 205 °F. In the drying process, the temperature is maintained at a minimum of 350 °F for approximately 30 minutes to dry the material to a moisture level of less the 12%. Our liquid fertilizers are heated in excess of 150 °F for a minimum of 48 hours. Our manufacturing processes exceed all minimum standards for pathogen elimination.

All of our organic fertilizers are assigned lot numbers and are not released for sale until we receive a COA from a certified lab resulting in negative results for EHEC, E coli 0157, and Salmonella. The COA will accompany each load of fertilizer along with the bill of lading. If you have any further questions, please feel free to call.

Best regards,

Jake Evans

PO Box 124   Helm, CA 93627
Office: (559) 866-3001   Fax: (559) 866-3003

**EXHIBIT B**

 

**ORGANIC PRODUCTS, INC**

**WHEN IT COMES TO ORGANIC...IT HAS TO BE TRUE**

HOME

OUR KNOWLEDGE
AND PERFORMANCE

SERVICE & METHODS

OUR MISSION

CONTACT US

OUR PROMISE

We respect our growers' commitment to organic and sustainable
farming. We take pride in manufacturing the finest 100% organic
fertilizers on the market, completely pathogen-free and always
maintaining our guaranteed analysis.

OUR SERVICE

We are committed to providing excellent customer service, maintaining
strong relationships with our growers, and always delivering on our
word. Having grown along with our organic farmers, we are
well-respected in the marketplace and have established a bond of
trust with our growers which is second to none. We provide exactly
what our customers want, fulfill our commitments, and make every
attempt to exceed our grower's expectations. True Organic Products
is proud of our reputation in the organic industry.

OUR METHODS

Unlike our competition, we will not and do not jeopardize our
commitment to our organic growers and the organic industry by
cutting corners to reap financial gain. We encourage a laboratory
analysis of our fertilizers by our customers – at our expense – to
ensure that only the highest quality organic fertilizers are being
applied to your land.

2006© True Organic Products, INC.

P.O. Box 124, Helm, California 93627

Phone: 559.866.3001 Fax: 559.866.3003

**EXHIBIT C**



**FARM SERVICE**

*The Best People*
*The Best Products*
*The Best Service*



CUSTOMER ORIGINAL

SALES ARE COMMERCIAL TRANSACTIONS
TERMS: Unless otherwise specified all bills and purchases made are payable in full upon receipt of the monthly billing statement. A FINANCE CHARGE will be assessed if payment of the new balance shown on your monthly statement is not received by the date shown on the bottom of the statement.

WESTERN FARM SERVICE, INC.
PASO ROBLES
2502 OAKWOOD DRIVE
PASO ROBLES, CA 93446
805-238-3825

Please mail remittance to:
FILE 7304.
P.D. BOX 60000
SAN FRANCISCO, CA 94160-3041

| | | |
|---|---|---|
| Due Date | 7/20/07 | Invoice No | 651- 5B553 |
| Account No | 5121569 | Invoice Date | 6/01/07 |
| W / O No. | 53792-0 D | |
| Cust. P.O. | | |
| Grower | | |
| Ship Date | 5/31/07 | Rec Made---)NI |
| Ranch | | |
| Crop | | |
| Pest | | |
| Acres | | |
| Map | | |
| Site ID | | |
| Block | | |
| Appl-Name | | |
| Appl-Lic# | | |
| Sales No. | 656 | |
| Oper ID# | 40-07-40-22059 | |

OCEANO PACKING CO LLC

PO BOX 458
OCEANO                    CA 93445

| Quantity | Product Description / EPA# | Tax Code | Price | Amount | ( Gals. | | Price/Gal. ) |
|---|---|---|---|---|---|---|---|
| | | | Dry | | Rig | State 04 | Sls 651   Whs 651 |
| 23100.00 LB<br>11.5500 TNS | 6401050 TRUE 10-5-2 BULK BAGS | N | 706.0976 /TN | 8,155.43 N | | | |

| GROSS AMOUNT | TAX | LESS PRE-PAID | INVOICE TOTAL |
|---|---|---|---|
| 8,155.43 | .00 | | 8,155.43 |

THANK YOU FOR BUYING FROM WESTERN FARM SERVICE, INC WE APPRECIATE YOUR BUSINESS.





**WESTERN FARM SERVICE**

The Best People
The Best Products
The Best Service



INVOICE

CUSTOMER ORIGINAL

SALES ARE COMMERCIAL TRANSACTIONS
TERMS: Unless otherwise specified all bills to
purchases made are payable in full upon receipt of
the monthly billing statement. A FINANCE CHARGE
will be assessed if payment of the new balance
shown on your monthly statement is not received by
the date shown on the bottom of the statement

WESTERN FARM SERVICE, INC.
PASO ROBLES
2502 OAKWOOD DRIVE
PASO ROBLES, CA 93446
 805-238-3825

Please mail remittance to:
FILE 73041
P.O. BOX 60000
SAN FRANCISCO, CA 94160-3041

| | |
|---|---|
| Due Date | 7/20/07 |
| Account No | 5121569 |
| W / O No. | 53800-0 D |
| Cust. P.O. | |
| Grower | |
| Ship Date | 5/31/07 |
| Ranch | |
| Crop | |
| Pest | |
| Acres | |
| Map | |
| Site ID | |
| Block | RANCH 25 |
| Appl—Name | |
| Appl-LicDt | |
| Sales No. | 656 |
| Oper ID# | 40-07-40-22059 |

Invoice No | 651- 58554
Invoice Date | 6/01/07

Rec Made—> NI

OCEANO PACKING CO LLC

PO BOX 458
OCEANO                     CA  93445

| Quantity | | Product Description  / EPA# | Tax Code | Price | Amount | ( | Gals. | | Price/Gal. ) |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Drv | | Rig | State 04 | Sls 651 | Whs 651 |
| 22880.00 | LB | 6401050 TRUE 10-5-2 BULK BAGS | N | 705.8976 /TN | 8,077.76 | N | | | |
| OR | 11.4400 TNS | | | | | | | | |

| GROSS AMOUNT | TAX | LESS PRE-PAID | INVOICE TOTAL |
|---|---|---|---|
| 8,077.76 | .00 | | 8,077.76 |

THANK YOU FOR BUYING FROM WESTERN FARM SERVICE, INC WE APPRECIATE YOUR BUSINESS .





The Best People
The Best Products
The Best Service



INVOICE

CUSTOMER ORIGINAL
SALES ARE COMMERCIAL TRANSACTION
TERMS: Unless otherwise specified all bills
purchases made are payable in full upon receipt
the monthly billing statement A FINANCE CHARGE
will be assessed if payment of the new balance
shown on your monthly statement is not received
the date shown on the bottom of the statment

WESTERN FARM SERVICE, INC.
PASO ROBLES
2502 OAKWOOD DRIVE
PASO ROBLES, CA 93446
805-238-3825

Please mail remittance to:
FILE 7304.
P.O. BOX :0000
SAN FRANCISCO, CA 94160-3041

| | | |
|---|---|---|
| Due Date | 7/20/07 | Invoice No  651- 58567 |
| Account No | 5121569 | Invoice Date  6/04/07 |
| W / O No. | 53803-0 D | |
| Cust. P.O. | | |
| Grower | | |
| Ship Date | 5/31/07 | Rec Made---)N! |
| Ranch | | |
| Crop | | |
| Pest | | |
| Acres | | |
| Map | | |
| Site ID | | |
| Block | | |
| Appl-Name | | |
| Appl-LicDt | | |
| Sales No. | 656 | |
| Oper.ID# | 40-07-40-22059 | |

OCEANO PACKING CO LLC

PO BOX 458
OCEANO                    CA 93445

| Quantity | Product Description / EPA# | Tax Code | Price    Amount | ( Gals. | Price/Gal. ) |
|---|---|---|---|---|---|
| | | | Dry | Rig | State 04   Sls 651   Whs 651 |
| 16100.00   LB | 6401050 TRUE 10-5-2 BULK BAGS | N | 706.0976 /TN   5,684.09  N | | |
| 8.0500   TNS | | | | | |

| GROSS AMOUNT | TAX | LESS PRE-PAID | INVOICE TOTAL | |
|---|---|---|---|---|
| 5,684.09 | .00 | | 5,684.09 | ✓ |

THANK YOU FOR BUYING FROM WESTERN FARM SERVICE, INC WE APPRECIATE YOUR BUSINESS .





CUSTOMER ORIGINAL

WESTERN
FARM SERVICE

The Best People
The Best Products
The Best Service



SALES ARE COMMERCIAL TRANSACTIONS
TERMS: Unless otherwise specified all bills for
purchases made are payable in full upon receipt of
the monthly billing statement. A FINANCE CHARGE
will be assessed if payment of the new balance
shown on your monthly statement is not received by
the date shown on the bottom of the statement

WESTERN FARM SERVICE, INC.
PASO ROBLES
2502 OAKWOOD DRIVE
PASO ROBLES, CA 93446
805-238-3825

Please mail remittance to:
FILE 73041
P.O. BOX 63000
SAN FRANCISCO, CA 94160-3041

| | |
|---|---|
| Invoice No | 651- 58650 |
| Invoice Date | 6/07/07 |

| | |
|---|---|
| Due Date | 7/20/07 |
| Account No | 5121569 |
| W / C No. | 53812-0 D |
| Cust. P.O. | |
| Grower | |
| Ship Date | 6/01/07 |
| Ranch | |
| Crop | |
| Pest | |
| Acres | |
| Map | |
| Site ID | |
| Block | RANCH 25 |
| Appl-Name | |
| Appl-LicDt | |
| Sales No. | 656 |
| OperID# | 40-07-40-22059 |

Rec Made---)N1

OCEANO PACKING CO LLC

PO BOX 458
OCEANO                CA 93445

DIRECT SHIPMENT TO RANCH 25

| Quantity | | Product Description / EPA# | Tax Code | Price | Amount | | ( Gals. | | Price/Gal. ) |
|---|---|---|---|---|---|---|---|---|---|
| 52200.00 | LB | 6401050 TRUE 10-5-2 BULK BAGS | N | 706.0976 /TN | 18,429.15 | Dry N | State 04 | Sls 651 | Rig Whs 651 |
| DR 26.1000 | TNS | | | | | | | | |

1040

| GROSS AMOUNT | TAX | LESS PRE-PAID | INVOICE TOTAL |
|---|---|---|---|
| 18,429.15 | .00 | | 18,429.15 |

THANK YOU FOR BUYING FROM WESTERN FARM SERVICE, INC WE APPRECIATE YOUR BUSINESS.



**WESTERN FARM SERVICE**

*The Best People*
*The Best Products*
*The Best Service*

# INVOICE

CUSTOMER ORIGINAL

SALES ARE COMMERCIAL TRANSACTIONS
TERMS: Unless otherwise specified all bills for purchases made are payable in full upon receipt of the monthly billing statement. A FINANCE CHARGE will be assessed if payment of the new balance shown on your monthly statement is not received by the date shown on the bottom of the statement.

WESTERN FARM SERVICE, INC.
PASO ROBLES
2502 OAKWOOD DRIVE
PASO ROBLES, CA 93446
805-238-3825

Please mail remittance to:
FILE 73041
P.O. BOX 60000
SAN FRANCISCO, CA 94160-3041

| | |
|---|---|
| Due Date | 9/20/07 |
| Account No | 5121569 |
| W / D No. | 54600-0 D |
| Cust. P.O. | |
| Grower | |
| Ship Date | 7/27/07 |
| Ranch | |
| Crop | |
| Pest | |
| Acres | |
| Map | |
| Site ID | |
| Block | |
| Appl—Name | |
| Appl—LicDt | |
| Sales No. | 556 |
| OperID# | 40-07-40-22059 |

Invoice No    651- 59313
Invoice Date   7/31/07

Rec Made——)N1

OCEANO PACKING CO LLC

PO BOX 458
OCEANO          CA 93445

| Quantity | Product Description / EPA# | Tax Code | Price Drv | Amount | ( | Rig | Gals. State 04 | Sls 651 | Price/Gal. Whs 651 ) |
|---|---|---|---|---|---|---|---|---|---|
| 4580.00 LB | 6401050 TRUE 10-5-2 BULK BAGS | N | 732.9113 /TN | 1,678.37 N | | | | | |
| 2.2900 TNS | | | | | | | | | |

| GROSS AMOUN | TAX | LESS PRE-PAID | INVOICE TOTAL |
|---|---|---|---|
| 1,678.37 | .00 | | 1,678.37 |

THANK YOU FOR BUYING FROM WESTERN FARM SERVICE, INC WE APPRECIATE YOUR BUSINESS .





# INVOICE

CUSTOMER ORIGINAL

SALES ARE COMMERCIAL TRANSACTIONS
TERMS: Unless otherwise specified, all bills
purchases made are payable in full upon receipt
the monthly billing statement. A FINANCE CHARG
will be assessed if payment of the new balan
shown on your monthly statement is not received
the date shown on the bottom of the statemen

WESTERN FARM SERVICE, INC.
PASO ROBLES
2582 OAKWOOD DRIVE
PASO ROBLES, CA  93446
805-238-3825

_Please mail remittance to:_
FILE 73041
P.O. BOX 60000
SAN FRANCISCO, CA 94160-3041

| | |
|---|---|
| Due Date | 9/20/07 |
| Account No | 5121569 |
| W / O No. | 54645-0 D |
| Cust. P.O. | |
| Grower | |
| Ship Date | 8/01/07 |
| Ranch | |
| Crop | |
| Pest | |
| Acres | |
| Map | |
| Site ID | |
| Block  - | DIRECT SHIPMENT R25 |
| Appl--Name | |
| Appl-LicDt | |
| Sales No. | 656 |
| OperID# | 40-07-40-22059 |

Invoice No | 651- 59309
Invoice Date | 8/13/07

Rec Made——)N1

OCEANO  PACKING  CO  L.C

PO  BOX  458
OCEANO                    CA  93445

DIRECT SHIPMENT TO RANCH 25

| Quantity | Product Description  / EPA# | Tax Code | Price | Amount | ( Gals. | ) | | | Price/Bal. |
|---|---|---|---|---|---|---|---|---|---|
| 50760.00  LB | 6401050 TRUE 10-5-2 BULK BAG! | N | 705.0976 /TN | 17,920.76 N | Rig | State 04 | Sls 651 | Whs 651 | |
| OR  25.3800  TNS | | | Dry | | | | | | |

| GROSS AMOUNT | TAX | LESS PRE-PAID | INVOICE TOTAL |
|---|---|---|---|
| 17,920.76 | .00 | | 17,920.76 |

_THANK YOU FOR BUYING FROM WESTERN FARM SERVICE, INC WE APPRECIATE YOUR BUSINESS._

1040



**EXHIBIT D**



SAN LUIS OBISPO COUNTY
SHERIFF-CORONER

D. ANDOE TOE / 0413
NORTH STATION

08-01-00322

Patrick Hodges, Sheriff
P.O. Box 52, San Luis Obispo, CA 93406
(805) 434-4250
24-Hr. (805) 781-4550

# QUALITY
## Packaging & Supplies, Inc.
2400 STATHAM BLVD, · OXNARD, CALIFORNIA 93033
805-240-2410 · 800-887-7225 · FAX: 805-240-2430
SERVING AGRICULTURE AND INDUSTRY
www.qualityps.com



_**Inventory removed by Western Farm Service on 1/10/08**_
Persons present were
**Ernesto Solis – opc**
**John Dana- opc**
**Darren Chabot- wfs**
**Three workers- wfs**

24 lb kerb
6 gal pyganic
7 gal aza direct (7 x 1)
15 gal aza direct (2.5 x 6)
5 gal prefar
5 gal roundup
2.5 gal n-phorce
80 gal oxidate
40 lb xentari
156 lb serenade
105 lb agree
15 gal nutra phite
12.5 gal calcium poly amine
5 gal magnesium poly amine
15 gal senata
5 lb dipel df
10 lb maneb 75 df
3 qt nemex
1300 lb diazinon 14g
2.5 gal roneet
1 gal warrior
4 gal ultra flourish
5 gal matran ec
2 gal abba .15ec
2.5 coastal calmex
2 gal nu flim p
1 gal parasol
2 gal no foam b
20 oz flint

John Dana

**EXHIBIT E**



## 10-5-2
## 100% ORGANIC FERTILIZER

### GUARANTEED ANALYSIS

**Total Nitrogen (N)**...................................................................................10.0%
      2.06% Water Soluble Organic Nitrogen
      7.94% Water Insoluble Organic Nitrogen

**Available Phosphoric Acid (P205)**.............................................................5.0%

**Soluble Potash (K20)**............................................................................2.0%

Nitrogen derived from aged chicken manure and feathermeal. Phosphoric acid derived from aged chicken manure and rock phosphate. Soluble potash derived from aged chicken manure and sulfate of potash.

## DESCRIPTION:

True Organic Products 10-5-2 is a homogeneous pelleted fertilizer formulated specially for 100% organic fruits and vegetables.

## ADVANTAGES:

- Immediate and slow release nitrogen
- Supplies nutrients plus organic matter in one application
- High in P205 and K20
- Cost effective

**Application Rates:**          600-800 lbs. per acre

**Increased Nitrogen Application:**    800-1600 lbs. per acre

**Available in:**           Bulk bags



P.O. Box 124
Helm, CA 93627
Office: (559)866-3001
Fax: (559)866-3003

March 30, 2007

To Whom It May Concern:

From: True Organic Products, Inc.

Re: 10-5-2

NITROGEN:

- Feather meal, NOP allowed, OMRI allowed (A) and OMRI class fertilizer (F)
- Meat and Bone meal, NOP allowed, OMRI allowed (A) and OMRI class fertilizer (F)

PHOSHORIC ACID:

- Meat & Bone meal , NOP allowed, OMRI allowed (A) and OMRI class fertilizer (F)

POTASSIUM:

- Mined GSL sulfate of potash, NOP allowed, OMRI allowed (A) and OMRI class fertilizer (F).

OMRI DESIGNATIONS:

ALLOWED (A) materials may be used on certified organic land and crops.

True Organic Products, Inc. organic fertilizer product 10-5-2 is made entirely with the previous products which are OMRI status allowed (A) and NOP allowed. If you have any further questions regarding any products or ingredients, please call me.

Thank you.

Jacob Evans

1

## PROOF OF SERVICE

I am employed in the County of Monterey, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 242 Capitol Street, Salinas, California 93901.

On the date set forth below, I caused the following document(s) entitled:

**OCEANO PACKING COMPANY, LLC'S ANSWER AND CROSS-COMPLAINT**

to be served on the party(ies) or its (their) attorney(s) of record in this action listed below by the following means:

| | |
|---|---|
| X | **BY MAIL.** By placing each envelope (with postage affixed thereto) in the U.S. Mail at the law offices of Anastassiou & Associates, Salinas, California addressed as shown below. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and in the ordinary course of business, correspondence would be deposited with the U.S. Postal Service the same day it was placed for collection and processing. |
| | **BY HAND-DELIVERY.** By causing a true copy thereof, enclosed in a sealed envelope, to be delivered by hand to the address(es) shown below. |
| | **BY OVERNIGHT DELIVERY.** By placing with an overnight mail company for delivery a true copy thereof, enclosed in a sealed envelope, with delivery charges to be billed to Anastassiou & Associates, addressed as shown below. |
| | **BY FACSIMILE TRANSMISSION.** By transmitting a true copy thereof by facsimile transmission from facsimile number (831) 754-0621 to the interested party(ies) or their attorney(s) of record to said action at the facsimile number(s) shown below. |
| | **BY ELECTRONIC MAIL.** By transmitting a true copy thereof by electronic mail from e-mail address paralegal@salinasaglaw.com to the interested party(ies) or their attorney(s) of record to said action at the electronic mail address(es) shown below. |

Dale Dorfmeier, Esq.
Petrie, Dorfmeier & Morris
2014 Tulare Street, Suite 830
Fresno, California 93721
Telephone: 559-498-6522
Fax: 559-498-6515
Attorney for Western Farm Service, Inc.

Jube J. Najarian
Jacobson, Hansen, Najarian & McQuillan
1690 W. Shaw Avenue, Suite 201
Fresno, CA 93711

Attorney for True Organic Products, Inc.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 22, 2008, at Salinas, California.

Sheresa L. Tanner

# EXHIBIT "B"

1   Dale Dorfmeier, Esq.; SBN 076266
2   PETRIE, DORFMEIER & MORRIS, LLP
    2014 Tulare Street, Suite 830
3   Fresno, CA 93721
4   Telephone (559) 498-6522
    Facsimile   (559) 498-6516
5   Attorneys   for   Defendant,   WESTERN
6   FARM SERVICE, INC.

7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA
10

11  OCEANO PACKING COMPANY,          Case No. C08 00839 JW
12  LLC,

13              Plaintiff,           MOTION BY DEFENDANT
                                     WESTERN FARM SERVICE, INC.
14                                   TO DISMISS ACTION, OR IN
15  v.                               THE ALTERNATIVE, STAY
                                     FEDERAL ACTION
16  TRUE ORGANIC PRODUCTS,
    INC., A California Corporation; and
17  WESTERN FARM SERVICE, INC.,
18  A Delaware Corporation,          DATE: 4/9/08
                                     TIME: 8:30 a.m.
19              Defendants.          JUDGE: Hon. Richard Seebrog

20

21

22

23

24

25

26

27

28

MOTION  BY  DEFENDANT   WFSI TO DISMISS
ACTION, OR IN THE ALTERNATIVE STAY FEDERAL
ACTION

1

## **TABLE OF CONTENTS**

2

3   I.   STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4
    II.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
5

6   III. PROCEDURAL STATUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7   IV.  LAW AND ARGUMENT ALL PARTIES, INCLUDING OCEANO, HAVE
8        A DUTY TO
         INFORM THE COURT OF THE STATE COURT ACTION . . . . . . . . 4
9

10  V.   GENERAL AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11  VI.  A THRESHOLD ANALYSIS MUST BE DONE TO SEE IF THE
12       FEDERAL
         ACTION AND THE STATE ACTION ARE "PARALLEL" OR
13       "SUBSTANTIALLY SIMILAR" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

14
             A.   The *Colorado River Doctrine* Applies to These Two Cases
15                and Tips Heavily in Favor of Dismissing And/or Staying the
16                Federal Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

17  VII. THE FIRST-TO-FILE RULE ALSO FAVORS THE STATE COURT
18       ACTION AND DISMISSING AND/OR STAYING THE FEDERAL
19       ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

20  VIII. DISMISSAL OR STAY? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

21  IX.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

22

23

24

25

26

27

28

C08 00839 JW

# TABLE OF AUTHORITIES

## STATE CASES

Currie Medical Specialties, Inc. v. Bowen 136 Cal.App.774, 777, 186 Cal.Rptr. 543, 544 (Cal.App.Ct. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

City of Hanford v. GWF Power Systems, Inc. 208 Cal.App.3d 580, 587, 256 Cal.Rptr. 274, 278 (Cal.App.Ct. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## FEDERAL CASES

Allstate Insurance Company v. Huerta (2006) U.S. DIST. Lexis 69486 (2006 - ED Ca) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Alltrade, Inc. v. Uniweld Products, Inc. 946 F.2d 622, 625 (9th Cir. 1991 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

British Telecommunications, et al. v. McDonnell-Douglas Corporation 1993 U.S. Dist. Lexis 6345 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

Church of Scientology v. United States Dep't of the Army 611 F.2d 738, 750 (9th Cir. 1979), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Colorado River Water Conservation Dist. v. United States 424 U.S. 800, 817, 96 S.Ct. 1236 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In Re Burley, 738 F.2d 981, 988 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . 12

Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp. 460 U.S. 1, 19, 103 S.Ct. 927, 938 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Nakash v. Marciano 82 F.2d 1411 (1989) . . . . . . . . . . . . . . . . 5, 6, 8, 9, 11

Pacesetter Systems, Inc. V. Medtronic, Inc., et al. 678 F.2d 93 (1982 9th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Republic Bank Dallas v. McIntosh 828 F.2d 1120 (Fifth Circuit 1987) . 5, 6

<u>Silbaco Data Systems, Inc. v. Technology Modeling Associates, Inc.</u>
896 F.Supp.973 (1995 - ND Ca) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STATE STATUTES**

California Code of Civil Procedure Section 426.10(c) . . . . . . . . . . . . . . . 7

California Code of Civil Procedure Section 426.30 . . . . . . . . . 2, 6, 7, 8, 10

California Code of Civil Procedure Section 426.40(c) . . . . . . . . . . . . 2, 7

**STATE RULES**

California Rules of Court Rule 3.714(b) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**FEDERAL STATUTES**

28 USC § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**FEDERAL RULES**

FRCP Rule 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

FRCP Rule 13(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FRCP Rule 13(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 10

Local Rule 3-13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

Local Rule 3-13(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    COMES NOW Defendant WESTERN FARM SERVICE, INC., herein
2  referred to as "WFS" or "Defendant," in the above-entitled matter and files its
3  Motion to Dismiss Action, or in the Alternative, Stay Federal Action based
4  upon another action pending in the Superior Court of the State of California,
5  in and for the County of San Luis Obispo on the following grounds.

6                                          I.

7                          **STATEMENT OF ISSUES**

8      Whether this Court should dismiss or stay this action in light of the
9  first-filed State Court action which is pending between Plaintiff and moving
10  party and which would soon include all the claims and parties presented here.

11                                        II.

12                        **FACTUAL BACKGROUND**

13     This action was filed on or about February 6, 2008, in the United States
14  District Court, for the Northern District of California - San Jose Division by
15  Plaintiff, OCEANO PACKING COMPANY, LLC. ("OCEANO"). Subsequently,
16  on February 15, 2008, OCEANO served a First Amended Complaint.

17     On January 22, 2008, Defendant WESTERN FARM SERVICE, INC.
18  filed an action in the Superior Court of the State of California, County of San
19  Luis Obispo, Case No. CV 080074. This is essentially a collection action for
20  money due, in the amount of $416,569.70, based upon WFS having supplied
21  services and products to OCEANO. These products included the organic
22  fertilizers which represent the subject matter of the action before the District
23  Court.

24     On February 4, 2008, WFS attempted to serve OCEANO's agent  for
25  service of process. OCEANO's agent for service of process is attorney Effie
26  Anastassiou, who is OCEANO's attorney in this matter. WFS' process server
27  was told that Ms. Anastassiou was not available, and that she could not leave
28  the summons and complaint in the State collection action at Ms.

H:\37382\70096
Oceano\Federal
Action\WFSI-Mon Stay or
Dismiss.wpd

CV08 00839 JW

1
MOTION BY DEFENDANT WFSI TO DISMISS ACTION, OR IN
THE ALTERNATIVE, STAY FEDERAL ACTION

1   Anastassiou's office, located at 242 Capitol Street, Salinas, California.
2   Instead, the process server was told that Ms. Anastassiou would only accept
3   the summons and complaint if she was personally served.  An additional
4   attempt was made on February 8, 2008, and again the process server was
5   told that Ms. Anastassiou was unavailable.

6        In the meantime, after the State collection action had been filed and the
7   first attempt to serve had been made, OCEANO filed this action in the District
8   Court.

9        California's procedural law, like the Federal Rules of Civil Procedure,
10  contemplate compulsory cross-complaints. California Code of Civil Procedure
11  Section 426.30 provides:

12           (a) Except as otherwise provided by statute, if a party
             against whom a complaint has been filed and served
13           fails to allege in a cross-complaint any related cause
             of action which (at the time of serving his answer to
14           the complaint) he has against the plaintiff, such party
             may not thereafter in any other action assert against
15           the plaintiff the related cause of action not pleaded.

16        Accordingly, OCEANO is going to be required to file a cross-complaint
17  in the State Court collection action at the time it answers the State Court
18  action.  Substituted service in the State Court collection action occurred
19  February 12, 2008, as Ms. Anastassiou was once again unavailable.

20        In addition, OCEANO would then be required to implead TRUE
21  ORGANIC PRODUCTS, INC., via such compulsory cross-complaint, or risk
22  such claims being later barred by a judgment.

23        However, in this action, WFS will not be required to file a compulsory
24  cross-claim.  As the Court knows, pursuant to FRCP Rule 13(a)(2), The
25  pleader need not state the (compulsory cross) claim if: (A) when the action
26  was commenced, the claim was the subject of another pending action.[1]

27

28        [1] California Code of Civil Procedure Section 426.40(c) contains a similar exception
    for compulsory cross-complaints, i.e., where the cause of action not pleaded was the

H:\37382\70096
Oceano\Federal
Action\WFSI-Mtn Stay or
Dismiss.wpd          CV08 00839 JW                                2
                                                      MOTION BY DEFENDANT WFSI TO DISMISS ACTION, OR IN
                                                      THE ALTERNATIVE, STAY FEDERAL ACTION

1     In other words, all claims and parties will necessarily be before the State
2   Court. But, this Court will only have a portion of the claims before it. For
3   these reasons, WFS would respectfully submit that this Court stay or dismiss
4   the action before it. The present action would be duplicative of the State
5   Court action and unnecessarily consume this Court's resources. Further,
6   since, procedurally, not all of the claims between the parties would be before
7   this Court, but they would necessarily be before the State Court, this Court
8   would not be in a position to fully and finally decide all judicialable claims
9   between the parties. In other words, this Court's exercise over jurisdiction of
10  just some of the claims between the parties would result in an inefficient
11  determination of the action and potential conflicts with the action pending
12  between the parties in the Superior Court of the State of California, County of
13  San Luis Obispo.

14                                    III.

15                        **PROCEDURAL STATUS**

16     When this action was filed with the District Court on February 6, 2008,
17  the "Civil Cover Sheet" did not indicate that another action was pending in
18  State Court. Pursuant to Local Rule 3-13, WFS has filed a Notice of
19  Pendency of Other Action or Proceeding.

20     WFS was served with this Federal action, through its agent, on February
21  8, 2008. OCEANO was served, after the third attempt, via substituted service
22  on February 14, 2008. OCEANO subsequently filed and served, on February
23  15, 2008, an amended complaint in this Court. When it did so, it again did not
24  file any Notice regarding the pendency of the State Action.

25

26  subject of another action pending. But, this exception, as with the FRCP Rule 13(a)(2)(A),
27  applies only to subsequently filed actions. (See Code of Civil Procedure Section
    426.40(c)), "At the time the action was commenced, the cause of action not pleaded was
28  the subject of another pending action." Here, this cannot be the case, as the State Court
    action was commenced on January 22, 2008, and this action on February 6, 2008.

H:\3738\070996
Oceano\Federal
Action\WFS]-Mtn Stay or
Dismiss wpd
                    CV08 00839 JW                    3
                                                     MOTION BY DEFENDANT WFSI TO DISMISS ACTION, OR IN
                                                     THE ALTERNATIVE, STAY FEDERAL ACTION

1

## IV.

2

## LAW AND ARGUMENT
### ALL PARTIES, INCLUDING OCEANO, HAVE A DUTY TO
### INFORM THE COURT OF THE STATE COURT ACTION

3

4

Local Rule 3-13 provides:

5

(a) Notice. Whenever a party knows or learns that an action filed or removed to this district involves all or a material part of the same subject matter and all or substantially all of the same parties as another action which is pending in any other federal or state court, the party must promptly file with the Court in the action pending before this Court and serve all opposing parties in the action pending before this Court with a Notice of Pendency of Other Action or Proceeding.

6

7

8

9

(b)    Content of Notice. A Notice of Pendency of Other Action or Proceeding must contain:

10

11

(1)   A description of the other action;

12

(2)   The title and location of the court in which the other action or proceeding is pending; and

13

(3)   A brief statement of:

14

15

(A) The relationship of the other action to the action or proceeding pending in this district; and

16

17

(B) If the other action is pending in another U.S. District Court, whether transfer should be effected pursuant to 28 U.S.C. § 1407 (Multi District Litigation Procedures) or whether other coordination might avoid conflicts, conserve resources and promote an efficient determination of the action; or

18

19

20

21

(C) If the other action is pending before any state court, whether proceedings should be coordinated to avoid conflicts, conserve resources and promote an efficient determination of the action.

22

23

24

(c) Procedure After Filing. No later than 10 days after service of a Notice of Pendency of Other Action, any party may file with the Court a statement supporting or opposing the notice. Such statement will specifically address the issues in Civil L.R. 3-13(b).

25

26

27

(d) Order. After the time for filing support or opposition to the Notice of Pendency of Other Actions or Proceedings has passed, the Judge assigned to the case pending in this district may make appropriate orders.

28

H:\37382\70096
Oceano\Federal
Action\WFSI-Mtn Stay or
Dismiss.wpd

CV08 00839 JW

4

MOTION BY DEFENDANT WFSI TO DISMISS ACTION, OR IN
THE ALTERNATIVE, STAY FEDERAL ACTION

1    As stated above, WFS has filed its Notice of Pendency of Other Action
2    pursuant to L.R. 3-13. In addition to the matters raised in L.R. 3-13(b), there
3    are other matters which WFS believes are relevant to the Court's rendering
4    appropriate orders in this matter. As will be discussed below, there is the
5    "First-to-File Doctrine" but also the matter of abstention, given the earlier filed
6    State Court action.

7                                        **V.**

8                            **GENERAL AUTHORITY**

9    A stay may be sought in a Federal Court action when other actions are
10   pending. Silbaco Data Systems, Inc. v. Technology Modeling Associates, Inc.
11   896 F.Supp.973 (1995 - ND Ca). In the alternative, a dismissal of the Federal
12   Court action may be sought. It is left to the sound discretion of the District
13   Court as to whether none or one of these remedies are appropriate. Allstate
14   Insurance Company v. Huerta (2006) U.S. DIST. Lexis 69486 (2006 - ED Ca).

15   Motions to dismiss may be sought when actions are parallel and/or
16   duplicative of an underlying State Court action. Allstate Insurance Company,
17   supra.

18                                       **VI.**

19   **A THRESHOLD ANALYSIS MUST BE DONE TO SEE IF THE FEDERAL**
20   **ACTION AND THE STATE ACTION ARE "PARALLEL" OR**
     **"SUBSTANTIALLY SIMILAR"**

21   In order to start an evaluation of whether the Federal Case should be
22   stayed and/or dismissed, one of the threshold questions is whether the two
23   cases are "substantially similar" or "parallel." If they are, then this basic
24   similarity triggers what is discussed below as the Colorado River Doctrine for
25   further evaluation as to what to do with the two simultaneous actions.

26   In Nakash v. Marciano 82 F.2d 1411 (1989), the Ninth Circuit Court of
27   Appeals analyzed whether there was a parallel State proceeding. The
28   Nakash Court, borrowing from Republic Bank Dallas v. McIntosh 828 F.2d

1  1120 (Fifth Circuit 1987) used the definition of "parallel State proceedings,"

2  indicating that same is a parallel action when it involves the same parties and

3  same issues. Nakash, supra, p. 1416.

4      Here, the State Court action was filed first, which will dictate certain

5  procedurals manners in which the two cases must be litigated, and in turn

6  presents several relevant considerations for the Court in deciding this Motion.

7  First, and foremost, the fact that the State Court action was filed first

8  determines what claims are before this Court versus the State Court. FRCP

9  Rule 13 and California Code of Civil Procedure Section 426.30 both

10  contemplate compulsory cross-claims or "cross-complaints", in the State Court

11  vernacular. However, another similarity between the two statutes in the

12  manner in which they treat the "compulsory" obligation when there is an

13  earlier filed, pending action between the same parties. In this respect, both

14  statutes provide for an exception to the "compulsory" cross-claim or cross-

15  complaint.

16      FRCP Rule 13 provides in relevant part:

17  (a) Compulsory Counterclaim.

18          (1) In General.

19          A pleading must state as a counterclaim any claim
20          that — at the time of its service — the pleader has
            against an opposing party if the claim:

21              (A) arises out of the transaction or
22              occurrence that is the subject matter of
                the opposing party's claim; and

23              (B) does not require adding another party
24              over whom the court cannot acquire
                jurisdiction.

25  (2) Exceptions.

26  The pleader need not state the claim if:

27              (A) when the action was commenced, the
28              claim was the subject of another pending
                action; . . .

1    California's Code of Civil Procedure Section 426.40(c) contains a similar
2   exception for compulsory cross-complaints, i.e., where the cause of action not
3   pleaded was the subject of another action pending. California Code of Civil
4   Procedure Section 426.40(c), "At the time the action was commenced, the
5   cause of action not pleaded was the subject of another pending action."

6    Here, by virtue of the above, WFS will not have to present its collection
7   claims by way of a cross-claim, pursuant to FRCP Rule 13(a)(2)(A). This is
8   because the collection claims were already the subject of a pending action
9   when this Federal action was commenced.

10    On the other hand, OCEANO will be required to present its claims to the
11   Superior Court under California's Code of Civil Procedure Section 426.30.
12   The exception contemplated by California Code of Civil Procedure Section
13   426.40(c) will not apply, and OCEANO's failure to file a Cross-Complaint in
14   the State Court action will not be excused. Again, California Code of Civil
15   Procedure Section 426.30 provides:

16       (a) Except as otherwise provided by statute, if a party against
         whom a complaint has been filed and served fails to allege in a
17       cross-complaint any related cause of action which (at the time of
         serving his answer to the complaint) he has against the plaintiff,
18       such party may not thereafter in any other action assert against
         the plaintiff the related cause of action not pleaded.
19

20    Thus, by operation of law the claims of OCEANO would be barred in this
21   later lawsuit. Necessarily, the claims of the parties would be considered
22   "related" for purposes of the application of the California statutes. California
23   Code of Civil Procedure Section 426.10(c) defines what is a "related cause of
24   action", and thus the subject of a compulsory "cross-complaint" under State
25   Law, where it "arises out of the same transaction or series of transactions or
26   occurrences as the cause of action in the complaint." To further explicate this
27   point of law, causes of action arise out of the "same transaction or
28   occurrence" if the factual or legal issues are logically related, they need not

H:\37382\70086
Oceano\Federal
Action\WFSI-Mtn Stay or
Dismiss.wpd

CV08 00839 JW

7

MOTION BY DEFENDANT WFSI TO DISMISS ACTION, OR IN
THE ALTERNATIVE, STAY FEDERAL ACTION

1  be absolutely identical. The idea is to avoid duplication of time and effort.

2  (See <u>Currie Medical Specialties, Inc. v. Bowen</u>, 136 Cal.App.774, 777, 186

3  Cal.Rptr. 543, 544 (Cal.App.Ct. 1982).)

4        Thus, OCEANO will either assert *all* of its claims in the State Court

5  action, it will essentially abandon them, or OCEANO will enlist this Court in a

6  race to trial. Under California law, any unplead "related" claim is barred

7  subsequent to entry of judgment. (California Code of Civil Procedure Section

8  426.30; <u>City of Hanford v. GWF Power Systems, Inc.</u>, 208 Cal.App.3d 580,

9  587, 256 Cal.Rptr. 274, 278 (Cal.App.Ct. 1989).)    However, this last

10  alternative, the race to trial, necessarily risks inconsistent judgments in the

11  two (2) courts, as well a significant consumption of judicial (not to mention

12  litigant resources) by having two virtually simultaneous trials in this action,

13  assuming that this Court can match the 12 month disposition standards of The

14  Superior Court of the State of California. (See California Rules of Court, Rule

15  3.714(b).)

16        An argument was made in the *Nakash* case that the two lawsuits (one

17  in State Court - one in Federal Court) were quite different. The claim was that

18  one lawsuit focused on the Plaintiff's wrongdoing while the other lawsuit

19  focused on the Defendant's wrongdoing.    The Court found that exact

20  parallelism did not exist, but also found that it was not required. The Court

21  held that it was enough for these two proceedings to be "substantially similar."

22  <u>Nakash</u>, supra, p. 1416.

23        The Court went on to state as follows:

24        After reviewing the pleadings in these cases, we
        conclude that the two actions are substantially similar.

25        All of these disputes concern how the respective
        parties have conducted themselves since Nakash

26        purchased a portion of Guess. Nakash's attempts to
        distinguish between the two actions is unavailing.

27        Nakash's further argument that the parties are not
        identical is disingenuous. The present parties are all

28        named in the California suit; the only difference is the
        absence of all of the corporate entities owned and

H:\37382\70096
Oceano\Federal
Action\WFSI-Mtn Stay or
Dismiss.wpd

CV08 00839 JW

8

MOTION BY DEFENDANT WFSI TO DISMISS ACTION, OR IN
THE ALTERNATIVE, STAY FEDERAL ACTION

1  operated by the parties.  We should be particularly
2  reluctant to find that the actions are not parallel and
   the Federal action is but a "spin-off" of more
3  comprehensive State litigation.  Nakash, supra, pp.
   1416-1417.

4  Therefore, Defendant urges the Court in its analysis to conclude that

5  these two cases are either parallel and/or substantially similar so as to apply

6  the *Colorado River Doctrine* discussed below.

7  **A.    The *Colorado River Doctrine* Applies to These Two Cases and
8        Tips Heavily in Favor of Dismissing And/or Staying the
          Federal Action**

9  In Colorado River Water Conservation Dist. v. United States, 424 U.S.

10  800, 817, 96 S.Ct. 1236, the Court stated that Federal Courts have a "virtually

11  unflagging obligation . . . to exercise the jurisdiction given them."  However,

12  in the interest of "wise judicial administration," the Federal Court may stay its

13  proceedings where a parallel State action is pending." Colorado River, supra.

14  It should be noted that a stay under the *Colorado River Doctrine* is

15  appropriate only in "exceptional circumstances."  Moses H. Cone Memorial

16  Hosp. v. Mercury Constr. Corp. 460 U.S. 1, 19, 103 S.Ct. 927, 938 (1983).  In

17  Moses, the Court utilized up to six factors (coming from both Colorado River

18  and Moses H. Cone Memorial Hosp., supra).  The six factors to be considered

19  in determining a stay or dismissal are:

20  (1)    Whether either court has assumed jurisdiction over the res;

21  (2)    The relative convenience of the forum;

22  (3)    The desirability of avoiding piecemeal litigation;

23  (4)    The order in which the forums obtain jurisdiction;

24  (5)    Whether State or Federal Law controls; and

25  (6)    Whether the State proceeding is adequate to protect the parties'
26        rights.

27  In evaluating the current case it is clear that the State Court action was

28  filed before the Federal Court action was instituted.  As discussed above, the

9

H137382U70095
OceanofFederal
Action\WFSI-Mtn Stay or
Dismiss.wpd

CV08 00839 JW

MOTION BY DEFENDANT WFSI TO DISMISS ACTION, OR IN
THE ALTERNATIVE, STAY FEDERAL ACTION

1  State Court has before it the claims of WFS, and OCEANO is bound, by
2  California law, to assert all of its claims by way of a State Court Cross-
3  Complaint. So, necessarily, the State Court will be assuming jurisdiction over
4  all the claims at issue.

5      With respect to the second element of relative convenience, there is
6  quite some difference between the San Luis Obispo Superior Court and this
7  Court, located in San Jose, California. First, OCEANO's principal place of
8  business is located in San Luis Obispo, and the transaction or series of
9  transactions which form the subject of the parties claims occurred in San Luis
10  Obispo County. Necessarily, then, the witnesses would be located in that
11  venue. The distance between the two locales is fairly significant, at least 180
12  miles and 3 hours of driving time, one way. Certainly, litigating this matter in
13  San Luis Obispo would be far easier and more convenient for the parties.

14      The third element of the test dealing with piecemeal litigation is of
15  concern. As WFS has discussed in some detail, procedurally its collection
16  claims will not be before the Court. (FRCP Rule 13(a)(2)(A).) But, unless
17  OCEANO is going to risk its claims being barred, OCEANO will necessarily
18  have to file a cross-complaint in the State Court action. (California Code of
19  Civil Procedure Section 426.30.) OCEANO would then, of course, implead
20  the Co-Defendant here, TRUE ORGANIC PRODUCTS, INC., in the State
21  Court action, again to avoid having such claims barred. Thus, at best, this
22  Court would only be in a position to engage in disposing of piecemeal
23  litigation. On the other hand, all claims and parties would be before the State
24  Court.

25      Here, under the fourth element of the *Colorado River* test, the State
26  Court assumed jurisdiction over the parties first. Again, the importance here
27  is the obligatory nature in which cross-claims will have to be presented in the
28  State Court action versus the Federal action, and the impact of the "First-to-

10

H:\3738217069E
Oceano\Federal
Action\WFSI-Mtn Stay or
Dismiss.wpd

CV08 00839 JW    MOTION BY DEFENDANT WFSI TO DISMISS ACTION, OR IN
THE ALTERNATIVE, STAY FEDERAL ACTION

1  File" Doctrine discussed below.

2      The fifth element of the test regarding whether State and Federal Law
3  controls is a mixed bag. Certainly, State Law controls WFS' collections
4  claims, and it controls eight of the ten (8 of 10) claims presented by OCEANO.
5  In other words, the bulk of that over which this Court would assume
6  jurisdiction are State Court claims which seem to predominate over the
7  Federal Claims based not only on their numerosity, but based upon the
8  dominating facts. In addition, Plaintiff is asking this Court to exercise
9  Supplemental Jurisdiction pursuant to 28 USC §1367 over conversion and
10  defamation claims. These claims relate to WFS' efforts to collect its debt,
11  which is the impetus for all of this litigation, and which is the subject of the
12  first-filed State Court action.

13      Further, WFS is unaware of any law which would preclude that State
14  Court from exercising its jurisdiction on the two (2) "Federal" claims brought
15  by OCEANO. Where the State and Federal Courts have concurrent
16  jurisdiction over a Federal Claim, this factor becomes less significant [element
17  no. 5 - the controlling law]. Nakash, supra, at 1416. Certainly, since the
18  warranty claims and the State Tort claims seem to predominate, i.e., Fraud,
19  Negligent Misrepresentation, Negligence, Conversion, Defamation, it would
20  seem entirely appropriate for the State Court to assume jurisdiction over these
21  two (2) Federal Claims.

22      The sixth and last element dealing with whether the State Court
23  proceeding is adequate to protect the parties' rights is such that there appears
24  to be no reason that a State Court cannot protect Plaintiff's rights as to any of
25  the claims asserted. Here, the State Court, and State Law claims, would
26  provide potentially far greater relief. It is some of State law tort claims which
27  allow Plaintiffs to sue for punitive damages. Furthermore, the State Court
28  would provide Plaintiff a greater margin for error insofar as enforcing its

H:\37362\70096
Oceano\Federal
Action\WFSI-Mtn Stay or
Dismiss.wpd

CV08 00839 JW

MOTION BY DEFENDANT WFSI TO DISMISS ACTION, OR IN
THE ALTERNATIVE, STAY FEDERAL ACTION

1    alleged rights, as Plaintiff would only need convince 9 out of 10 state jurors,

2    instead of the unanimity required in Federal Court.

3        For those reasons expressed above, Defendant urges the Federal

4    District Court to exercise restraint in jurisdiction and dismiss or stay the

5    Federal proceeding.

6    **VII.**

7

**THE FIRST-TO-FILE RULE ALSO FAVORS THE STATE COURT
ACTION AND DISMISSING AND/OR STAYING THE FEDERAL ACTION**

8

9        The first-to-file rule provides that when identical suits are pending in two

10   courts, the first action filed generally should proceed to judgment.  In Re

11   Burley, 738 F.2d 981, 988 (9th Cir. 1984).  The rule may be invoked when a

12   complaint involving the same parties and issues has previously been filed in

13   another district. Alltrade, Inc. v. Uniweld Products, Inc. 946 F.2d 622, 625 (9th

14   Cir. 1991).  While the first-to-file rule is "not a rigid or inflexible rule to be

15   mechanically applied," . . . it was developed to promote judicial efficiency and

16   should not be disregarded lightly.  Church of Scientology v. United States

17   Dep't of the Army, 611 F.2d 738, 750 (9th Cir. 1979), all cited in British

18   Telecommunications, et al. v. McDonnell-Douglas Corporation 1993 U.S. Dist.

19   Lexis 6345.

20       In Pacesetter Systems, Inc. v. Medtronic, Inc., et al., 678 F.2d 93 (1982

21   9th Cir.) the Court stated as follows:

22       There is a generally recognized doctrine of federal comity which
     permits a district court to decline jurisdiction over an action when

23       a complaint involving the same parties and issues has already
     been filed in another district [citation omitted].  Normally sound

24       judicial administration would indicate that when two judicial
     actions are filed in courts of concurrent jurisdiction, the court with

25       the first acquired jurisdiction should try the lawsuit and no purpose
     would be served by proceeding with a second action.  However,

26       this "first to file" rule is not a rigid or inflexible rule to be
     mechanically applied, but rather is to be applied with a view to the

27       dictates of sound judicial administration. . . .

28       A decision of whether to enforce or dispense with the first-to-file rule,

H:\37382\70056
Oceano\Federal
Action\WFSI Mtn Stay or
Dismiss.wpd

CV08 00839 JW

12

MOTION BY DEFENDANT WFSI TO DISMISS ACTION, OR IN
THE ALTERNATIVE, STAY FEDERAL ACTION

1   however, is one which remains within the discretion of the District Court. In
2   the case at bar, while admittedly there is not a complete identity of parties, for
3   those reasons discussed under the *Colorado River Doctrine* above, Defendant
4   urges that there is substantial similarity in the identity amongst the parties in
5   this and the State Court action.

6        The State Court action was clearly first in time. Further, there is
7   proof in the alleged claims of OCEANO's lawsuit regarding the collection
8   action and its lead up that the collection action was first in time. Again, the
9   Conversion and Defamation claims in OCEANO's action deal with the alleged
10  efforts of WFS to collect the debt which is the subject of the first-filed State
11  Court action. It is not the Defendant who may be forum shopping, but rather
12  the Plaintiff, and therefore, any forum shopping exception to the first-to-file
13  rule is inapplicable here. This is further bolstered by the evident haste in
14  OCEANO's filing, which necessitated the filing of an Amended Complaint. In
15  addition, the fact that 8 of 10 claim are simply State Law claims demonstrates
16  the overriding State Law interest in this matter.

17       There are also no personal jurisdictional problems here since all parties
18  are subject to the jurisdiction of the San Luis Obispo County Superior Court
19  by virtue of being there or having appeared in its jurisdiction. Based upon the
20  above situation, Defendant believes that the State Court action should be
21  allowed to proceed to judgment.

22                                    **VIII.**

23                           **DISMISSAL OR STAY?**

24       An issue arises both under the *Colorado River Doctrine* and/or the first-
25  to-file rule as whether a dismissal or stay may be more appropriate in this
26  situation. Defendant urges a dismissal, but concedes that if there is any
27  residual concern regarding the matter that a stay in Federal Court, as an
28  alternative, is also an appropriate remedy. See <u>British Telecommunications,</u>

H:\37302 79096
Oceano\Federal
Action\WFS:\Mtn Stay or
Dismiss.wpd

CV08 00839 JW

13

MOTION BY DEFENDANT WFSI TO DISMISS ACTION, OR IN
THE ALTERNATIVE, STAY FEDERAL ACTION

1 | _et al. v. McDonnell-Douglas Corporation_, 1993 U.S. Dist. Lexis 6345 (ND Ca.)

2 |     WFS does not intend to dismiss its Collection Action, absent payment

3 | of the debt owed by OCEANO. Hence, there is no present indication that the

4 | State Court action would be dismissed rather than proceeding to trial.

5 | Therefore, any concern about dismissal of an original action thereby giving

6 | rise to stay in the second action rather than dismissing same is minimal.

7 | **IX.**

8 | **CONCLUSION**

9 |     For all of the reasons expressed above, it is urged by Defendant that the

10 | Federal case be dismissed, or in the alternative, stayed so as to allow the

11 | State Court proceedings to go forward in order to avoid a multiplicity of

12 | lawsuits, potential conflicting  and inconsistent results, and to promote a

13 | general goal of judicial efficiency and economy in handling the claims.

14 |     Respectfully Submitted.

15 | DATED: February 28, 2008

16 |           PETRIE, DORFMEIER & MORRIS, LLP

17 |

18 |           By___//S// DALE DORFMEIER_____

19 |              Dale Dorfmeier,

Attorneys for Defendant,

20 |              WESTERN FARM SERVICE, INC.

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

14

H:\37382\70096
Oceano\Federal
Action\WFSI-Mtn Stay or
Dismiss.wpd

CV08 00839 JW

MOTION BY DEFENDANT WFSI TO DISMISS ACTION, OR IN
THE ALTERNATIVE, STAY FEDERAL ACTION

1

## PROOF OF SERVICE (Code Civ. Proc., §§1013a, 2015)

2

3

STATE OF CALIFORNIA, COUNTY OF FRESNO

4            I am employed in the County of Fresno, State of California. I am
over the age of 18 and not a party to the within action; my business address

5     is 2014 Tulare Street, Suite 830, Fresno, California 93721.

6            On **February 28, 2008**, I served the foregoing document
described as **MOTION BY DEFENDANT WESTERN FARM SERVICE, INC.

7     TO DISMISS ACTION, OR IN THE ALTERNATIVE, STAY FEDERAL
**ACTION** on the other parties in this action as follows:

8     Effie F. Anastassiou, Esq.                         Plaintiff, OCEANO PACKING,
Denis Klavdianos, Esq.                            LLC

9     Scott Allen, Esq.
ANASTASSIOU & ASSOCIATES

10    242 Capitol Street
P.O. Box 2210

11    Salinas, CA 93902
Tel:  (831) 754-2501

12    Fax:  (831) 754-0621
e-mail: scottesq@salinasaglaw.com

13

**BY ELECTRONIC MAIL:**

14

15           As follows:  I caused the above named document to be filed with
the United States District Court, Northern Division of California's Case

16    Management/Electronic Case Filing (CM/ECF) System where upon it was
electronically delivered to the parties in this case through their electronic mail

17    addresses.

            Executed on **February 28, 2008**, at **Fresno**, California.

18

            I declare that I am employed in the office of a member of the bar

19    of this court at whose direction the service was made.

20

21      **Jalee Furr**                                    //S// JALEE FURR
        ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾                            ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
22      Type or Print Name                                Signature

23

24

25

26

27

28

H:\37382\70096
Oceano\Federal
Action\WFSI-Mtn Stay or
Dismiss.wpd

CV08 00839 JW

MOTION BY DEFENDANT WFSI TO DISMISS ACTION, OR IN
THE ALTERNATIVE, STAY FEDERAL ACTION