Jube J. Najarian, No. 99082
Leith B. Hansen, No. 109320
Steven M. McQuillan, No. 107339
JACOBSON, HANSEN, NAJARIAN & McQUILLAN
A Professional Corporation
1690 W. Shaw Avenue, Suite 201
Fresno, California 93711
Telephone: (559) 448-0400
Facsimile: (559) 448-0123
**Co-Counsel With:**
Andrew H. Swartz, No. 58429
ATTORNEY AT LAW
550 Hartnell Street
Monterey, California 93940
Telephone: (831) 373-3235

Attorney for Defendant(s) TRUE ORGANIC PRODUCTS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCEANO PACKING COMPANY, LLC, | Case No.: C08 00839-RS |
| Plaintiff(s), | |
| v. | **MOTION TO DISMISS EIGHTH CAUSE OF ACTION (LANHAM ACT) AND TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION** |
| TRUE ORGANIC PRODUCTS, INC., A California Corporation; and WESTERN FARM SERVICES, INC., A Delaware Corporation, | |
| Defendant(s). | |

TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT ON September 8, 2008, at 9:00 AM in Courtroom 8 of the above-entitled court at 280 South First Street, # 2112, San Jose, California, Defendant TRUE ORGANIC PRODUCTS, INC. will move this Court to dismiss the eighth cause of action for "Federal Unfair Competition – 15 U.S.C. 1125" in plaintiff OCEANO PACKING COMPANY, LLC's First Amended Complaint pursuant to F.R.C.P. §12(b)(6), on the ground that it fails to state a cause of action upon which relief can be granted. Further, TRUE ORGANIC

PRODUCTS, INC. will move this Court to dismiss the entire action on the ground that without the eighth cause of action, this Court no longer has subject matter jurisdiction.

The motion will be based on this notice of motion and motion, the memorandum of points and authorities filed herewith, and the pleadings and papers filed herein.

1.

Procedural Background

Plaintiff OCEANO PACKING COMPANY, LLC ("OCEANO") filed a First Amended Complaint containing 10 causes of action, of which only two were premised upon Federal law: the first cause of action for violation of the Organic Foods Production Act of 1990 and the eighth cause of action for "Federal Unfair Competition – 15 U.S.C. 1125". On May 22, 2008, this Court, *sua sponte*, dismissed the first cause of action because plaintiff lacks standing. At the same time, this Court invited the parties to brief the question whether the eighth cause of action states a claim upon which relief may be granted and regarding subject matter jurisdiction. The Court also requested briefing on issues of venue. A briefing schedule was subsequently set by the Court, and this Motion follows accordingly.

TRUE ORGANIC PRODUCTS, INC. has no briefing to offer, at this time, on issues relating to venue.

2.

Factual Allegations in Plaintiff's First Amended Complaint

OCEANO alleges that it is in the business of selling certified organic vegetables (First Amended Complaint, para.1). Defendant and moving party TRUE ORGANIC PRODUCTS, INC. ("TRUE") is alleged to be in the business of manufacturing, marketing and selling organic fertilizer products. (F.A.C. para.2). Defendant WESTERN FARM SERVICE, INC. ("WESTERN") is alleged to be in the business of distributing and selling products including TRUE fertilizer. (F.A.C. para.3). TRUE and WESTERN, therefore, are not in competition with OCEANO. Instead, they are alleged to be suppliers of fertilizer purchased and used by OCEANO on the crops OCEANO sells. (F.A.C. para.16).

///

1  OCEANO alleges that it bought TRUE fertilizer from WESTERN that contained a
2  pathogen, salmonella. In turn, OCEANO contends that the salmonella contaminated
3  OCEANO'S vegetable crops, causing a loss of income when the crops had to be destroyed. The
4  gravamen of the first amended complaint, particularly as against moving party TRUE, is a
5  product liability claim that TRUE misrepresented, in various ways, that its fertilizer was
6  pathogen free. The second through sixth causes of action allege California State law claims for
7  breach of express and implied warranties, negligence, fraud and negligent misrepresentation.
8  The seventh cause of action alleges unfair competition under California law, while the ninth
9  and tenth allege conversion and defamation against WESTERN only. Upon dismissal of the
10 eighth cause of action, no Federal subject matter jurisdiction remains, as no Federal question
11 will be left to resolve, and this is a case of incomplete diversity for jurisdictional purposes.

12 OCEANO'S eighth cause of action is the subject of this Motion. It alleges that TRUE and
13 WESTERN are liable under 15 USC 1125(a)(1) for making false and misleading representations
14 of fact regarding TRUE'S organic fertilizer. OCEANO alleges that such misrepresentations
15 undermine the value of the "organic" designation, with consequent damage to the organic food
16 industry including OCEANO. TRUE brings the present motion on the ground that plaintiff lacks
17 standing under the Lanham Act, 15 USC 1125(a)(1), to allege a cause of action against TRUE
18 and WESTERN.

19 There are two distinct charging allegations against TRUE in the eighth cause of action.
20 Paragraphs 81 and 83 allege deceptive use of trademarks or their functional equivalent, in
21 violation of 15 USC 1125(a)(1)(A), Paragraph 84, in contrast, alleges false advertising in
22 violation of 15 USC 1125(a)(1)(B). WESTERN is referenced only in paragraphs 83 and 84:

23  81. True violated 11 USC 1125(a)(1)(A) by using, in the Product Specs,
24      the words or terms "OMRI allowed" and "OMRI class fertilizer" and
        by stating that the Fertilizer is made entirely of "OMRI status
25      allowed" ingredients. Such words or phrases are likely to cause
        confusion, to cause mistake, and/or to deceive as to the origin,
26      sponsorship, or approval of the Fertilizer, specifically by leading
        organic vegetable producers and other organic farmers to believe
27      that the Fertilizer has been approved by OMRI. In truth, OMRI has
28      not approved the Fertilizer.
        …

83. True and Western have also violated 11 U.S.C. § 1125 (a)(1)(A) by stating, in the True Letter, on True's website, and/or on labels or other documents associated with the sale of the Fertilizer in commerce, that the Fertilizer is: (1) "100% organic," (2) "organic", (3) "completely pathogen-free," (4) composted in accordance with the requirements of the NOP regulations, and/or (5) inspected and favorably reviewed by the CDFA. Such statements are untrue, as set forth in detail above, and likely to cause confusion, to cause mistake and/or to deceive another person, including, without limitation, Oceano, as to the origin, sponsorship, and/or approval of the Fertilizer.

84. True and Western have also violated 11 U.S.C. § 1125 (a)(1)(B) by making false and/or misleading representations of fact in the True Letter and on True's internet website, which facts misrepresent the nature, characteristics, and/or qualities of the Fertilizer, as more fully described above.

This motion to dismiss is brought on the ground that plaintiff lacks standing to assert either theory of liability under the Lanham Act. Paragraph 84 is a claim of "false advertising" under the Lanham Act; only a competitor of TRUE or WESTERN has standing to bring such a claim. Paragraphs 81 and 83 are "false association" claims; only a party with an ownership or similar interest in a trademark or its functional equivalent that has been misused by a Defendant has standing to make such a claim. OCEANO is neither a competitor with defendants, nor the owner of any trademark used by defendants. OCEANO therefore lacks standing under the Lanham Act.

3.

Authority for the Motion

Federal Rule of Civil Procedure 12(b) provides in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the player be made by motion:... (6) failure to state a claim upon which relief can be granted...

A Rule 12(b)(6) motion tests the legal sufficiency of the claim or claims stated in the complaint. A motion to dismiss pursuant to 12(b)(6) may be granted when the court determines that the plaintiff is not legally entitled to recover, assuming the truth of all facts alleged in the complaint. A Rule 12(b)(6) dismissal is proper only when there is either a lack of a cognizable legal theory or an absence of sufficient facts to allege a cognizable legal theory. *Balistreri v. Pacifica Police Dept.* 901 F.2d 696 at 699 (9th Cir. 1990), *Graehling v. Village of Lombard Illinois* 58 F.3d 295 at 297 (7th Cir. 1995). It is also well recognized that the court should not only accept the truth of all facts pled, but construe those facts in the light most favorable to the plaintiff. *Cahill v. Liberty Mutual Insurance Company* 80 F.3d 336 at 337(9th Cir. 1996). A Court should, however, read the complaint realistically in its factual context:

> This does not mean, however, that the court must accept as true "unsupported conclusions and unwarranted inferences." *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.,* 113 F.3d 405, 417 (3d Cir. 1997). Indeed, as indicated by our court of appeals, "courts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable. [They] do draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner." *City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 263 (3d Cir. 1998).
>
> *Cook Drilling Corp. v. Halco Am.*, 2002 U.S. Dist. LEXIS 903, 8-10 (E.D. Pa. 2002).

Construing the First Amended Complaint most favorably to plaintiff, TRUE is in the fertilizer business and OCEANO is in the fresh vegetable business; and TRUE made misrepresentations about the absence of pathogens in its fertilizer that OCEANO relied upon with ultimate injury to its vegetable crop. These allegations do not support standing under USC 1125(a)(1).

///

4.

## OCEANO is Not Entitled to Relief Under the Lanham Act, 15 USC 1125(a)(1).

15 USC 1125(a)(1) is part of the Lanham Act, and provides that:

>  (a) Civil action.
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The Lanham Act is intended to make "actionable the deceptive and misleading use of marks in . . . commerce" and "to protect persons engaged in . . . commerce against unfair competition." 15 U.S.C. § 1127. Section 1125(a)(1) reflects both of these purposes, providing two separate bases of liability: (1) false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device ("false association"), and (2) false representations in advertising concerning the qualities of goods or services ("false advertising"). (*Waits v. Frito-Lay, Inc.* 978 F.2d 1093, 1109(9th Cir. 1992), cert. denied, 122 L. Ed. 2d 355, 113 S. Ct. 1047 (1993).) In *Waits*, the Ninth Circuit held that the standards a plaintiff must meet to achieve prudential standing to sue differ between these two liability theories. OCEANO satisfies neither standard.

///

///

///

///

5.

## Plaintiff Lacks Standing to Bring a Claim Under the False Advertising Prong of 15 USC 1125(a)(1)

To have standing to recover for false advertising under USC 11125(a)(1)(B), plaintiff must demonstrate a *competitive* commercial injury: "The statute is directed against unfair competition. To be actionable, conduct must not only be unfair but must in some discernible way be competitive." *Halicki v. United Artists Communications, Inc.* (9th Cir. 1987) 812 F.2d 1213, 1214. In *Halicki*, the plaintiff film producer sued a film distributor under 1125(a)(1)(B) for misrepresenting plaintiff's film as "R" rated, when the distributor had agreed to use a "PG" rating. The Court held that Plaintiff lacked standing to recover under the Lanham Act because he did not have a discernable competitive interest in the alleged false advertising. The Court rejected plaintiff's argument that he needed only to "show that the defendants made a false representation about his film and that he was injured by the representation." Id. at 1214. *Halicki* cautioned against expanding the Lanham Act into a federal tort of misrepresentation. Id. at 1214.

*Halicki* was followed by *Waits v. Frito-Lay, Inc., supra.* The Ninth Circuit there found that the plaintiff had standing to bring a claim for wrongful use of plaintiff's trademark ("false association") under 1125(a)(1)(A), but not for misrepresenting a product's qualities ("false advertising") under paragraph (B):

> "...where the misrepresentation simply concerns a product's qualities, it is actionable under section 43(a) only insofar the Lanham Act's other purpose of preventing "unfair competition" is served. See *U-Haul*, 681 F.2d at 1162 (noting congressional intent to allow false advertising suits by competitors "to stop the kind of unfair competition that consists of lying about goods or services"). In such cases, *Halicki* counsels that a discernibly competitive injury must be alleged." Id. at 1109.

The Ninth Circuit recently reaffirmed the requirement that plaintiff be in commercial competition with defendant in order to have standing to recover under the false advertising prong of the statute:

> "... for standing pursuant to the "false advertising" prong of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), a plaintiff must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is "competitive, " or harmful to the plaintiff's ability to compete with the defendant.
>
> *Jack Russell Terrier Network v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. Cal. 2005)

In the present case, plaintiff does not allege that it is in competition with TRUE or WESTERN. On the contrary, plaintiff specifically alleges that it is in the business of growing and selling fresh vegetables, whereas TRUE and WESTERN are in the business of supplying fertilizers to OCEANO and other growers. "Competitors are 'persons endeavoring to do the same thing and each offering to perform the act, furnish the merchandise, or render the service better or cheaper than his rival.'" *Summit Tech. v. High-line Med. Instruments. Co.*, 933 F. Supp. 918, 937 (C.D. Cal. 1996), quoting *Fuller Bros. v. International Mktg.*, 870 F. Supp. 299, 303 (D. Or. 1994). From the face of plaintiff's complaint, it is apparent that OCEANO is not a competitor or either defendant. They do not sell the same or even similar products. Plaintiff lacks standing to bring a claim of misrepresentation of the fertilizer's qualities under the false advertising prong of the Lanham Act, <u>15 USC 1125(a)(1)(B)</u>.

6.

<u>Plaintiff Also Lacks Standing Under the False Association Prong of 15 USC 1125(a)(1)</u>

The Ninth Circuit in *Waits* explained that in "false association" claims, unlike "false advertising" claims, noncompetitiors may sometimes have standing under 1125(a)(1). Id. at 1109. However, this field of noncompetitors with standing is a narrow one. Such noncompetitors must have an ownership or similar interest in a trademark, or its functional equivalent, allegedly misused by the defendant:

> Those with standing to bring such a claim include parties with a commercial interest in the product wrongfully identified with another's mark, as in (*Smith v. Montoro*, 648 F.2d 602, 603 (9th Cir. 1981)), or with a commercial interest in the misused mark. See *Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 871 F.2d 697, 700-01 (7th Cir. 1989)

      (only those with present commercial interest in trade name have standing to sue for its wrongful use under § 43(a)); *Berni Int'l Gourmet Restaurants of America, Inc.*, 838 F.2d 642, 648 (2d Cir. 1988) (plaintiff must have commercial or ownership interest in mark to have standing under § 43(a)); cf. *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 205 (1942) ("If another poaches upon the commercial magnetism of the symbol he has created, the owner can obtain legal redress.").
*Waits,* supra, at 1109-1110.

In *Waits*, plaintiff was a well known singer and songwriter who sued Frito Lay and its advertising company for misappropriating his vocal style for use in a commercial. Mr. Waits, who never performs for commercials, did not directly compete with the defendants, and therefore could not recover under the false advertising prong. However, his unique vocal style was held to be the functional equivalent of a trademark. The Court held that as the owner of that unique mark, he had standing to recover under the false association prong of the statute.

Standing under the false association prong has been granted, in rare and limited cases, to nonowners of the mark in question who nonetheless have a close commercial connection to that mark. Such situations include plaintiffs who are distributors (*Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F. 2d 154 (1st Cir. 1977)) and licensees (*STX, Inc. v. Bauer USA, Inc.*, 43 U.S.P.Q. 2d 1492 (N.D. Cal. 1997)) for the owner of the mark. However, where the plaintiff's commercial relationship to the mark is attenuated, as when a counterfeit trademark belongs to nonparties with whom plaintiff had no business relationship, there is no standing. *Shonac Corp. v. AMKO International, Inc.* 763 F. Supp. 919 (S.D. Ohio 1991).

Here, the first amended complaint does not allege that plaintiff OCEANO owned a misused mark, or was a licensee, distributor or otherwise a user of a misused mark. Under such circumstances, Plaintiff lacks standing to recover.

Indeed, plaintiff does not appear to allege that TRUE misused any specific trademark or its functional equivalent. Most or all of the phrases in TRUE'S writings complained of by Plaintiff do not fit that description. OCEANO does not have a trademark or functionally

equivalent interest in phrases such as "organic" and "100% organic". Those phrases are common, and found in federal regulations. (7 CFR Sections 205.300 and 205.303.) The words "completely pathogen-free" are also a common phrase not trademarked by OCEANO. The phrase, "inspected and favorably reviewed by the CDFA" is not a trademark or anything approaching a trademark; it merely references an act of a governmental agency, the California Department of Food and Agriculture. Likewise, TRUE'S alleged representation that its fertilizer was manufactured "in accordance with NOP regulations" (F.A.C. para. 85) is not akin to a trademark. According to the complaint, the acronym NOP refers to the National Organic Program, 7 C.F.R. Part 205. (F.A.C. para. 7.) As such, it simply refers to a Federal program, and is not a commercial mark at all.

The only conceivable trademark or functional equivalent allegedly used by TRUE is a reference to "OMRI". Plaintiff alleges that the presence of pathogens in fiertilizer is inconsistent with an "OMRI" allowance advertised by TRUE. (para. 85). The first amended complaint alleges that OMRI is the Organic Materials Review Institute, a non-profit organization that reviews products to determine whether or not the products are "allowed" or "approved" for use on certified organic farms. (F.A.C. para. 16.). Plaintiff's first amended complaint could be construed to allege that "OMRI" is a trademark, or the functional equivalent of a trademark, of the Organic Materials Review Institute. Assuming *arguendo* that it is, Plaintiff lacks standing to sue to enforce it. Plaintiff does not allege that it owns, licenses, distributes or even uses the "OMRI" designation on the vegetables it sells; it alleges only that it relies upon the designation to select fertilizers for its own use. Plaintiff does not use the OMRI designation in a fashion that meets the narrow exception to the general rule that plaintiff must own the designation to have standing.

A recent District Court case from Pennsylvania analyzed prudential standing in the context of a complaint containing allegations that are very similar to OCEANO'S attempt to plead the Lanham Act here. In *Cook Drilling Corp. v. Halco America, Inc.*, 2002 U.S. Dist. LEXIS 903 71 U.S.P.Q.2D 1596; 2002-1 Trade Cas. (CCH) P73,583 (E.D. Pa. Jan. 22, 2002) plaintiff was a drilling company that purchased a piece of drilling equipment, known as an

air hammer, from defendant Halco.  Plaintiff chose defendant Halco's product because Halco was considered a superior manufacturer. The air hammer bore Halco's familiar color scheme and was understood to be a Halco product.  After the machine repeatedly failed, however, plaintiff discovered that it bore stamps from an inferior manufacturer, Holte. Plaintiff sued Halco under 15 USC 1125(a)(1)(A) on the ground that Halco had falsely associated a Holte air hammer with the Halco mark, causing direct pecuniary damage to plaintiff's business and damage to its reputation flowing from customer confusion.  The present case is quite similar, in that OCEANO, a commercial customer, also alleges misuse of a name or mark on a product it purchased and used unsucessfully (fertilizer); also like *Cook*, OCEANO alleges both a direct pecuniary injury to its business and an anticipated injury to its reputation through the confusion of customers.

Defendants in *Cook* moved to dismiss the 15 USC 1125(a)(1) claim pursuant to FRCP 12(b)(6), on the ground that plaintiff lacked standing. The Court granted the motion, after weighing a series of factors announced in *Conte Bros. Automotive, Inc. v Quaker State-Slick 50*, 165 F. 3d 221, 49 U.S.P.Q. 2d 1321 (3d Cir. 1998).  Those factors are:

> (1) The nature of the plaintiff's alleged injury: Is the injury "of a type that Congress sought to redress in providing a private remedy for violations of the [Lanham Act]"?
>
> (2) The directness or indirectness of the asserted injury.
>
> (3) The proximity or remoteness of the party to the alleged injurious conduct.
>
> (4) The speculativeness of the damages claim.
>
> (5) The risk of duplicative damages or complexity in apportioning damages.
> Cook, 2002 U.S. Dist. LEXIS 903 at 17.

Addressing the first factor, the District Court in *Cook* found that plaintiff's claimed injury did not advance the two objectives of the Lanham Act.  The Lanham Act was intended to remedy competitive comercial injuries. The Court observed that while the

plaintiff's injury was commercial, it was not a competitive injury. Halco was in the business of manufacturing air hammers, and plaintiff was its customer, in the business of drilling with the use of such equipment. Similarly, in the present case, OCEANO is a customer, not a competitor of TRUE and WESTERN.

*Cook* next observed that the second aim of the Lanham Act, prevent good will and reputation from being diverted from those who create them, was not advanced, either:

> As for the second aim of the Lanham Act, I note that the complaint asserts that "ultimately [Cook's] reputation and goodwill are impacted." Id. P 79. However, the negative reputational effect alleged by Cook to have been occasioned by defendants' misrepresentation is not of the sort "'that Congress sought to redress' by enacting the Lanham Act." Conte Bros., 165 F.3d at 234 (quoting Associated Gen., 459 U.S. at 538). To reiterate, the Lanham Act is focused on "'securing to the business community the advantages of reputation and good will *by preventing their diversion from those who have created them to those who have not.*'" Id. (citation omitted) (emphasis added). Stated differently, the operative congressional concern was not with remedying reputational harms per se, but rather with addressing the deliberate transference by means of misrepresentation of the good will and reputation earned by a party. See id. 165 F.3d at 234...
>
> There is an element of the variety of reputational harm that Congress sought to redress by enacting the Lanham Act that is missing from Cook's allegation, namely the diversion of its good will to another, undeserving party.
>
> Cook Drilling Corp. v. Halco Am., supra at 20, 21. (emphasis in original).

The same defect is apparent in OCEANO'S first amended complaint. As in *Cook*, there is no allegation that OCEANO in any sense created "OMRI" or any other mark allegedly used by TRUE, or that such a mark was diverted from OCEANO to TRUE, thereby transferring goodwill from the one to the other. Such an allegation, even if made, would be wholly inconsistent with OCEANO'S noncompetitive, customer relationship with WESTERN and TRUE.

Addressing the second *Conte Bros.* factor, the District Court in *Cook* observed that the defendant's alleged misuse of a mark was so tenuously connected to plaintiff's alleged pecuniary and reputation damage that it only weighed slightly in favor of standing:

> Any injury to Cook's reputation or goodwill, however, is more attenuated. Again, Cook does not allege that defendants made any statement regarding either it or any other commercial drilling company. Accordingly, it is reasonable to infer that such harm could have resulted only from something akin to the following causal chain: defendants falsely represented the make of the DTH hammer; Cook consequently bought an inferior product; that tool broke where the product Cook intended to purchase would not have; as a result, Cook performed inadequately during the West Virginia bridge project; its customers and/or competitors learned of its deficient performance; and its good will and reputation consequently suffered. This causal chain is significantly longer than that associated with Cook's asserted pecuniary harm, and is even lengthier than that addressed by the Third Circuit in (*Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 179 (3d Cir. 2001)). Thus, as in that case, this consideration counsels against a finding of prudential standing under § 43(a). When this indirect causal relationship is amalgamated with the moderately direct causal link between defendants' alleged misrepresentation and the pecuniary harm asserted by Cook, it becomes apparent that the second Conte Bros. factor weighs weakly in favor of prudential standing.
>
> Cook Drilling Corp. v. Halco Am., supra at 24-25.

The attenuated causal chain described in Cook mimics OCEANO'S theory of causation here. There is no allegation that TRUE or WESTERN made any statement about OCEANO or any other grower. Instead, to paraphrase *Cook*, OCEANO alleges that: TRUE falsely represented that its fertilizer was OMRI approved; OCEANO consequently bought an inferior fertilizer; the fertilizer caused salmonella in crops; as a result, OCEANO could not sell those crops; its customers and/or competitors learned of the salmonella; and OCEANO'S income, good will and reputation consequently suffered. As in *Cook*, this causal chain is too lengthy to provide more than slight support for prudential standing.

Assessing the next *Conte* factor, the Court in *Cook* found that direct competitors of the defendant were better situated than the plaintiff to seek to address the alleged misuse of a

mark; this factor also weighed against prudential standing. Here, either OMRI or TRUE'S competitors seem better situated to raise a Lanham Act dispute.

*Cook* next noted that plaintiff's alleged injuries were not particularly speculative, a factor that weighed in favor of standing; the same may be said here. However, *Cook* also observed that there was a risk that any damages recovered by plaintiff could be duplicative of those that might be recovered by direct competitors; this factor weighed against standing. Again, the same may be said here: there is a high risk that any damages OCEANO may recover would duplicate those that might be claimed from TRUE by OMRI or competing fertilizer manufacturers.

Weighing the five *Conte Bros*. factors together, the District Court in *Cook* found that prudential standing was unwarranted and had to be denied. TRUE respectfully submits that the same weighing process will result in the same conclusion in the present case: OCEANO lacks prudential standing.

7.

Conclusion

It is respectfully submitted that this Court should not expand prudential standing to sue under the Lanham Act beyond established precedent to encompass plaintiff's eighth cause of action. Plaintiff OCEANO lacks standing to recover for false advertising under 15 USC 1125(a)(1)(B) because OCEANO is not a competitor with either TRUE or WESTERN. OCEANO lacks standing to recover for false association under 15 USC 1125(a)(1)(A) because OCEANO is not in competition with defendants, does not own any mark allegedly misused by defendants, and does not have a commercial relationship with any such mark that is close enough to support standing. For these reasons, plaintiff's eighth cause of action should be dismissed.

Upon dismissal of the eighth cause of action, it is respectfully submitted that no federal question remains in this litigation, this Court therefore lacks original jurisdiction, and the Court should therefore exercise its discretion to dismiss the remaining California state law

causes of action in favor of the state court action already in place in San Luis Obispo County, pursuant to 28 USC 1367(c)(3).

Dated: July 1, 2008

JACOBSON, HANSEN, NAJARIAN & McQUILLAN

By: _____
LEITH B. HANSEN, Attorneys for Defendant
TRUE ORGANIC PRODUCTS, INC.