1  Dale Dorfmeier, Esq.; SBN 076266
2  Sean T. O'Rourke, Esq.; SBN 199420
   PETRIE, DORFMEIER & MORRIS, LLP
3  2014 Tulare Street, Suite 830
   Fresno, CA 93721
4  Telephone (559) 498-6522

5  Attorneys for Defendant, WESTERN
6  FARM SERVICE, INC.

7

8               UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10

11 | OCEANO PACKING COMPANY, LLC, | Case No. 5:08-cv-00839-JW
12 | |
13 | Plaintiff, |
14 | v. | BRIEF REGARDING SUBJECT MATTER JURISDICTION
15 | TRUE ORGANIC PRODUCTS, INC., A California Corporation; and WESTERN FARM SERVICE, INC., A Delaware Corporation, | OF THIS COURT AND WHETHER VENUE IS PROPER
16 | |
17 | Defendants. |

H:\00AlphaFiles--DD\WFSI v. Oceano (37382-70096)\Pleadings\Pleadings Federal\BriefReVenue.wpd

CV08 00839 JW                           BRIEF RE: SUBJECT MATTER JURISDICTION OF THIS COURT, ETC.

# **TABLE OF CONTENTS**

I.  RELEVANT BACKGROUND AND FACTUAL ALLEGATIONS . . . . 1

II. SUBJECT MATTER JURISDICTION UNDER THE LANHAM ACT IS LACKING UNDER 15 U.S.C. SECTION 1125(a)(1) BECAUSE THE PARTIES ARE NOT COMPETITORS AND NO TRADEMARKS ARE INVOLVED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   A.  Claims under 15 U.S.C. §1125(a)(1)(A) . . . . . . . . . . . . . . . . 4

      i)  There Are No Allegations of the Deceptive Use of a Trademark . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      ii) There is No Functional Equivalent of a Trademark at Issue Here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   B.  Claims under 15 U.S.C. §1125(a)(1)(B) . . . . . . . . . . . . . . . . 8

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**CASES**

*Allen v. Men's World Outlet, Inc.*
679 F. Supp. 360, 368 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Allen v. National Video, Inc.*
610 F. Supp. 612, 625-26 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Barrus v. Sylvania*
55 F.3d 468, 469 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 14

*Colligan v. Activities Club of New York, Ltd.*, 442 F.2d 686 (2d Cir.),
cert. denied, 404 U.S. 1004, 30 L. Ed. 2d 557, 92 S. Ct. 559 (1971) . . . . 9

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*
604 F.2d 200, 205 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dovenmuehle v.Gilldorn Mort'g  Midwest Corp.*
871 F.2d 697 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fuller Bros. v. International Mktg.*
870 F. Supp. 299, 303 (D. Or. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Halicki v. United Artists Communications, Inc.*
812 F.2d 1213, 1214 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . 9, 10, 11, 12, 14

*Jack Russell Terrier Network of No. Calif. v. American Kennel Club, Inc.*
407 F.3d 1027 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Kournikova v. General Media Communications, Inc.*
278 F. Supp. 2d 1111, 1119-1120 (C.D. CA 2003)   . . . . . 4, 6, 10, 11, 12

*Lahr v. Adell Chemical Co.*, 300 F.2d 256, 258 (1st Cir. 1962) . . . . . . . . 6

*Serbin v. Ziebart Int'l Corp., Inc.*, 11 F.3d 1163 (3d Cir. 1993) . . . . . . . . 9

*Sinatra v. Goodyear Tire & Rubber Co.*
435 F.2d 711, 716 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Smith v. Montoro*, 648 F.2d 602 (9th Cir. 1981) . . . . . . . . . . . . . . . . . 7, 8

*Summit Tech. v. High-line Med. Instruments. Co.*
933 F. Supp. 918, 937 (C.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*U-Haul Int'l, Inc. v. Jartran, Inc.*
681 F.2d 1159, 1162 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Waits v. Frito-Lay, Inc.*
978 F.2d 1093, 1109 (9th Cir. 1992), cert. denied,
122 L. Ed. 2d 355, 113 S. Ct. 1047 (1993.) . . . . . . . . . . 4, 5, 6, 8, 9, 10, 11

**STATUTES**

11 U.S.C. §1125(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

11 U.S.C. § 1125(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

15 U.S.C. § 1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 8

15 U.S.C. § 1125(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15 U.S.C. § 1125(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 14

15 U.S.C. § 1125(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 14

15 U.S.C. § 1127 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

7 C.F.R. Part 205 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 7, 8

7 CFR Sections 205.300 and 205.303 . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 7

**CODES**

402 U.S. 906 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

# I.

## **RELEVANT BACKGROUND AND FACTUAL ALLEGATIONS**

The Eighth Claims for Relief presented by OCEANO PACKING COMPANY, LLC ("OPC") is one for Federal Unfair Competition pursuant to 15 U.S.C. § 1125(a). Specifically, the Eighth Claim for Relief is brought pursuant to 15 U.S.C. § 1125(a)(1). (First Amended Complaint "FAC," ¶ 80.)

OPC claims that WESTERN FARM SERVICE ("WFS") and TRUE ORGANICS ". . . violated 11 U.S.C. §1125(a)(1)(A) by stating, in the True Letter, on True's website, and/or on labels or other documents associated with the sale of the Fertilizer in commerce, that the Fertilizer is: (1) '100% organic,' (2) 'organic', (3) 'completely pathogen-free,' (4) composted in accordance with the requirements of the NOP regulations, and/or (5) inspected and favorably reviewed by the CDFA. Such statements are untrue, as set forth in detail above, and likely to cause confusion, to cause mistake and/or to deceive another person, including, without limitation, Oceano, as to the origin, sponsorship, and/or approval of the Fertilizer." (FAC, ¶ 83.)

OPC claims that WFS and TRUE ORGANICS have "violated 11 U.S.C. § 1125 (a)(1)(B) by making false and/or misleading representations of fact in the True Letter and on True's internet website, which facts misrepresent the nature, characteristics, and/or qualities of the Fertilizer, as more fully described above." (FAC, ¶ 84.)

In connection with these allegations, OPC further alleges in paragraph 85 of the FAC:

> "As a producer of organic vegetables in accordance with the NOP regulations, Oceano has a competitive and economic interest in ensuring that the terms '100% Organic Fertilizer', '100% organic', 'organic', 'formulated specially for 100% organic fruits and vegetables', are used solely in conjunction with products produced in accordance with the NOP regulations, and that those terms are not applied to the sale or marketing of products that are not

produced in accordance with the NOP regulations. Oceano also has a competitive and economic interest in ensuring that the terms '100% Organic Fertilizer,' '100% organic,' 'organic' and 'formulated specially for 100% organic fruits and vegetables', continue to have a reputation for high quality products among consumers and companies in the organic product industry.  Oceano also has a competitive and economic interest in ensuring that inputs represented as '100% Organic Fertilizer', '100% organic', 'organic', and 'formulated specially for 100% organic fruits and vegetables', which are used to produce organic vegetable products, are not contaminated by pathogenic organisms which will in turn contaminate organic vegetable products. In this case, True's and Western's continued use of the terms '100% Organic Fertilizer,' '100% organic', 'organic', and 'formulated specially for 100% organic fruits and vegetables', as described herein, to refer to a product - the Fertilizer - that is not produced according to the NOP regulations, threatens the value of those terms for Oceano's uses. Similarly, Oceano has an interest in ensuring that the terms 'OMRI allowed', an 'OMRI class fertilizer', and made entirely of 'OMRI status allowed' ingredients, are not degraded and devalued, and that the status of OMRI is maintained as an organization which can be relied upon to evaluate inputs for use on certified organic farms." (FAC ¶ 85.)

As admitted in the FAC, OMRI means the Organic Materials Review Institute which is a non-profit organization that reviews products to determine whether or not the products are "Allowed" or "Approved" for use on certified organic farms. (FAC, ¶ 16.) According to the FAC, the acronym NOP refers to the National Organic Program, 7 C.F.R. Part 205. (FAC, ¶ 7.) The use of the terms "organic" and "100% organic" are regulated by the United States Department of Agriculture. (7 CFR Sections 205.300 and 205.303.)

OPC, WFS and TRUE ORGANICS are not competitors. "Oceano is in the business of growing certified organic vegetables, including the Crops, for sale for human consumption."  (FAC, ¶ 6.) "True [Organics] is in the business of manufacturing, marketing and selling organic fertilizer products." (FAC, ¶ 2.) Western [Farm Service]'s business includes, without limitation, the distribution and sale of the organic fertilizer products manufactured by

True. (FAC, ¶ 3.)

The parties, rather than being competitors, were doing business as customers of one another. "Based on Western [Farm Service]'s recommendation of the Fertilizer, and on the representations concerning the Fertilizer contained in the True [Organics] letter, and on the representations made on True [Organic]'s internet website, Oceano purchased the Fertilizer for use in producing certified organic vegetables in the course of Oceano's business, including the Crops. Copies of invoices for Oceano's purchase of the Fertilizer are attached hereto as Exhibit C and incorporated herein by reference." (FAC, ¶ 17.)

## II.
## SUBJECT MATTER JURISDICTION UNDER THE LANHAM ACT IS LACKING UNDER 15 U.S.C. SECTION 1125(a)(1) BECAUSE THE PARTIES ARE NOT COMPETITORS AND NO TRADEMARKS ARE INVOLVED

15 U.S.C. § 1125(a) states in relevant part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in a commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Two of the purposes of the Lanham Act are to make "actionable the deceptive and misleading use of marks in . . . commerce" and "to protect persons engaged in . . . commerce against unfair competition." (15 U.S.C. §

1127 (1988).) Section 43(a) reflects both of these purposes, providing two bases of liability: (1) false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device ("false association"), and (2) false representations in advertising concerning the qualities of goods or services ("false advertising"). (*Waits v. Frito-Lay, Inc.* 978 F.2d 1093, 1109 (9th Cir. 1992), cert. denied, 122 L. Ed. 2d 355, 113 S. Ct. 1047 (1993).)

### A.  Claims under 15 U.S.C. §1125(a)(1)(A)

This is the so-called false association prong of Section 43 of the Lanham Act, which is codified as 15 U.S.C. §1125(a)(1)(A). (*Barrus v. Sylvania*, 55 F.3d 468, 469 (9th Cir. 1995).) 15 U.S.C. §1125(a)(1)(B) on the other hand is called the false advertising prong. (*Barrus v. Sylvania, supra,* 55 F.3d 468, 470.)

In *Waits v. Frito-Lay, Inc.*, *supra,* 978 F.2d 1093, 1110, the Ninth Circuit Court of Appeals held that in cases involving the "false association" prong of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), in order to satisfy standing the plaintiff need allege a commercial injury based upon the deceptive use of a trademark or its functional equivalent. (See also, *Kournikova v. General Media Communications, Inc.*, 278 F. Supp. 2d 1111, 1119-1120 (C.D. CA 2003)

#### i)  There Are No Allegations of the Deceptive Use of a Trademark

Here, nowhere within the allegations of the Eighth Claim for Relief, paragraphs 79-88, does OPC allege the deceptive use of a trademark.

Again, OPC claims that WFS and TRUE ORGANICS "violated 11 U.S.C. § 1125(a)(1)(A) by stating, in the True Letter, on True's website, and/or on labels or other documents associated with the sale of the Fertilizer in commerce, that the Fertilizer is: (1) '100% organic,' (2) 'organic', (3) 'completely pathogen-free,' (4) composted in accordance with the

requirements of the NOP regulations, and/or (5) inspected and favorably reviewed by the CDFA. Such statements are untrue, as set forth in detail above, and likely to cause confusion, to cause mistake and/or to deceive another person, including, without limitation, Oceano, as to the origin, sponsorship, and/or approval of the Fertilizer." (FAC, ¶ 83.)

As admitted in the FAC, OMRI means the Organic Materials Review Institute which is a non-profit organization that reviews products to determine whether or not the products are "Allowed" or "Approved" for use on certified organic farms. (FAC, ¶ 16.) According to the FAC, the acronym NOP refers to the National Organic Program, 7 C.F.R. Part 205. (FAC, ¶ 7.)

The use of the terms "organic" and "100% organic" are regulated by the United States Department of Agriculture. (7 CFR Sections 205.300 and 205.303.) OPC does not allege that it owns the terms "organic" or "100% organic."

### ii) There is No Functional Equivalent of a Trademark at Issue Here

In *Waits* singer Tom Waits sued Frito Lay and an advertising agency for false endorsement under the Lanham Act arising out of a radio commercial in which a singer imitated Waits' voice and used the tune to one of his songs in the endorsement. (*Waits v. Frito-Lay*, *supra,* 978 F.2d 1093, 1096.) The singer hired to do the commercial was a professional singer who performed Waits' songs for over ten years and had consciously perfected an imitation of Waits' voice. (*Id.*) Waits had a long standing policy of not doing any endorsements. (*Id.*) Although not a trademark per se, Waits' voice and musical style were found to be the functional equivalent of a trademark.

The Ninth Circuit in *Waits* pointed to a number of cases in which courts recognized false endorsement claims brought by plaintiffs, including celebrities, for the unauthorized imitation of their distinctive attributes, where

those attributes amount to an unregistered commercial "trademark." (*Waits v. Frito-Lay, supra*, 978 F.2d 1093, 1106-1107, citing *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979) (recognizing claim under § 43(a) because uniform worn by star of X-rated movie confusingly similar to plaintiffs' trademark uniforms, falsely creating impression that plaintiffs "sponsored or otherwise approved the use" of the uniform); *Allen v. Men's World Outlet, Inc.*, 679 F. Supp. 360, 368 (S.D.N.Y. 1988) (celebrity states a claim under §43(a) by showing that advertisement featuring photograph of a look-alike falsely represented that advertised products were associated with him); *Allen v. National Video, Inc.*, 610 F. Supp. 612, 625-26 (S.D.N.Y. 1985) (recognizing celebrity's false endorsement claim under §43(a) because celebrity has commercial investment in name and face tantamount to interests of a trademark holder in distinctive mark); see also *Lahr v. Adell Chemical Co.*, 300 F.2d 256, 258 (1st Cir. 1962) (imitation of unique voice actionable as common law unfair competition); cf. *Sinatra v. Goodyear Tire & Rubber Co.*, 435 F.2d 711, 716 (9th Cir. 1970) (rejecting common law unfair competition claim because plaintiff's voice not sufficiently unique to be protectable), cert. denied, 402 U.S. 906 (1971).

Similarly in *Kournikova* the well-known tennis player and endorser's interest in the use of her name and likeness was the functional equivalent of a trademark. *(Kournikova v. General Media Communications, Inc., supra*, 278 F. Supp. 2d 1111, 1119-1120 ["A false endorsement claim based on unauthorized use of a celebrity's identity is a type of false association claim...which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product."]   In *Kournikova*, Defendant was publishing its Penthouse magazine purporting to show nude pictures of Plaintiff Anna Kournikova. Noting that Ms. Kournikova marketed swimsuit

H:\00AlphaFiles--DD\WFSI v. Oceano (37382-70096)\Pleadings\Pleadings Federal\BriefReVenue.wpd

6

CV08 00839 JW                                              BRIEF RE: SUBJECT MATTER JURISDICTION OF THIS COURT, ETC.

calendars, etc., she clearly had an interest in the exploitation of her name and likeness and an economic interest akin to that of a trademark holder.

In *Smith v. Montoro*, 648 F.2d 602 (9th Cir. 1981), the Ninth Circuit ruled that an actor had standing to sue a film distributor who replaced his name with another actor's name in the movie's credits and advertising. The Ninth Circuit analogized this conduct to trademark infringement in that the actor's "mark" - his name - had been removed and another's substituted and the injury involved was "of the same economic nature." (*Smith v. Montoro, supra*, 648 F.2d 602, 606-607.) Like trademark infringement, the film distributor's conduct was "an attempt to misappropriate or profit from [the plaintiff's] talents and workmanship." ( *Id.* at 607.)

Here, the subject fertilizer was sold to OPC by defendants, not to some third party. (FAC, ¶ 17.)   No mark or functional equivalent of a mark owned by OPC is alleged to have been used in the sale.

Unlike the interest that Tom Waits has in his unique singing voice, the interest Anna Kournikova has in her unique appearance, or the interest an actor has in her performance, OPC does not have a trademark interest, let alone any exclusive interest, in the words "organic" and "100% organic". (7 CFR Sections 205.300 and 205.303.)  OPC does not determine whether a business can use those terms.  In fact, in today's marketplace, those terms are common and can be ubiquitous depending on the place where one shops for food.

OPC complains of defendants' alleged use of the phrases "completely pathogen-free," "composted in accordance with the requirements of the NOP regulations," and/or "inspected and favorably reviewed by the CDFA." (FAC, ¶ 83.) OPC has not alleged that "completely pathogen-free" is a trademark or its functional equivalent owned by OPC.  According to the FAC, the acronym NOP refers to the National Organic Program, 7 C.F.R.

Part 205. (FAC, ¶ 7.) OPC cannot be considered to have the functional equivalent of a trademark interest in federal regulations. Furthermore, according to OPC it is the OMRI that reviews products to determine whether or not the products are "Allowed" or "Approved" for use on certified organic farms. (FAC, ¶ 16.)

Accordingly, OPC fails to state a claim under the first basis for liability of 15 U.S.C. §1125(a)(1)(A), that there is no false representations concerning the origin, association, or endorsement of goods or services ***through the wrongful use of another's distinctive mark, name, trade dress, or other device*** ("false association") (*Waits v. Frito-Lay, Inc.*, *supra*, 978 F.2d 1093, 1109).

### B. Claims under 15 U.S.C. §1125(a)(1)(B)

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits the use of false designations of origin, false descriptions, and false representations in the advertising and sale of goods and services. (*Smith v. Montoro*, 648 F.2d 602, 603 (9th Cir. 1981).) In *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995) the Ninth Circuit held that consumers lack standing to sue under the Lanham Act, 15 U.S.C. §1125(a)(1)(B). So it would seem that OPC's Lanham Act claims fail under these sections, as OPC is suing as a consumer. (See First Amended Complaint, ¶ 84.)

*Barrus v. Sylvania* was a class action lawsuit filed by the consumer plaintiffs alleging that defendant's falsely advertised their "Energy Saver" light bulbs. (*Barrus v. Sylvania*, *supra*, 55 F.3d 468, 469.) The Ninth Circuit held that in order to satisfy standing under the "false advertising" prong of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), plaintiffs are required to allege commercial injury based upon a misrepresentation about a product, and also that the injury was "competitive," i.e., harmful to the plaintiffs' ability to compete with the defendant. (*Barrus v. Sylvania, supra*, 55

H:\00AlphaFiles--DD\WFSI v. Oceano (37382-70096)\Pleadings\Pleadings Federal\BriefReVenue.wpd

8

CV08 00839 JW         BRIEF RE: SUBJECT MATTER JURISDICTION OF THIS COURT, ETC.

F.3d 468, 470, citing *Halicki v. United Artists Communications, Inc.*, 812 F.2d 1213, 1214 (9th Cir. 1987); *Waits, supra*, 978 F.2d at 1109.)

The Ninth Circuit noted that this rule of requiring the alleging of both a commercial injury and competitive injury is the rule in several other circuits that have also rejected consumer standing under the Lanham Act. (See *Serbin v. Ziebart Int'l Corp., Inc.*, 11 F.3d 1163 (3d Cir. 1993); *Dovenmuehle v. Gilldorn Mort'g Midwest Corp.*, 871 F.2d 697 (7th Cir. 1989); *Colligan v. Activities Club of New York, Ltd.*, 442 F.2d 686 (2d Cir.), cert. denied, 404 U.S. 1004, 30 L. Ed. 2d 557, 92 S. Ct. 559 (1971).)

In *Halicki v. United Artists Communications, Inc., supra*, 812 F.2d 1213, the Ninth Circuit reaffirmed that in a Lanham Act case the plaintiff must show that type of injury sustained is one the Lanham Act is intended to prevent. (*Id.* at p. 1214.) The Ninth Circuit noted that an express purpose of the Lanham Act is to protect commercial parties against unfair competition, thus "to be actionable, [the defendant's] conduct must not only be unfair but must in some discernible way be competitive." (*Id.*)

In *Halicki* a movie producer had entered into a contract with a film distributor under which the producer's movie would be advertised with a "PG" rating. Instead, it was advertised with an "R" rating, thus curtailing its market among young audiences. The gravamen of the complaint was that the defendant had misrepresented the film's content in advertising it.

> "[W]here the misrepresentation simply concerns a product's qualities, it is actionable under section 43(a) only insofar the Lanham Act's other purpose of preventing 'unfair competition' is served." (*Waits v. Frito-Lay, Inc, supra*, 978 F.2d 1093, 1109; See also *U-Haul Int'l, Inc. v. Jartran, Inc.,* 681 F.2d 1159, 1162 (9th Cir. 1982) (discussing trademark infringement and false comparative advertising as two distinct causes of action under §43(a) and noting congressional intent to allow false advertising suits by competitors 'to stop the kind of unfair competition that consists of lying about goods or services').

In *Waits* the Ninth Circuit gave an example of who has standing to assert such claims, using the facts of the *Halicki* case, involving a PG film designated as R. (*Waits v. Frito-Lay, Inc., supra*, 978 F.2d 1093, 1109.)

> "Under *Halicki's* facts, assuming for purposes of this hypothetical only that producers may rate their own films, if a film's distributor wrongfully indicates that a film is 'PG'-rated when in reality it should be 'R'-rated, a competitor with a PG-rated film would have standing: the misrated film theoretically draws young audiences away from the competitor's film because of the misrepresentation concerning the suitability of its content. In *Halicki*, however, the plaintiff lacked a discernibly competitive interest: he and the distributor were not independent actors in the marketplace, but rather had a contractual relationship in which the distributor agreed to act in the marketplace on the plaintiff's behalf. The interests asserted, therefore, were solely contractual and not within the zone of interests protected by the Lanham Act. ¶ Although *Halicki* in passing characterizes the plaintiff's claim as one for 'false designation' it does not use this term as a term of art to indicate the misuse of a trademark which falsely designates the film's origin or the association of the trademark's owner with the film. Instead, the term is used in its generic sense to refer to the use of a rating designation which falsely represents the film's content." (*Waits v. Frito-Lay, Inc, supra*, 978 F.2d 1093, 1109.)

The false-advertising prong of 15 U.S.C. § 1125(a)(1) was also involved in *Kournikova v. General Media Communications, Inc., supra*, 278 F. Supp. 2d 1111, along with the false association prong, as discussed above.

Plaintiff, a well-known women's tennis player, sued General Media Communications, Inc., for publishing in Penthouse Magazine partially nude photographs of another woman falsely identified as Kournikova. Kournikova claimed that the display of these falsely identified photographs constituted false advertising and false endorsement under Section 43(a) of the Lanham Act.

The Court in Kournikova wrote:

> False advertising cases generally involve some sort of misrepresentation in the marketplace that causes 'a discernibly competitive injury.' [cit.omit.] Standing

under this line of cases requires a showing that: (1) the plaintiff competes with the defendant in some marketplace, *Halicki v. United Artists Communications, Inc.*, 812 F.2d 1213, 1214 (9th Cir. 1987); (2) the plaintiff has alleged a discernibly competitive injury resulting from a misrepresentation in the marketplace, *Waits*, 978 F.2d at 1109; and (3) the misrepresentation implicates some purpose of the Lanham Act regarding the use of trademarks. *Id.*; see also *Halicki*, 812 F.2d at 1214 (Lanham Act should not be construed to create a federal 'tort of misrepresentation').

The meaning of 'competitor' has been addressed in case law from this district. Judge Collins wrote that 'competitors are 'persons endeavoring to do the same thing and each offering to perform the act, furnish the merchandise, or render the service better or cheaper than his rival.' *Summit Tech. v. High-line Med. Instruments. Co.*, 933 F. Supp. 918, 937 (C.D. Cal. 1996), quoting *Fuller Bros. v. International Mktg.*, 870 F. Supp. 299, 303 (D. Or. 1994).(*Kournikova v. General Media Communications, Inc., supra*, 278 F. Supp. 2d 1111, 1117.)

"Rather than engaging in simplistic labeling, the Court must determine whether or not the two parties vie for the same dollars from the same consumer group, and whether the conduct of the defendant, if true, could be said to create 'competitive injury'." (*Kournikova v. General Media Communications, Inc., supra*, 278 F. Supp. 2d 1111, 1117.)

The Kournikova decision went on to elaborate,

" . . . if one participant in the marketplace makes false statements that could theoretically draw consumers away from similar offerings of other participants in the same marketplace, and those false statements implicate the purposes of the Lanham Act (such as protection of trademarks or prevention of unfair competition), then those other participants have standing to bring suit under the Lanham Act for unfair competition in the form of false advertising." (*Kournikova v. General Media Communications, Inc., supra*, 278 F. Supp. 2d 1111, 1117-1118.)

The Court in *Kournikova* ultimately determined that with regard to some of the commercial activities of the parties before it that those parties "compete for the same dollars from the same target audience - namely men."

1  (*Kournikova v. General Media Communications, Inc., supra*, 278 F. Supp. 2d
2  1111, 1118.)

3  Here, none of the parties are competitors. (Compare allegations
4  of business of the three parties in FAC, ¶¶ 2, 3, and 6.) "Oceano is in the
5  business of growing certified organic vegetables, including the Crops, for sale
6  for human consumption." (FAC, ¶ 6.) "True [Organics] is in the business of
7  manufacturing, marketing and selling organic fertilizer products." (FAC, ¶ 2.)
8  "Western [Farm Service]'s business includes, without limitation, the
9  distribution and sale of the organic fertilizer products manufactured by True."
10 (FAC, ¶ 3.) But, more important, the parties were, in fact, contracted with one
11 another or in privity. (FAC, ¶ 17.)

12 Rather than vying for the same dollar from the same consumer
13 group, the parties here in fact were aligned in delivering the same consumer
14 product. The factual context of the parties here is more akin to that of the
15 parties in *Halicki v. United Artists Communications, Inc., supra*, 812 F.2d
16 1213. Also, like the parties in *Halicki* there exists here contractual
17 relationships and privity between the parties.

18 Furthermore, there are no allegations that a trademark of OPC or
19 its functional equivalent have been misused or misappropriated. (See FAC,
20 ¶¶ 81 and 83, Oceano's 15 U.S.C. §1125(a)(1)(A) claims.)

21 Ultimately, Plaintiff's claims deal neither with a trademark, or its
22 functional equivalent, nor with competition in the marketplace. Lanham Act
23 false advertising claims are limited to competitors:

24 > "[I]f such limitation were not in place the Lanham Act
25 > would become a federal statute creating the tort of
>   misrepresentation which would be the equivalent of
>   complete dilution of the concept of unfair competition.
26 > The Lanham Act is not designed to cure all
>   conceivable commercial evils." (*Halicki v. United
27 > Artists Communications, Inc., supra*, 812 F.2d 1213,
>   1214, 1215; *Kournikova v. General Media
28 > Communications, Inc., supra*, 278 F. Supp. 2d 1111,

H:\00AlphaFiles--DD\WFSI v. Oceano (37382-70096)\Pleadings\Pleadings Federal\BriefReVenue.wpd

12

CV08 00839 JW                              BRIEF RE: SUBJECT MATTER
                                           JURISDICTION OF THIS COURT, ETC.

1117.)

The "competitive injury" requirement was reaffirmed in *Jack Russell Terrier Network of No. Calif. v. American Kennel Club, Inc.*, 407 F.3d 1027 (9th Cir. 2005). The Jack Russell Terrier Network of Northern California ("JRTNNC") and individual Jack Russell Terrier owners and breeders brought claims alleging group boycott under the Sherman Anti-Trust Act and false advertising under the Lanham Act against the American Kennel Club ("AKC") and the Jack Russell Terrier Club of America ("JRTCA"). (*Jack Russell Terrier Network of No. Calif. v. American Kennel Club, Inc., supra,* 407 F.3d 1027, 1029.) The JRTNNC, a former regional affiliate of the JRTCA, sought declaratory and injunctive relief regarding a JRTCA policy known as the "Conflicting Organization Rule" ("COR"), which provided that JRTCA affiliates and members would recognize only the JRTCA registry of Jack Russell Terriers, and will not register their dogs with conflicting organizations such as the American Kennel Club ("AKC"). (*Id.*)

In *Jack Russell Terrier Network of No. Calif., supra*, the Appellants argued that the publication of the former JRTCA breeders who had registered with the AKC was a false advertisement that misrepresented the quality of their Jack Russell Terriers by falsely implying that JRTCA-only terriers are superior to all other Jack Russell Terriers and falsely implying that those dogs excluded do not meet JRTCA standards. (*Id.* at p. 1037.) Appellants there argued that this ostracizing of breeders who are "blacklisted" may cause economic harm, because, as discussed above, breeders depend on their dogs' reputation of quality and on the trial awards won at JRTCA events to sell and breed their dogs. However, as here, there the Appellants admitted that they are not direct competitors with those upon whom they seek to impose Lanham Act liability. (Compare *Jack Russell Terrier Network of No. Calif., supra,* at p. 1037 with FAC ¶¶ 2, 3, 6, and 17.) As the Ninth Circuit explained,

1 "... for standing pursuant to the 'false advertising' prong of §43(a) of the
2 Lanham Act, 15 U.S.C. § 1125(a)(1)(B), a plaintiff must show: (1) a
3 commercial injury based upon a misrepresentation about a product; and (2)
4 that the injury is 'competitive,' or harmful to the plaintiff's ability to compete
5 with the defendant." (*Jack Russell Terrier Network of No. Calif., supra*, at p.
6 1037; citing *Barrus*, 55 F.3d at 470, *Halicki v. United Artists Communications,
7 Inc., supra*, 812 F.2d 1213, 1214.)

### III.
### CONCLUSION

It would appear from an analysis of the above authorities that OPC's standing to bring a claim under the Lanham Act would fail as a false advertising claim under 15 U.S.C. §1125(a)(1)(B), because it is not a competitor of either TRUE ORGANICS or WFS. OPC lacks standing to pursue the 15 U.S.C. §1125(a)(1)(A) false association claim because it cannot demonstrate that it was competitive with TRUE and WFS and the claims do not involve the use of a trademark of OPC or its functional equivalent. As to the question of venue, this defendant would either defer consideration of that issue or be inclined to go along with this Court's leanings on whether the matter should be transferred.

DATED: July 1, 2008

PETRIE, DORFMEIER & MORRIS, LLP


By   //S// SEAN T. O'ROURKE
Sean T. O'Rourke,
Attorneys for Defendant,
WESTERN FARM SERVICE, INC.

H:\00AlphaFiles--DD\WFS I v. Oceano (37382-70096)\Pleadings\Pleadings Federal\BriefReVenue.wpd

14

CV08 00839 JW         BRIEF RE: SUBJECT MATTER JURISDICTION OF THIS COURT, ETC.

# PROOF OF SERVICE (Code Civ. Proc., §§1013a, 2015)

STATE OF CALIFORNIA, COUNTY OF FRESNO

I am employed in the County of Fresno, State of California.  I am over the age of 18 and not a party to the within action; my business address is 2014 Tulare Street, Suite 830, Fresno, California 93721.

On **July 1, 2008**, I served the foregoing document described as **BRIEF REGARDING SUBJECT MATTER JURISDICTION OF THIS COURT AND WHETHER VENUE IS PROPER** on the other parties in this action as follows:

| | |
|---|---|
| Effie F. Anastassiou, Esq.<br>Denis Klavdianos, Esq.<br>Scott Allen, Esq.<br>ANASTASSIOU & ASSOCIATES<br>242 Capitol Street<br>P.O. Box 2210<br>Salinas, CA 93902<br>e-mail: scottese@salinasaglaw.com | Plaintiff, OCEANO PACKING, LLC |
| Jube J. Najarian, Esq.<br>Leith B. Hansen, Esq.<br>Steven M. McQuillan, Esq.<br>JACOBSON, HANSEN, NAJARIAN & McQUILLAN<br>1690 W. Shaw Ave., Ste. 201<br>Fresno, CA 93711<br>email: jjn@jhnmlaw.com | Defendant, TRUE ORGANIC PRODUCTS, INC. |
| Andrew H. Swartz, Esq.<br>550 Hartnell St.<br>Monterey, CA 93940<br>Fax: (831) 373-8211<br>email: ahswartz@aol.com | Defendant, TRUE ORGANIC PRODUCTS, INC. |

**BY ELECTRONIC MAIL:**

As follows:  I caused the above named document to be filed with the United States District Court, Northern Division of California's Case Management/Electronic Case Filing (CM/ECF) System where upon it was electronically delivered to the parties in this case through their electronic mail addresses.

Executed on **July 1, 2008**, at **Fresno**, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

| **Jalee Furr** | //S// JALEE FURR |
|---|---|
| Type or Print Name | Signature |