Effie F. Anastassiou, Esq. (SBN 96279)
Denis Klavdianos, Esq. (SBN 225925)
ANASTASSIOU & ASSOCIATES
242 Capitol Street
Post Office Box 2210
Salinas, California 93902
Telephone: (831) 754-2501
Facsimile: (831) 754-0621

Attorneys for Plaintiff
OCEANO PACKING COMPANY, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCEANO PACKING COMPANY, LLC<br><br>Plaintiff,<br><br>v.<br><br>TRUE ORGANIC PRODUCTS, INC., A California Corporation; and WESTERN FARM SERVICE, INC., A Delaware Corporation,<br><br>Defendants. | Case No. C08 00839 JW<br><br>**OCEANO PACKING COMPANY, LLC'S OPPOSITION TO WESTERN FARM SERVICE INC'S AND TRUE ORGANIC PRODUCTS INC.'S MOTION TO DISMISS RE SUBJECT MATTER JURISDICTION**<br><br>Date: October 27, 2008<br>Time: 9:00 a.m.<br>Dept: Courtroom 8<br>Judge: Honorable James Ware |

### I.   INTRODUCTION

On or about July 1, 2008, Defendant WESTERN FARM SERVICE INC. ("Western") and Defendant TRUE ORGANIC PRODUCTS, INC. ("True") submitted their respective motions to dismiss Plaintiff OCEANO PACKING COMPANY, LLC's ("Oceano") Eighth Cause Of Action (Federal Unfair Competition, 15 U.S.C. § 1125)[1]. Defendants' respective motions to dismiss present the same or very similar arguments and case law. As such, Oceano hereby submits this opposition in response to both Western's and True's respective motions to dismiss.

---

[1] Also known as Section 43(a) of the Lanham Act.

Defendants' motions to dismiss should be denied in their entirety because Oceano has properly plead a claim based on the "false association" prong encompassed in 15 U.S.C. § 1125(a)(1)(A) of the Lanham Act. In its pleadings, Oceano has alleged that it has a "reasonable interest" in protecting against injury to the organic produce industry and market by the Defendants' false representations. See Waits v. Frito-Lay, Inc. 978 F. 2d 1093, 1109 (9th Cir. 1992) and Smith v. Montoro, 648 F. 2d 602, 607 (9th Cir. 1981).

Specifically, in its First Amended Complaint ("FAC"), Oceano has alleged the following: (a) Defendants' use of the terms "OMRI allowed"[2], "OMRI class fertilizer", "100% Organic Fertilizer", and "formulated specifically for 100% organic fruits and vegetables", is likely to cause confusion, mistake and deception in connection with the use of these terms, and that Oceano has an interest in ensuring that those terms are not misrepresented, degraded and devalued in connection with inputs used for organic vegetable production, since Oceano is in the business of growing certified organic vegetable crops for human consumption which require inputs of organic fertilizer; and (b) if Defendants are not enjoined from their improper use of those terms, such acts could result in one or more repeated acts of contamination of organic vegetable products by True's fertilizer products, which in turn could result in general harm and damage to the organic vegetable production industry, due to potential U.S. Food & Drug Administration ("FDA") bans of the sale of organic vegetable products, and/or other negative publicity which is detrimental to the sale of organic vegetable products.

**II.    ARGUMENT**

    **A.    Plaintiff Oceano Has Alleged That It Has A "Reasonable Interest" To Be Protected Against Western's And True's False Or Misleading Representations Of Fact With Respect To The Sponsorship And/Or Approval Of The True Fertilizer.**

        **1.    The Ninth Circuit Law Concerning Sustaining A Cause Of Action Under The Lanham Act (15 U.S.C. § 1125).**

In 1992, the Ninth Circuit Court of Appeals interpreted the Lanham Act (15 U.S.C. § 1125) as providing *two separate alternative grounds* upon which a party may sustain a cause of action, which include: (1) false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device ("false

---

[2] "OMRI" - the Organic Materials Review Institute - a non-profit organization that reviews products to determine whether or not the products are "Allowed" or "Approved" for use on certified organic farms. [See FAC ¶ 16].

1  association"), and (2) false representations in advertising concerning the qualities of goods or services
2  ("false advertising"). See Waits, supra, at 1109.

3  In establishing these two alternative grounds for liability, the Waits Court stated that it was
4  reconciling two prior Ninth Circuit decisions that were apparently in conflict as to whether a plaintiff must
5  be a "competitor" of a defendant in order to sustain a Lanham Act claim. See Waits, supra., at 1108.  In
6  Smith, supra, at 607, the Ninth Circuit had previously held that to have standing under the Lanham Act, the
7  dispositive question is whether a plaintiff has a "reasonable interest to be protected against false
8  advertising" and that  "the plaintiff need not be in actual competition with the alleged wrongdoer."
9  [Emphasis added]. In contrast, in Halicki v. United Artists Communications, Inc. 812 F. 2d 1213, 1214,
10  (9th Cir. 1987), the Ninth Circuit had held that a plaintiff must show a "competitive injury".

11  In reconciling the two prior decisions, the Waits Court specifically held that in order to sustain a
12  cause of action for "false association", a plaintiff need only show that it has a "reasonable interest" to
13  protect with respect to the wrongdoer's actions, and that only the "false advertising" basis for liability
14  requires that a plaintiff be a direct competitor of the wrongdoer. Waits, supra, at 1108-1109.  The Waits
15  Court further stated that the Lanham Act grants a cause of action to certain non-competitors who have been
16  injured commercially by the "deceptive and misleading use of marks." Id. at 1109.

17  **2.    Oceano Has A "Reasonable Interest" In Protecting Against Injury To The Organic Produce Industry And Market By Prosecuting Its Claims Under The False Association Prong Of The Lanham Act.**
18  
19  **a.    Injury To The Organic Produce Industry.**

20  The Ninth Circuit has provided little guidance as to how to evaluate what constitutes a "reasonable
21  interest" under a false association claim in a context like this case.  However, cases from other circuits are
22  illustrative of how "reasonable interest" should be determined here.

23  The Second Circuit has case law which explains the meaning of "reasonable interest" in the context
24  of determining standing to pursue a Lanham Act claim.  The Second Circuit has stated that "reasonable
25  interest" includes "commercial interests, direct pecuniary interest, and even a future potential for a
26  commercial or competitive injury." ITC Limited v. Punchgini, Inc., 482 F. 3d 135, 169 (2nd Cir. 2007).
27  "Direct pecuniary interests" which have been found to be affected by a defendant's wrongful
28  misrepresentations include a fur association's interest in obtaining a percentage of the sales price of its

1 members' mink furs, and its interest in thus preventing the sale of garments by defendants with labels
2 falsely portraying that the garments were made with real mink fur. See <u>Mutation Mink Breeders</u>
3 <u>Association v. Lou Nierenberg Corp.</u>, 23 F.R.D. 155, 161-162 (S.D.N.Y 1959).

4     Similarly, in <u>Camel Hair & Cashmere Institute, Inc. v. Associated Dry Goods Corp</u>. 799 F. 2d 6, 17-
5 18 (1st Cir. 1986), the First Circuit held that the a non-profit corporation organized to promote the use of
6 camel hair and cashmere, and to safeguard the interests of the cashmere and camel hair industry, had
7 standing on behalf of its members, to sue a defendant department store under the Lanham Act for falsely
8 labeling coats as having "50% cashmere" when in fact the coats only had "12.4% cashmere". In evaluating
9 the standing requirements under the Lanham Act, the Court held that the plaintiff organization had standing
10 to prosecute its Lanham Act claim because its members, who were manufacturers and/or marketers of
11 cashmere and camel hair garments, would otherwise have standing to sue, even though they were not
12 competitors with the defendant, since they had "*a strong interest in preserving cashmere's reputation as*
13 *a high quality fibre*." Id. at 18.

14     The <u>Camel</u> <u>Hair</u> case stands for the proposition that a commercial entity's interest in preserving and
15 safeguarding the reputation of a product which it sells is a sufficient nexus to hold that such party has a
16 "reasonable interest" in protecting against the acts of wrongdoers who misrepresent another product with
17 false representations of origin, which causes injury to the plaintiff's industry.

18     Here, as in the <u>Camel</u> Hair case, Oceano has a strong interest in protecting the reputation of organic
19 vegetable products as safe and wholesome products for consumption by consumers. However, due to the
20 false association of True's organic fertilizer products with various marks, names, trade dress and other
21 devices which are relied upon by the growers of organic vegetable products when they purchase inputs for
22 organic production, such as "OMRI allowed", "OMRI class fertilizer", "100% Organic fertilizer", etc., and
23 the marketing and sale of such fertilizer products by True and Western to growers of organic vegetables,
24 the Defendants have fostered a situation where the reputation of organic vegetable products is likely to be
25 harmed by such fertilizer products.

26     **b.    Allegations In The First Amended Complaint Regarding Injury To Organic Produce Industry And Market, As Well As To Plaintiff Oceano.**

28 In the instant case, Plaintiff has alleged that unless the misrepresentations of Defendants True and

Western are enjoined, they will have a direct effect on both the industry and market for organic produce, as well as on the organic products of Plaintiff Oceano itself, in that:

(a) Defendants' use of the terms "OMRI allowed"[3], "OMRI class fertilizer", "100% Organic Fertilizer", and "formulated specifically for 100% organic fruits and vegetables", is likely to cause confusion, mistake and deception in connection with the use of those terms, and that Oceano has an interest in ensuring that those terms are not degraded and devalued in connection with inputs used for organic vegetable production, since Oceano is in the business of growing certified organic vegetable crops for human consumption which require inputs of organic fertilizer; and

(b) If Defendants are not enjoined, such acts could result in one or more repeated acts of contamination of organic vegetable products by the True Fertilizer, which in turn could result in general harm and damage to the organic vegetable production industry, due to potential FDA bans of the sale of organic vegetable products, and/or other negative publicity which is detrimental to the sale of organic vegetable products.

More specifically, Oceano has set forth the following relevant allegations in its FAC:

81. True violated 11 U.S.C. § 1125(a)(1)(A) by using, in the Product Specs, the word or terms "**OMRI allowed**" and "**OMRI class fertilizer**," and by stating that the Fertilizer is made entirely of "OMRI status allowed" ingredients. Such words or phrases are likely to cause confusion, to cause mistake, and/or to deceive as to the origin, **sponsorship, or approval of the Fertilizer**, **specifically by leading organic vegetable producers and other organic farmers to believe that the Fertilizer has been approved by OMRI. In truth, OMRI has not approved the Fertilizer**.

82. Organic vegetable producers, such as Oceano, routinely rely on OMRI to list products that are allowable for use in organic farming pursuant to the NOP regulations. By using the phrases "**OMRI allowed**" and "**OMRI class fertilizer**" and by representing that the Fertilizer is made from "OMRI status allowed" ingredients, True undermines the ability of organic farmers to trust OMRI as a source of products suitable for use in organic farming under the NOP regulations.

83. True and Western have also violated 11 U.S.C. § 1125 (a)(1)(A) by stating, in the True Letter, on True's website, and/or on labels or other documents associated with the sale of the Fertilizer in commerce, that the Fertilizer is: (1) "100% organic," (2) "organic", (3) "completely pathogen-free," (4) composted in accordance with the requirements of the NOP regulations, and/or (5) inspected and favorably reviewed by the CDFA. Such statements are untrue, as set forth in detail above, and likely to cause

---

[3] "OMRI" - the Organic Materials Review Institute - a non-profit organization that reviews products to determine whether or not the products are "Allowed" or "Approved" for use on certified organic farms. [See FAC ¶ 16].

confusion, to cause mistake and/or to deceive another person, including, without limitation, Oceano, as to the origin, **sponsorship, and/or approval of the Fertilizer**.

84. True and Western have also violated 11 U.S.C. § 1125 (a)(1)(B) by making **false and/or misleading representations of fact** in the True Letter and on True's internet website, which facts misrepresent the nature, characteristics, and/or qualities of the Fertilizer, as more fully described above.

85. As a producer of organic vegetables in accordance with the NOP regulations, Oceano has a competitive and economic interest in ensuring that the terms "100% Organic Fertilizer", "100% organic", "organic", "formulated specially for 100% organic fruits and vegetables", are used solely in conjunction with products produced in accordance with the NOP regulations, and that those terms are not applied to the sale or marketing of products that are not produced in accordance with the NOP regulations. Oceano also has a competitive and **economic interest in ensuring that the terms "100% Organic Fertilizer", "100% organic", "organic"and "formulated specially for 100% organic fruits and vegetables", continue to have a reputation for high quality products among consumers and companies in the organic product industry**. Oceano also has a competitive and economic interest in ensuring that inputs represented as "100% Organic Fertilizer", "100% organic", "organic", and "formulated specially for 100% organic fruits and vegetables", which are used to produce organic vegetable products, are not contaminated by pathogenic organisms which will in turn contaminate organic vegetable products. In this case, True's and Western's continued use of the terms "100% Organic Fertilizer," "100% organic", "organic", and "formulated specially for 100% organic fruits and vegetables", as described herein, to refer to a product - the Fertilizer - that is not produced according to the NOP regulations, threatens the value of those terms for Oceano's uses. Similarly, Oceano has an interest in ensuring that the terms "OMRI allowed", an "OMRI class fertilizer", **and made entirely of "OMRI status allowed" ingredients, are not degraded and devalued, and that the status of OMRI is maintained as an organization which can be relied upon to evaluate inputs for use on certified organic farms**.

86. As described in detail above, in the True Letter and on True's internet web site, True and Western made false and/or misleading representations of fact regarding the Fertilizer in commerce which also misrepresented the nature, characteristics, and/or qualities of the Fertilizer. Oceano justifiably relied on the false and/or misleading representations of fact made by True and Western regarding the Fertilizer in commerce which caused Oceano to suffer commercial injury, including, without limitation, the destruction of its Crops due to salmonella contamination, and the loss of future business with its customers. **If such actions by True and Western are not enjoined by this Court, such actions could result in one or more repeated acts of contamination of organic vegetable products by the True Fertilizer, which in turn could result in general harm and damage to the organic vegetable production industry, due to potential FDA bans of the sale of organic vegetable products, and/or other negative publicity which is detrimental to the sale of organic vegetable products.**

87. True and Western's false and/or misleading representations of fact regarding the Fertilizer were the direct and legal cause of Oceano's damages as described herein, which include lost revenues of approximately $1,073,633.30, as well as a loss of future business with its customers in an amount to be determined according to proof, and other damages to be determined in accordance with proof.

[Emphasis added].

In accordance with the foregoing, Oceano has alleged that as a commercial participant in the organic produce industry, Oceano has a "reasonable interest" to protect against the false misrepresentations made by Defendants True and Western.

**B.    Oceano Has Specifically Complied With The Statutory Requirements In Pleading Its Lanham Act Cause Of Action Relating To "False Association."**

Moreover, as shown in the excerpts above, in its pleadings, Oceano has specifically pled the elements in the textual language of subsection (a)(1)(A) of 15 U.S.C. § 1125, which relates to a claim for "false association" under the Lanham Act.

> (a) Civil action.
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, **false or misleading description of fact**, **or false or misleading representation of fact**, which--
> (A) **is likely to cause confusion, or to cause mistake**, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, **sponsorship, or approval of his or her goods**, services, or commercial activities **by another person**, or

[emphasis added].

In sum, Oceano has specifically alleged that Defendants have made false and misleading descriptions and misrepresentations of fact that are likely to cause confusion or mistake as to the "sponsorship or approval" of Defendants' goods. See FAC, ¶¶ 81, 83.

**C.    The Cook Drilling Case Relied Upon By Defendant True is Clearly Distinguishable.**

The case of Cook Drilling Corp. v. Halco America, Inc., 2002 U.S. Dist. Lexis 903 (E.D. Pa. Jan. 22, 2002), cited in True's Motion To Dismiss, at Page 10, is clearly distinguishable. In Cook, the plaintiff, a business that purchased an air hammer from defendant corporation, was only seeking to prevent defendant from misrepresenting its own label.

In contrast, in this case, Oceano is seeking to preserve labeling relied upon the organic vegetable community, in general, such as "OMRI Allowed", and "100% Organic Fertilizer". In essence, Oceano is not only addressing its own direct pecuniary interests, but also seeking to prevent injury to the organic vegetable community, as a whole. Oceano, as a producer of certified organic vegetables has a much more direct connection and interest in the relevant industry (organic vegetable industry) than did the plaintiff in Cook.

This is precisely the type of injury that the Lanham Act was drafted to address, i.e. "securing to the

business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not." See Granite State Ins. Co. v. Aamco Transmissions, Inc. 57 F. 3d 316, 321 (3rd Cir. 1995); quoting S. Rep. No. 79-1333 (1946) reprinted in 1946 U.S.C.C.A.N. 1274, 1275.

### III. CONCLUSION

As a result of the foregoing, there is clear basis to deny Defendants' respective motions to dismiss. Oceano has properly pled that it has a "reasonable interest" in protecting against injury to the organic produce industry and market caused by True and Western misrepresenting the True fertilizer products in violation of the Lanham Act.

DATED: July 22, 2008                                            Respectfully submitted,

                                                               ANASTASSIOU & ASSOCIATES

                                                               By:   s/ Effie F. Anastassiou
                                                                     Effie F. Anastassiou, Esq.
                                                                     Attorneys for Oceano Packing
                                                                     Company, LLC

F:\OCA\Salmonella\True Organic-WFS\Pleadings\Plaintiff's Pleadings\OceanoOppMtnDismissSubjectMatterJx.wpd