1  Dale Dorfmeier, Esq.; SBN 076266
   Sean T. O'Rourke, Esq.; SBN 199420
2  PETRIE, DORFMEIER & MORRIS, LLP
   2014 Tulare Street, Suite 830
3  Fresno, CA 93721
   Telephone (559) 498-6522
4  Facsimile   (559) 498-6516

5  Attorneys for Defendant, WESTERN
   FARM SERVICE, INC.
6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 OCEANO PACKING COMPANY,            Case No. 5:08-cv-00839-JW
   LLC,
12                                     DEFENDANT WESTERN FARM
              Plaintiff,               SERVICE, INC.'S REPLY TO
13                                     OCEANO PACKING
   v.                                  COMPANY'S OPPOSITION TO
14                                     MOTION TO DISMISS RE:
   TRUE ORGANIC PRODUCTS,              SUBJECT MATTER
15 INC., A California Corporation; and JURISDICTION
   WESTERN FARM SERVICE, INC.,
16 A Delaware Corporation,

17            Defendants.

18

19

20

21

22

23

24

25

26

27

28

H:\00AlphaFiles--DD\WFS
l v.
Oceano-70096)\Pldgs\Pld
gs-Fed\Dismiss 8th
CofA\Reply-9.wpd

CV08 00839 JW                        WFS' REPLY TO OCEANO'S OPPOSITION TO
                                     MOTION TO DISMISS SUBJECT MATTER

1

## **TABLE OF CONTENTS**

2  I.  INTRODUCTION

3  THE CONCESSIONS AND OMISSIONS IN PLAINTIFF'S OPPOSITION
   HAVE SERVED TO NARROW TO THE ISSUES IN THIS MOTION  1
4
   A.  Plaintiff's False Advertising Claims Have Been Abandoned . . 1
5
   B.  Plaintiff Claims No Trademark or its Functional Equivalent for the
6      Term "Organic . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

7  II.  NEITHER THE NINTH CIRCUIT, OR THE AUTHORITY CITED BY
        PLAINTIFF, HAS EXPANDED SECTION 43(a) LIABILITY UNDER THE
8       TRADEMARK ACT TO SUBJECT MATTER BEYOND TRADEMARKS
        OR THEIR FUNCTIONAL EQUIVALENT . . . . . . . . . . . . . . . . . . . . 4
9
   A.  The "Reasonable Interest" Standard Which Plaintiff Argues This
10     Court Should Follow, Citing To ITC Limited v. Punchgini, Is
       Actually One Discussed In The Context Of A False
11     Advertising Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12
   B.  There Are No Allegations Within Plaintiff's Complaint That It Is
13     Representing  Any Interests Other Than Its Own In This
       Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
14
   III.  BEING A GENERIC TERM, OPC CANNOT CLAIM ANY TRADEMARK
15       ON THE TERM "ORGANIC" OR THE FUNCTIONAL EQUIVALENT TO
         A TRADEMARK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
16
   IV.  PLAINTIFF'S ALLEGATIONS DO NOT PROVIDE A BASIS FOR A
17      WIDESPREAD "PASSING OFF" OF A PRODUCT FOR
        PURPOSES OF A FALSE ASSOCIATION . . . . . . . . . . . . . . . . . . 13
18
   V.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

19

20

21

22

23

24

25

26

27

28

H:\00AlphaFiles--DD\WFS
l v.
Oceano-70096)\Pldgs\Pld
gs-Fed\Dismiss 8th
CofA\Reply-9.wpd          CV08 00839 JW                                    WFS' REPLY TO OCEANO'S OPPOSITION TO
                                                                        i  MOTION TO DISMISS SUBJECT MATTER

1

# TABLE OF AUTHORITIES

2

**CASES**

3    *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995) . . . . . . . . . . . . 1, 14

4    *Berni Int'l Gourmet Restaurants of America, Inc.*,
     838 F.2d 642, 648 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
5
     *Camel Hair & Cashmere Institute, Inc. v. Associated Dry Goods Corp.*,
6    799 F. 2d 6, 17-18 (1st Cir. 1986) . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 10, 13

7    *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*,
      467 F. Supp. 366, 374 (S.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . 3
8
     *Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*,
9    871 F.2d 697, 700-01 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . 3

10   *Halicki v. United Artists Communications, Inc.*,
     812 F.2d 1213, 1214, 1215 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . 4, 14
11
     *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,
12   456 U.S. 844, 858, 72 L. Ed. 2d 606, 102 S. Ct. 2182 (1982) . . . . . . . . . 4

13   *ITC Limited v. Punchgini, Inc.*, 482 F. 23d 135 (2nd Cir. 2007) . . . . . . . . 7

14   *Kournikova v. General Media Communications, Inc.*,
     278 F. Supp. 2d 1111, 1119-1120 (C.D. CA 2003). . . . . . . . . . 1, 3, 4, 14
15
     *Miller Brewing Co. v. Falstaff Brewing Corp.*,
16   655 F.2d 5, 7-8 (1st Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

17   *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*,
     316 U.S. 203, 205 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
18
     *Mutation Mink Breeders Association v. Lou Nierenberg Corp.*,
19   23 F.R.D. 155, 160 (S.D. NY 1959) . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

20   *The Freecycle Network, Inc. v. Oey*,
     505 F.3d 898, 905 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
21
     *Two Pesos, Inc. v. Taco Cabana, Inc.*,
22   505 U.S. 763, 764; 112 S. Ct. 2753, 2755 (1992) . . . . . . . . . . . . . . 2, 4, 5

23   *Waits v. Frito-Lay, Inc.*,
     978 F.2d 1093, 1110 (9th Cir. 1992) . . . . . . . . . . . . . 1, 2, 3, 4, 6, 7, 14
24

**STATUTES**

25

     11 U.S.C. §1125(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11
26
     11 U.S.C. §1125 (a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
27
     15 U.S.C. §1125(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 6, 7, 14
28

H:\00AlphaFiles--DD\WFS
l v.
Oceano-70096)\Pldgs\Pld
gs-Fed\Dismiss 8th
CofA\Reply-9.wpd

CV08 00839 JW                         WFS' REPLY TO OCEANO'S OPPOSITION TO
                        ii            MOTION TO DISMISS SUBJECT MATTER

# TABLE OF AUTHORITIES CONTINUED

15 U.S.C. §1125(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,7, 14

15 U.S.C. §1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 U.S.C. §1127 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7 CFR 205.230(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

1

## I.
### INTRODUCTION
2

### THE CONCESSIONS AND OMISSIONS IN PLAINTIFF'S OPPOSITION
### HAVE SERVED TO NARROW TO THE ISSUES IN THIS MOTION
3

4

**A.  Plaintiff's False Advertising Claims Have Been Abandoned**

5      In its opposition, OCEANO PACKING COMPANY, LLC, ("OPC")

6  only asserts that it has properly plead a claim based upon the "false

7  association" prong of 15 U.S.C. § 1125(a)(1)(A) of the Lanham Act.  (See

8  Plaintiff's Brief, pp. 2:1-3, 7:5-17.)  Accordingly, it would appear that OPC has

9  no opposition to dismissal of the "false advertising" claims pursuant to 11

10  U.S.C. §1125 (a)(1)(B) as alleged in its First Amended Complaint, at

11  paragraph 84.  As argued within both Defendants' opening briefs, standing is

12  not available to OPC under 15 U.S.C. §1125(a)(1)(B) because OPC's First

13  Amended Complaint admits that it is a consumer, for whom standing is

14  unavailable in a Lanham Act False Advertising Claim.  (See First Amended

15  Complaint, ¶ 84 and *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995).)

16  Additionally, none of the parties are competitors.  (Compare allegations of the

17  business of the three parties in FAC, ¶¶ 2, 3, and 6.)

18

**B.  Plaintiff Claims No Trademark Or Its Functional Equivalent For The Term "Organic"**

19

20      As pointed out by Defendant in its opening brief, in *Waits v. Frito-

21  Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992), cert. denied, 122 L. Ed. 2d

22  355, 113 S. Ct. 1047 (1993), the Ninth Circuit Court of Appeals held that in

23  cases involving the "false association" prong of section 43 of the Lanham Act,

24  15 U.S.C.§1125(a)(1)(A), in order to satisfy standing the plaintiff need allege

25  a commercial injury based upon the deceptive use of a trademark or its

26  functional equivalent.  (See also, *Kournikova v. General Media

27  Communications, Inc.*, 278 F. Supp. 2d 1111, 1119-1120 (C.D. CA 2003).)

28  Plaintiff does not take issue with this statement of law.

1    Further, Plaintiff does not dispute that its First Amended

2  Complaint is devoid of allegations that a trademark of OPC or its functional

3  equivalent has been misused or misappropriated.  (See FAC, ¶¶ 81 and 83,

4  OPC's 15 U.S.C. §1125(a)(1)(A) claims.)  Plaintiff does not claim that it can

5  or will amend its complaint to include such allegations.

6    Instead, Plaintiff suggests that

7    " . . . the *Waits* Court specifically held that in order to
8    sustain a cause of action for 'false association', a
     plaintiff need only show that it was a 'reasonable
     interest' to protect with respect to the wrongdoer's
9    actions, and that only the 'false advertising' basis for
     liability requires that a plaintiff be a direct competitor
10   of the wrongdoer. <u>Waits, supra,</u> at 1108-1109.  The
     <u>Waits</u> Court further stated that the Lanham Act grants
11   a cause of action to certain non-competitors who
     have been injured commercially by the 'deceptive and
12   misleading use of marks.' <u>Id.</u> at 1109." (Plaintiff's
     Brief, p.3:11-16.)

13

14    Plaintiff proceeds to argue to this Court that standing for a false

15  association claim under 11 U.S.C. § 1125(a)(1)(A) is governed by the

16  standard of whether a plaintiff has a "reasonable interest" to protect.  (See

17  Plaintiff's Brief, p.3:17-4:3, 7:1-8:9.)  Defendant believes that this overlooks

18  the very language of *Waits* cited by Plaintiff, i.e., that the Lanham Act grants

19  a cause of action to certain non-competitors who have been injured

20  commercially by the "deceptive and misleading use of marks."  (Plaintiff's

21  Brief, p.3: 11-16, citing *Waits*, *supra*, at p. 1109.)

22    The Lanham Act is also known as the Trademark Act of 1946.

23  (*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764; 112 S. Ct. 2753,

24  2755 (1992).)   The fact that this act established protection mechanisms for

25  Trademarks was not unnoticed by the Ninth Circuit, even when it used the

26  "reasonable interest" phrase which Plaintiff now seeks to bend to its use:

27    "To have standing under the Lanham Act, we
28    declared, 'the plaintiff need not be in actual
     competition with the alleged wrongdoer.' [cit. omit.]

H:\00AlphaFiles--DD\WFS
I v.
Oceano-70096)\Pldgs\Pld
gs-Fed\Dismiss 8th
CofA\Reply-9.wpd

CV08 00839 JW                                    WFS' REPLY TO OCEANO'S OPPOSITION TO
                            2                    MOTION TO DISMISS SUBJECT MATTER

1    Rather, the 'dispositive question' in determining
standing is whether the plaintiff 'has a reasonable
2    interest to be protected against false advertising.' [cit.
omit.] We concluded that, **like a trademark holder,**
3    **an actor has a 'reasonable interest' in having his**
**work product properly identified with his name,**
4    **and therefore the plaintiff had standing under**
**section 43(a)."**  *(Waits, supra*, p. 1108.) [Emphasis
5    added.]

6         In *Waits*, nor, to Defendant's knowledge, in any other decision,

7    has the Ninth Circuit adopted something as amorphous as a "reasonable

8    interest" standard to define to standing under Section 43(a) of the Trademark

9    Act of 1946.  Instead, the Ninth Circuit extends standing under Section 43 (a)

10   of the Trademark Act to a plaintiff who alleges a commercial injury based

11   upon the deceptive use of a trademark or its functional equivalent.   (*Waits v.*

12   *Frito-Lay, Inc.*, *supra*, 978 F.2d 1093, 1109-1110 (The Lanham Act grants a

13   cause of action to certain noncompetitors who have been injured

14   commercially by the deceptive and misleading use of marks);  See also,

15   *Kournikova v. General Media Communications, Inc.*, 278 F. Supp. 2d 1111,

16   1119-1120 (C.D. CA 2003);  *Dallas Cowboys Cheerleaders, Inc. v. Pussycat*

17   *Cinema, Ltd.*, 467 F. Supp. 366, 374 (S.D.N.Y. 1979) (owner of a mark has

18   right to exploit mark commercially by having consumers associate mark only

19   with owner's goods or services, regardless of whether misappropriator deals

20   in competing or noncompeting goods or services). )

21        The Ninth Circuit stated in *Waits*,

22   "[t]hose with standing to bring such a claim include
parties with a commercial interest in the product
23   wrongfully identified with another's mark, as in Smith,
or with a commercial interest in the misused mark. 9
24   See *Dovenmuehle v. Gilldorn   Mortgage Midwest*
*Corp.*, 871 F.2d 697, 700-01 (7th Cir. 1989) (only
25   those with present commercial interest in trade name
have standing to sue for its wrongful use under §
26   43(a)); *Berni Int'l Gourmet Restaurants of America,*
*Inc.*, 838 F.2d 642, 648 (2d Cir. 1988) (plaintiff must
27   have commercial or ownership interest in mark to
have standing under§43(a)); cf. *Mishawaka Rubber*
28   *& Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203,

H:\00AlphaFiles--DD\WFS
l v.
Oceano-70096)\Pldgs\Pld
gs-Fed\Dismiss 8th
CofA\Reply-9.wpd

CV08 00839 JW

3

WFS' REPLY TO OCEANO'S OPPOSITION TO
MOTION TO DISMISS SUBJECT MATTER

1   205 (1942) ('If another poaches upon the commercial
    magnetism of the symbol he has created, the owner
2   can obtain legal redress.'). (*Waits v. Frito-Lay, Inc.*,
    *supra*, 978 F.2d 1093, 1109-1110.)
3

4       The Ninth Circuit has firmly maintained Lanham Act claims within

5   the bounds of Trademark law, only extending Lanham Act claims to subject

6   matter which is the functional equivalent of a Trademark.  As the Ninth Circuit

7   has pointed out, " [t]he Lanham Act is not designed to cure all conceivable

8   commercial evils." (*Halicki v. United Artists Communications, Inc.*, 812 F.2d

9   1213, 1214, 1215 (9th Cir. 1987); *Kournikova v. General Media*

10  *Communications, Inc.*, *supra*, 278 F. Supp. 2d 1111, 1117.)   Defendant

11  reiterates this concept since it appears that Plaintiff now wants this Court to

12  extend false association standing under the Lanham Act to something which

13  is neither a Trademark nor its functional equivalent.

14                                  **II.**

15  **NEITHER THE NINTH CIRCUIT, OR THE AUTHORITY CITED BY**
    **PLAINTIFF, HAS EXPANDED SECTION 43(a) LIABILITY UNDER THE**
16  **TRADEMARK ACT TO SUBJECT MATTER BEYOND TRADEMARKS**
    **OR THEIR FUNCTIONAL EQUIVALENT**
17

18      Again, the Lanham Act is Trademark Act of 1946.  (*Two Pesos,*

19  *Inc. v. Taco Cabana, Inc.*, *supra*, 505 U.S. 763, 764; 112 S. Ct. 2753, 2755;

20  see also *Mutation Mink Breeders Association v. Lou Nierenberg Corp.*,  23

21  F.R.D. 155, 160 (S.D. NY 1959).)  Hence, necessarily, any Lanham Act claim

22  should involve a Trademark or its functional equivalent.

23      "The Lanham Act was intended to make 'actionable the deceptive

24  and misleading use of marks' and 'to protect persons engaged in . . .

25  commerce against unfair competition.'" [cit. omit.]  Section 43(a) "prohibits a

26  broader range of practices than does § 32," which applies to registered

27  marks, *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844,

28  858, 72 L. Ed. 2d 606, 102 S. Ct. 2182 (1982), **but it is common ground**

H:\00AlphaFiles--DD\WFS
I v.
Oceano-70096)\Pldgs\Pld
gs-Fed\Dismiss 8th
CofA\Reply-9.wpd

CV08 00839 JW                                    WFS' REPLY TO OCEANO'S OPPOSITION TO
                               4                 MOTION TO DISMISS SUBJECT MATTER

1 **that § 43(a) protects qualifying unregistered trademarks and that the**
2 **general principles qualifying a mark for registration under § 2 of the**
3 **Lanham Act are for the most part applicable in determining whether an**
4 **unregistered mark is entitled to protection under § 43(a).** [cit. omit.] (*Two*
5 *Pesos, Inc. v. Taco Cabana, Inc.*, *supra*, 505 U.S. 763, 767-768; 112 S. Ct.
6 2753, 2757.)

7         "A trademark is defined in 15 U.S.C.§1127 as including "any word,
8 name, symbol, or device or any combination thereof" used by any person "to
9 identify and distinguish his or her goods, including a unique product, from
10 those manufactured or sold by others and to indicate the source of the goods,
11 even if that source is unknown." (*Two Pesos, Inc. v. Taco Cabana, Inc.*,
12 *supra*, 505 U.S. 763, 768; 112 S. Ct. 2753, 2757.)  "In order to be registered,
13 a mark must be capable of distinguishing the applicant's goods from those of
14 others." (*Two Pesos, Inc. v. Taco Cabana, Inc.*, *supra*, 505 U.S. 763, 768; 112
15 S. Ct. 2753, 2757.)

16         Marks are often classified in categories of generally increasing
17 distinctiveness:(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5)
18 fanciful. (*Id.*)  "The latter three categories of marks, because their intrinsic
19 nature serves to identify a particular source of a product, are deemed
20 inherently distinctive and are entitled to protection. In contrast, generic marks
21 -- those that 'refer to the genus of which the particular product is a species,'
22 [cit. omit.] -- are not registrable as trademarks."  (*Two Pesos, Inc. v. Taco*
23 *Cabana, Inc.*, *supra*, 505 U.S. 763, 768; 112 S. Ct. 2753, 2757.) Marks which
24 are merely descriptive of a product are not inherently distinctive. When used
25 to describe a product, they do not inherently identify a particular source, and
26 hence cannot be protected.  (*Two Pesos, Inc. v. Taco Cabana, Inc.*, *supra*,
27 505 U.S. 763, 769; 112 S. Ct. 2753, 2757.)

28         As stated above, although Ninth Circuit has recognized an

1  extension of 15 U.S.C. §1125(a)(1)(A) false association protection of
2  trademarks to the functional equivalent of a trademark, it has not completely
3  eradicated the basic grounding of the Lanham Act as dealing with trademarks.
4  The Plaintiff claims a false association in the sale of a fertilizer as being
5  "organic", which is alleged to have been contaminated with Salmonella[1] . The
6  Plaintiff further claims that this Court should find that it has an interest in the
7  term "organic" which is on par with the standing discussed by the Ninth Circuit
8  in *Waits* of a trademark interest or its functional equivalent.

9       The thrust of Plaintiff's opposition is that the standard for standing
10  and hence protection under the Lanham (Trademark) Act, and specifically 15
11  U.S.C. §1125(a)(1)(A) should be that a plaintiff has a reasonable interest in
12  the subject matter to be protected. However, as Defendant reads *Waits*,
13  protection under 15 U.S.C. §1125(a)(1)(A) is extended only to a Trademark
14  or its functional equivalent.

15       As pointed out in the moving papers, Plaintiff has no Trademark
16  interest in the terms "Organic", "100% Organic Fertilizer, "specifically
17  formulated for 100% organic fruits and vegetables," "OMRI allowed," or
18  "OMRI class fertilizer". The three terms involving the word Organic are merely
19  descriptive, like the term "Kosher", and would likely not be amenable to
20  Trademark protection given their mere descriptive nature and the generic
21  nature of the term "organic" (see Section III, below). But, as further pointed
22  out in the moving papers, and as conceded by Plaintiff at least with respect
23  to the terms involving the word "OMRI", this refers to a non-profit organization
24  which is not even a party to the suit that determines whether or not a product
25  is "approved" or "allowed". As such Plaintiff has no property interest in any

26

27

28

_____

[1]Salmonella is actually a naturally occurring bacteria, which like E. Coli, is commonly found within the waste from mammals. (See, i.e., FAC ¶ 12.) Organic farmers use raw animal manure as fertilizer, as provided for under the National Organic Food Production Act. (See 7 CFR 205.230(c).)

1    of these terms, either a Trademark or the functional equivalent of such a

2    property right as described by the Ninth Circuit in *Waits* or *Smith*.   The

3    functional equivalent to a trademark as described in *Waits* and *Smith* is the

4    legitimate interest a person has in the commercial exploitation of that

5    individual's unique characteristics, whether it is the singing voice, or

6    appearance and acting ability.

**A.    The "Reasonable Interest" Standard Which Plaintiff Argues This Court Should Follow, Citing To ITC Limited v. Punchgini, Is Actually One Discussed In The Context Of A False Advertising Claim**

10    Plaintiff at page 3, lines 23-26, of its brief claims that the Second

11   Circuit in *ITC Limited v. Punchgini, Inc.,* 482 F. 23d 135 (2nd Cir. 2007),

12   explained the meaning of reasonable interest in the context of standing to

13   pursue Lanham Act claims.  Specifically, Plaintiff refers to language at page

14   169 of that decision.  But, at that page, and specifically the language cited by

15   Plaintiff discussing "reasonable interest" the Second Circuit was discussing

16   standing for false advertising claim, under 15 U.S.C. §1125(a)(1)(B), not

17   claims under the false association prong of the Lanham Act.  (15 U.S.C.

18   1125(a)(1)(A).  (See *ITC Limited v. Punchgini, Inc*, *supra*,. 482 F. 23d 135,

19   169-170.)

20    Defendant would also note that the Second Circuit found no

21   standing under the Lanham Act for false advertising, because, for among

22   other reasons, the plaintiff in that case had abandoned its trademark. (*Id.*)

23   Defendant points out this fact merely to reinforce the concept of Lanham Act

24   claim involving trademarks and similar property rights.

**B.    There Are No Allegations Within Plaintiff's Complaint That It Is Representing  Any Interests Other Than Its Own In This Litigation**

27    Plaintiff's next tact is to argue, based upon *Camel Hair &*

1 | *Cashmere Institute, Inc. v. Associated Dry Goods Corp.*, 799 F. 2d 6, 17-18[2]

2 | (1st Cir. 1986), that this Court should recognize its standing on the general

3 | proposition that,

4 | "[t]he Camel Hair case stands for the proposition that
a commercial entity's interest in preserving and
5 | safeguarding the reputation of a product which it sells
is a sufficient nexus to hold that such party has a
6 | 'reasonable interest' in protecting against the acts of
wrongdoers who misrepresent another product with
7 | false representations or origin, which causes injury to
the plaintiff's industry." (Plaintiff's Brief, p. 4:14-17.)

8 |

9 | OPC is not trade association representing the entire organic

10 | produce market, let alone producers of organic vegetables. Rather, "Oceano

11 | is in the business of growing certified organic vegetables, including the Crops,

12 | for sale for human consumption." (FAC, ¶ 6.)

13 | Another fundamental difference here is that the defendants are

14 | not also sellers of organic vegetables. "True [Organics] is in the business of

15 | manufacturing, marketing and selling organic fertilizer products." (FAC, ¶ 2.)

16 | Western [Farm Service]'s business includes, without limitation, the distribution

17 | and sale of the organic fertilizer products manufactured by True. (FAC, ¶ 3.)

18 | In *Camel Hair & Cashmere Institute, Inc.*, a trade association

19 | representing six (6) sellers of cashmere products was trying to block the sale

20 | and marketing by defendants of products as being fifty (50%) percent

21 | cashmere when in fact they were not. There is no such competition here.

22 | Further, the sole purpose of the non-profit association plaintiff in *Camel Hair*

23 | *& Cashmere Institute, Inc.* was ". . . to promote the use of camel hair and

24 |

25 | [2]. WFS was not able to find any page number past page 16 in this decision. It would appear that OPC's citation

26 | is to the LEXIS pagination, and the section discussing the standing of the Plaintiff association's members to sue for injury. Although the Second Circuit stated that the members do not compete directly in the sense of selling cashmere and camel hair products directly to consumers, as manufacturers and vendors of cashmere and camel hair products,

27 | there is clearly competition between the parties within the cashmere clothing market. (*Camel Hair & Cashmere Institute, Inc. v. Associated Dry Goods Corp.*, 799 F. 2d 6, 12.) Here, however, while OPC only sells organic vegetables, neither

28 | WFS or TRUE sells vegetables or any produce. In other words, defendants here are not a farm trying to pass off vegetables as being organic when they are not.

H:\00AlphaFiles--DD\WFS
I v.
Oceano-70096)\Pldgs\Pld
gs-Fed\Dismiss 8th
CofA\Reply-9.wpd

CV08 00839 JW

8

WFS' REPLY TO OCEANO'S OPPOSITION TO
MOTION TO DISMISS SUBJECT MATTER

1  cashmere fibers and to safeguard the interests of the cashmere and camel
2  hair industry by educating the public, retail dealers and garment makers about
3  what was or was not a legitimate cashmere or camel hair product." OPC has
4  not, and cannot, claim to have such a mandate on behalf of the organic
5  vegetable market.

6       Similarly distinguishable on its facts is *Mutation Mink Breeders*
7  *Association v. Lou Nierenberg Corp., supra*, 23 F.R.D. 155, in which a trade
8  organization representing some 5,000 mink breeders throughout the United
9  States sought to enjoin the defendant manufacturers of "Normink" synthetic
10 simulated mink garments from promoting and passing off their products as
11 being mink, or very nearly like it.  The trade association in *Mutation Mink*
12 *Breeders Association* had standing to sue because it had an interest ". . . in
13 preventing the diversion of trade from its members to the defendants since in
14 return for its services to its members it receives a percentage of the sales
15 price of the pelts sold by them." (*Mutation Mink Breeders Association v. Lou*
16 *Nierenberg Corp., supra*, 23 F.R.D. 155, 161-162.)  Here, there are no
17 allegations that Defendants are diverting Plaintiff's sale of organic vegetables
18 by "palming off" non-organic vegetables as being "organic".  Again, the
19 element of competition is conspicuously absent from Plaintiff's unfair
20 competition claim. And, obviously, there are no allegations that OPC
21 represents the interest of any other organic vegetable producers, either in
22 California or the United States.   Accordingly, *Mutation Mink Breeders* is
23 distinguished from this case.

24      OPC claims that it has an interest in protecting the reputation of
25 organic vegetable products as safe and wholesome products for consumption
26 by consumers.  (Plaintiff's Brief, p. 4:18-19.)  However, such a generic claim
27 for standing, based upon protecting the reputation of an industry, was actually
28 advanced by the plaintiff association and rejected in *Camel Hair & Cashmere*

1    *Institute, Inc.*   (*Camel Hair & Cashmere Institute, Inc. v. Associated Dry*

2    *Goods Corp., supra*, 799 F. 2d 6, 10.)

3              Ultimately, in *Camel Hair & Cashmere Institute, Inc.*, it was only

4    the harm that the individual members of the association would suffer due to

5    the competition from the sales of the inferior or counterfeit products that lent

6    them standing and thus the legal means to protect the reputation of their

7    product.  (*Camel Hair & Cashmere Institute, Inc. v. Associated Dry Goods*

8    *Corp.*, *supra*, 799 F. 2d 6, 15.) The Second Circuit found that standing (and

9    a preliminary injunction) was appropriate to stop the defendants from selling

10   the counterfeit cashmere products:

11        "We are satisfied that the sale and manufacture of
             cashmere products by plaintiff's members establishes
12           that they have an interest in the reputation of
             cashmere generally. It is but a short jump to the
13           finding that their interest will be harmed if the
             defendants continue to sell the mislabeled coats. It
14           may take some time before the effect of the sale of
             these coats translates into such an erosion of
15           consumer confidence in all cashmere products as to
             cause the members to lose sales, but the likelihood of
16           immediate sales loss is not the test for irreparable
             harm. By selling these coats with labels which
17           overstate their cashmere content, defendants are
             wrongfully profiting from the reputation of cashmere
18           as a high quality fabric, which plaintiff's members
             have a right to protect. The reputation of cashmere is
19           put at stake as long as these coats are on the market
             and as explained by Judge Friendly in Omega
20           Importing Corp., [cit. omit.] a lasting but not readily
             measurable injury can be inflicted on a product's
21           reputation by the circulation of counterfeit and, in this
             case, inferior products. (*Camel Hair & Cashmere*
22           *Institute, Inc. v. Associated Dry Goods Corp.*, *supra*,
             799 F. 2d 6, 15.)

23

24             But, once again, WFS points out that neither WFS nor TRUE sell

25   organic vegetables.   There is no competition here amongst the parties,

26   instead there was a contractual relationship and privity amongst the parties.

27   Unless OPC fundamentally alters its allegations to claim that WFS and TRUE

28   are in the business of selling vegetables labeled as organic, or that OPC is in

H:\00AlphaFiles--DD\WFS
l v.
Oceano-70096)\Pldgs\Pld
gs-Fed\Dismiss 8th
CofA\Reply-9.wpd

CV08 00839 JW

10

WFS' REPLY TO OCEANO'S OPPOSITION TO
MOTION TO DISMISS SUBJECT MATTER

1  the business of distributing fertilizers as organic, it has no standing to

2  maintain any "palming off" claim.

3  **III.**

4  **BEING A GENERIC TERM, OPC CANNOT CLAIM ANY**
5  **TRADEMARK ON THE TERM "ORGANIC" OR THE**
   **FUNCTIONAL EQUIVALENT TO A TRADEMARK**

6  Assuming for the sake of argument that OPC ever had a

7  trademark-type interest in the term organic, at the present it would no longer

8  be able to claim such interest, "Where the majority of the relevant public

9  appropriates a trademark term as the name of a product (or service), the mark

10  is a victim on 'genericide' and trademark rights generally cease." (*The*

11  *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 905 (9th Cir. 2007).) "The

12  Lanham Act itself, however, contains no provision preventing the use of a

13  trademarked term in its generic sense." *(The Freecycle Network, Inc. v. Oey,*

14  *supra*, 505 F.3d 898, 906.)

15  Again, the charging allegations of OPC's Lanham Act claim are:

16  OPC claims that WESTERN FARM SERVICE ("WFS") and TRUE

17  ORGANICS ". . . violated 11 U.S.C. §1125(a)(1)(A) by stating, in the True

18  Letter, on True's website, and/or on labels or other documents associated

19  with the sale of the Fertilizer in commerce, that the Fertilizer is: (1) '100%

20  organic,' (2) 'organic', (3) 'completely pathogen-free,' (4) composted in

21  accordance with the requirements of the NOP regulations, and/or (5)

22  inspected and favorably reviewed by the CDFA. Such statements are untrue,

23  as set forth in detail above, and likely to cause confusion, to cause mistake

24  and/or to deceive another person, including, without limitation, Oceano, as to

25  the origin, sponsorship, and/or approval of the Fertilizer." (FAC, ¶ 83.)

26  In connection with these allegations, OPC further alleges in

27  paragraph 85 of the FAC:

28  "As a producer of organic vegetables in accordance

H:\00AlphaFiles--DD\WFS I v. Oceano-70096)\Pldgs\Pldgs-Fed\Dismiss 8th CofA\Reply-9.wpd

CV08 00839 JW

WFS' REPLY TO OCEANO'S OPPOSITION TO MOTION TO DISMISS SUBJECT MATTER

with the NOP regulations, Oceano has a competitive and economic interest in ensuring that the terms '100% Organic Fertilizer', '100% organic', 'organic', 'formulated specially for 100% organic fruits and vegetables', are used solely in conjunction with products produced in accordance with the NOP regulations, and that those terms are not applied to the sale or marketing of products that are not produced in accordance with the NOP regulations. Oceano also has a competitive and economic interest in ensuring that the terms '100% Organic Fertilizer,' '100% organic,' 'organic' and 'formulated specially for 100% organic fruits and vegetables', continue to have a reputation for high quality products among consumers and companies in the organic product industry.   Oceano also has a competitive and economic interest in ensuring that inputs represented as '100% Organic Fertilizer', '100% organic', 'organic', and 'formulated specially for 100% organic fruits and vegetables', which are used to produce organic vegetable products, are not contaminated by pathogenic organisms which will in turn contaminate organic vegetable products. In this case, True's and Western's continued use of the terms '100% Organic Fertilizer,' '100% organic', 'organic', and 'formulated specially for 100% organic fruits and vegetables', as described herein, to refer to a product - the Fertilizer - that is not produced according to the NOP regulations, threatens the value of those terms for Oceano's uses. Similarly, Oceano has an interest in ensuring that the terms 'OMRI allowed', an 'OMRI class fertilizer', and made entirely of 'OMRI status allowed' ingredients, are not degraded and devalued, and that the status of OMRI is maintained as an organization which can be relied upon to evaluate inputs for use on certified organic farms." (FAC ¶ 85.)

Here, as even the First Amended Complaint recognizes, the term "organic" cannot only be applied to vegetables, but also fruits.  (FAC ¶ 85.) In fact, the term "organic" can be applied to virtually every agricultural product, from nuts, legumes, vegetables, and fruits, to beef, chicken, pork, and lamb. Organic is merely a common descriptive term.  "Under no circumstances is a generic term susceptible of de jure protection under §43(a) of the Lanham Act, 15 U.S.C. §1125(a) or under the law of unfair competition."  *(Miller Brewing Co. v. Falstaff Brewing Corp.*, 655 F.2d 5, 7-8 (1st Cir. 1981)( "No matter how much money and effort the user of a generic term has poured into

1   promoting the sale of its merchandise and what success it has achieved in

2   securing public identification, it cannot deprive competing manufacturers of

3   the product of the right to call an article by its name.")   Here, the subject

4   fertilizer was made from chicken manure, aka chicken litter.  (FAC ¶ 10.)

5   OPC cannot seriously claim that chicken manure is not an organic product,

6   nor can it claim that chicken manure or animal manure in general violates the

7   terms of the National Organic Program.  (See 7 CFR 205.230(c).)

8                                             **IV.**

9   **PLAINTIFF'S ALLEGATIONS DO NOT PROVIDE A BASIS FOR A**
    **WIDESPREAD "PASSING OFF" OF A PRODUCT FOR PURPOSES OF**
10                          **A FALSE ASSOCIATION CLAIM**

11           As discussed above, in *Camel Hair & Cashmere Institute, Inc.*,

12  defendants engaged in a widespread activity of passing off clothes as being

13  50%-75% cashmere, when in fact such clothes were at most 25% cashmere.

14           Here, Plaintiff complains of one (1) batch of fertilizer that it was

15  sold.  (FAC ¶¶ 18-19.)  As the Court is well aware, this case arises out of a

16  series of transactions between OPC and WFS involving numerous batches

17  of fertilizer in which OPC became indebted to WFS for a sum in excess of

18  $400,000.00, which is the subject of the earlier filed State Court Action.  (See,

19  i.e., Docket No. 32, Order Denying Defendant's Motion to Dismiss, filed May

20  23, 2008; Joint Case Management Statement, ¶ 10.)  OPC does not claim

21  that any of the other products which WFS sold it, and for which it became

22  indebted to WFS, were infected with pathogens or did not comply with NOP

23  or OMRI regulations.    Instead, in terms of alleging facts that could

24  demonstrate standing, at best for OPC, this is an isolated instance of the

25  organic chicken manure based fertilizer being contaminated with Salmonella.

26           But, assuming for the sake of argument that one batch of fertilizer

27  was not composted in accordance with the requirements of the NOP

28  regulations, and/or inspected and favorably reviewed by the CDFA, does this

H:\00AlphaFiles--DD\WFS
I v.
Oceano-70096)\Pldgs\Pld
gs-Fed\Dismiss 8th
CofA\Reply-9.wpd          CV08 00839 JW                            WFS'  REPLY  TO  OCEANO'S OPPOSITION TO
                                           13        MOTION TO DISMISS SUBJECT MATTER

1  rise to the level of a Lanham Act claim?  Especially given that the parties are

2  not in competition and OPC does not have a Trademark-type interest in any

3  of the terms at issue, i.e., organic, OMRI approved; what OPC is really

4  attempting to use the Lanham Act for is, at best, a consumer

5  misrepresentation claim based upon one transaction.

6      The Ninth Circuits has placed limitations on such suits under the

7  Lanham Act. "[I]f such limitation were not in place the Lanham Act would

8  become a federal statute creating the tort of misrepresentation which would

9  be the equivalent of complete dilution of the concept of unfair competition.

10  The Lanham Act is not designed to cure all conceivable commercial evils."

11  (*Halicki v. United Artists Communications, Inc.*, *supra*, 812 F.2d 1213, 1214,

12  1215; *Kournikova v. General Media Communications, Inc.*, *supra*, 278 F.

13  Supp. 2d 1111, 1117.)

14                                          **V.**

15                                   **CONCLUSION**

16      Plaintiff's Lanham Trademark Act claim under 15 U.S.C.

17  §1125(a)(1)(A) for False Association should be dismissed as it involves

18  neither a trademark or its functional equivalent (*Waits v. Frito-Lay, Inc.*, *supra*,

19  978 F.2d 1093, 1109-1110.)  Plaintiff has not and does not allege any

20  competition amongst the parties in order to satisfy standing for a 15 U.S.C.

21  §1125(a)(1)(B) False Advertising Claim.  (*Barrus v. Sylvania*, *supra*, 55 F.3d

22  468, 470.)

23  DATED: July  29, 2008

24                          PETRIE, DORFMEIER & MORRIS, LLP

25

26          By    //S// SEAN T. O'ROURKE
                   Sean T. O'Rourke,
27                 Attorneys for Defendant,
                   WESTERN FARM SERVICE, INC.

28

H:\00AlphaFiles--DD\WFS
I v.
Oceano-70096)\Pldgs\Pld
gs-Fed\Dismiss 8th
CofA\Reply-9.wpd

CV08 00839 JW                                    WFS' REPLY TO OCEANO'S OPPOSITION TO
                        14                       MOTION TO DISMISS SUBJECT MATTER

1         **PROOF OF SERVICE (Code Civ. Proc., §§1013a, 2015)**

2

3   STATE OF CALIFORNIA, COUNTY OF FRESNO

4      I am employed in the County of Fresno, State of California. I am over the age of 18 and not a party to the within action; my business address is 2014 Tulare Street, Suite 830, Fresno, California 93721.

5

6      On **July 29, 2008,** I served the foregoing document described as **DEFENDANT WESTERN FARM SERVICE, INC.'S REPLY TO OCEANO PACKING COMPANY'S OPPOSITION TO MOTION TO DISMISS RE: SUBJECT MATTER JURISDICTION** on the other parties in this action as follows:

7

8

9 Effie F. Anastassiou, Esq.             Plaintiff, OCEANO PACKING,
Denis Klavdianos, Esq.              LLC
Scott Allen, Esq.

10 ANASTASSIOU & ASSOCIATES
242 Capitol Street

11 P.O. Box 2210
Salinas, CA 93902

12 e-mail: scottese@salinasaglaw.com

13 Jube J. Najarian, Esq.              Defendant, TRUE ORGANIC
Leith B. Hansen, Esq.               PRODUCTS, INC.

14 Steven M. McQuillan, Esq.
JACOBSON, HANSEN, NAJARIAN &

15 McQUILLAN
1690 W. Shaw Ave., Ste. 201

16 Fresno, CA 93711
email: jjn@jhnmlaw.com

17

18 Andrew H. Swartz, Esq.            Defendant, TRUE ORGANIC
550 Hartnell St.                   PRODUCTS, INC.

19 Monterey, CA 93940
Fax: (831) 373-8211

20 email: ahswartz@aol.com

21 **BY ELECTRONIC MAIL:**

22      As follows: I caused the above named document to be filed with the United States District Court, Northern Division of California's Case Management/Electronic Case Filing (CM/ECF) System where upon it was electronically delivered to the parties in this case through their electronic mail addresses.

23

24

25      Executed on **July 29, 2008**, at **Fresno**, California.

26      I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

27     **Jalee Furr**                //S// JALEE FURR
    Type or Print Name              Signature

28